James E. Cecchi
Caroline F. Bartlett
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

[Additional Attorneys on Signature Page]

*Attorneys for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEATRIZ TIJERINA, DAVID CONCEPCIÓN, GINA APRILE, THERESA GILLESPIE, TALINA HENDERSON, DIANA FERRARA, LAUREN DALY, SHANE MCDONALD, KASEM CUROVIC, CHRISTA CALLAHAN, ERICA UPSHUR, JOHNNIE MOUTRA, and JENNIFER TOLBERT, Individually And On Behalf Of Themselves And All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. and VOLKSWAGEN AKTIENGESELLSCHAFT,<br><br>        Defendants. | Case No.: _____<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

# **TABLE OF CONTENTS**

**Section**                                                                                    **Page**

I.    INTRODUCTION ..................................................................................1

II.   JURISDICTION AND VENUE ...........................................................6

III.  PARTIES ................................................................................................8

IV.  FACTUAL ALLEGATIONS ...............................................................19

      A.    The Atlas Is Manufactured In the United States and Marketed As A Safe, Family-Ready Vehicle. ...........................................19

      B.    Volkswagen Used A Dangerous and Defective Latching Device In The Atlas. .....................................................................23

      C.    Volkswagen Knew About the Latching Device Defect But Has Failed To Correct The Defect.....................................................26

             1.    National Highway Traffic Safety Administration Complaints.28

             2.    Technical Service Bulletins and Technical Tips.......................36

             3.    Prior Recall of the 2018 Volkswagen Atlas and National Attention on Mounting Seat-Structural Injuries. ......................37

      D.    Despite Its Knowledge, Volkswagen Misrepresented And Concealed Important Information About the Latching Device Defect and Class Vehicle Safety. ................................................40

V.   CLASS ACTION ALLEGATIONS.....................................................47

      A.    The Class Definition.................................................................47

      B.    Numerosity: Federal Rule of Civil Procedure 23(a)(1) ......................48

      C.    Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3) ...............................................48

      D.    Typicality: Federal Rule of Civil Procedure 23(a)(3)........................50

      E.    Adequacy: Federal Rule of Civil Procedure 23(a)(4) ........................51

      F.    Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2) ...................................................................51

      G.    Superiority: Federal Rule of Civil Procedure 23(b)(3) ......................51

VI.  ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED........52

VII. NATIONWIDE CLASS CLAIMS.......................................................54

        NATIONWIDE COUNT I............................................................54

Violation of the Magnuson-Moss Warranty Act .....................................54

NATIONWIDE COUNT II ........................................................................59

Fraud By Concealment Or Omission......................................................59

NATIONWIDE COUNT III .......................................................................63

Negligent Misrepresentation..................................................................63

NATIONWIDE COUNT IV .......................................................................65

Unjust Enrichment .................................................................................65

NATIONWIDE COUNT V .........................................................................67

Violation of the N.J. Consumer Fraud Act ("NJCFA")..........................67

NATIONWIDE COUNT VI .......................................................................70

Breach of Express Warranty ..................................................................70

NATIONWIDE COUNT VII ......................................................................76

Breach of Implied Warranty of Merchantability ...................................76

VIII.  STATE SPECIFIC CLAIMS..........................................................................80

A.    California Counts ...........................................................................80

B.    Florida Counts .............................................................................100

C.    Kentucky Counts .........................................................................117

D.    Massachusetts Counts..................................................................131

E.    Michigan Counts .........................................................................147

F.    New York Counts.........................................................................161

G.    Pennsylvania Counts ...................................................................175

H.    Texas Counts ...............................................................................188

I.    Virginia Counts ...........................................................................205

IX.   PRAYER FOR RELIEF .................................................................................221

X.    DEMAND FOR JURY TRIAL ......................................................................222

Plaintiffs Beatriz Tijerina, David Concepción, Gina Aprile, Theresa Gillespie, Talina Henderson, Diana Ferrara, Lauren Daly, Shane McDonald, Kasem Curovic, Christa Callahan, Erica Upshur, Johnnie Moutra, and Jennifer Tolbert (collectively, "Plaintiffs") bring this action against Volkswagen Aktiengesellschaft ("VWAG") and Volkswagen Group of America, Inc. ("VW America") (together, "Volkswagen" or "VW" or "Defendants") based upon personal knowledge as to allegations specifically pertaining to Plaintiffs and, as to all other matters, upon the investigation of counsel.[1]

## I.    INTRODUCTION

1.    Crashes involving seat-structural failures in passenger motor vehicles pose a significant public health and safety threat, particularly to younger children occupying rear seats. Because of this risk, manufacturers of automobiles sold in the United States are required to ensure seating assemblies in these vehicles are secure, both during ordinary operation and in the event of an accident or collision. This action concerns defective latching devices (defined below) that pose a significant safety threat to rear-seated passengers in vehicles manufactured by Defendants.

---

[1]    Counsel's investigation includes an analysis of publicly available information, including Defendants' Technical Service Bulletins, National Highway Traffic Safety Administration documents and consumer complaints. Plaintiffs believe that a reasonable opportunity for discovery will reinforce all these claims.

2.     Plaintiffs bring this action individually and on behalf of all persons in the United States who purchased or leased a 2018 through 2021 model Volkswagen Atlas ("Class Vehicles" or the "Atlas"). The Class Vehicles contain a defective Latching Device designed to secure the second-row seats and allowing these seats to fold down to permit passengers to access third-row seats and/or allow greater storage in the rear of the Atlas (the "Latching Device").[2] Defendants wrongfully and intentionally concealed a defect in the Latching Device of the Class Vehicles.

3.     As explained in detail below, the Latching Device in the Atlas fails to properly secure the second-row seats due to a defect in its design (the "Latching Device Defect"). As a result of the Latching Device Defect, during deceleration and/or in an accident or collision, the Latching Device in the Atlas may fail to secure the secure second-row seats, allowing those seats to slam forward. Any rear-seated passenger may be seriously injured upon collision into the front-seats. Being lightweight and typically seated in the second-row seats, infants and younger children are particularly susceptible to harm from the Latching Device Defect. Drivers and occupants of the Atlas are at risk during rear-end collisions, sudden stops, and other accidents due to Defendants' failure to address or disclose the existence of the Latching Device Defect.

---

[2]    Bench seats in certain Atlas models have the additional capability of sliding backwards and forwards on a rail mechanism to allow occupants a wider range of legroom.

4.      On information and belief, the Latching Device Defect is contained in all Volkswagen Atlas models that have been manufactured since its debut. The Latching Device is designed and manufactured to last the life of a vehicle.  As a result of the Defect, the Latching Device may prematurely fail before the end of the useful life of the Atlas and before 280,000 driven miles—the lowest number of miles Defendants recommend for regularly scheduled maintenance in the USA Warranty and Maintenance Schedules (the "Maintenance Schedule) provided by Defendants for Volkswagen Atlas vehicles.[3] Indeed, given their life expectance, the Latching Device is omitted from the Maintenance Schedule entirely.

5.      Defendants provide warranty coverage for the Class Vehicles under their manufacturer's warranty. Effective for the 2018 and 2019 model years for the Atlas, the warranty furnishes bumper-to-bumper coverage for six years or 72,000 miles, whichever comes first and is fully transferrable with no loss in coverage (the "6-year/72,000 Warranty"). There is a different warranty for the 2020 and 2021 model Atlas, which covers four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis  (the "4-year/50,000 Warranty" and together with the 6-year/72,000 Warranty referred to as the "Warranties"). *See* Exhibits C, D.

---

[3]  *See, e.g.*, Exhibit E (summarizing maintenance schedule and not showing any scheduled maintenance to ensure integrity of the seating systems for the 280,000 miles provided for the Class Vehicles).

6.     Under the Warranties provided to members of the Class, Defendants promised to repair or replace defective Class Vehicle components arising from defects in materials and/or workmanship at no cost to owners or lessees of the Class Vehicles. However, Defendants have excluded coverage for the Latching Device Defect under the Warranties because the Defect is one of design. Both the temporal limitations and scope of the warranty are the result of Defendants' unconscionable manipulation of the Warranties to exclude coverage for non-mechanical defects, such as the Latching Device Defect.

7.     Knowledge of the Defect was in the exclusive and sole possession of Defendants through pre-production testing, design failure mode analysis, consumer complaints to the National Highway Traffic Safety Association ("NHTSA"), reports to Volkswagen Customer CARE, and by releasing at least one Technical Service Bulletin ("TSB") describing the issue to their exclusive network of dealerships, as well as receiving communications concerning the Defect from these dealerships. In response to at least one of the NHTSA complaints filed about the Latching Device Defect, Volkswagen provided the complainant an investigation case number for reference. Plaintiffs David Concepción, Diana Ferrara, and Lauren Daly similarly contacted their local dealerships regarding the Defect and the dealerships failed to repair and/or replace the Latching Device.

8.      Despite Defendants' knowledge of the Latching Device Defect, Defendants have never disclosed to Plaintiffs and members of the Class that the Defect exists or the associated risks to drivers and occupants of the Class Vehicles, and have taken no effort to remediate the defect. Even though the Latching Device should operate normally for the life of the vehicle, on information and belief, Defendants have failed to repair or replace the Latching Device. Thus, Defendants have wrongfully and intentionally transferred the cost of repair or replacement of the Latching Device to Plaintiffs and members of the Class by fraudulently concealing the existence of the Latching Device Defect and by failing to issue recalls or cover the costs under express warranties. The repair cost shall be determined in an expert report following factual discovery.

9.      Defendants breached implied warranties through which they are bound to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct any defects, such as the Latching Device Defect. Because the Latching Device Defect was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the Latching Device under the terms of the implied warranties. The detriment of not utilizing the rear seats for families is substantial and no reasonable consumer expects to be fearful of placing their loved ones in the rear seats.

10.    Plaintiffs and members of the Class assert claims against Defendants for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, fraud, negligent misrepresentation, unjust enrichment, breach of implied warranties and violations of consumer fraud and unfair and deceptive trade practices statutes under the laws of California, Florida, Kentucky, Massachusetts, Michigan, New Jersey, New York, Pennsylvania, Texas, and Virginia.

11.    As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered damages, including, *inter alia*: (1) deprivation of the benefit of their bargain by overpaying for the Class Vehicles at the time of sale or lease; (2) out-of-pocket expenses for repair or replacement of the Latching Device; (3) costs for future repairs or replacements; (4) sale of their Class Vehicle at a loss; and/or (5) diminished value of their Class Vehicles.

## II.    JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Class, members of the Class (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Class reside in states other than the states in which Defendant is a citizen. This Court has jurisdiction over supplemental state law claims under 20 U.S.C. § 1367 and

jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

13.     This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction. This Court has personal jurisdiction over Defendants under 18 U.S.C. § 1965(d) because VW America is incorporated in New Jersey and so is found, has agents, and transacts substantial business in this district.

14.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because VW America is incorporated in New Jersey, and Defendants have marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous dealers doing business in the District. Defendants' actions have caused harm to hundreds of members of the Class residing in New Jersey, including Plaintiff Erica Upshur who purchased her Class Vehicle in Maple Shade, NJ. VW America maintains the following offices and/or facilities in New Jersey: (1) the "VW/Audi/VCI Eastern Region" location in Woodcliff Lake, New Jersey; (2) the "VW/Audi Test Center" in Allendale, New Jersey; (3) the "Product Liaison Office" in Fort Lee, New Jersey; (4) and the "Parts/Region Distribution Center" in Cranbury, New Jersey.[4] Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

---

[4] *See Volkswagen Group of America Locations*, VOLKSWAGEN GROUP OF AMERICA, http://www.volkswagengroupofamerica.com/locations (last visited Aug. 4, 2021).

## III.  PARTIES

### PLAINTIFFS

15.    Plaintiff Beatriz Tijerina ("Plaintiff" for purposes of this paragraph) is an individual residing in National City, CA. Plaintiff purchased a new 2018 Volkswagen Atlas equipped with bench seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around November 2017 from Volkswagen of Kearny Mesa in San Diego, CA. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

16.    Plaintiff David Concepción ("Plaintiff" for purposes of this paragraph) is an individual residing in Kensinton, CA. Plaintiff purchased a new 2018

Volkswagen Atlas equipped with captain's seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around August 2018 from Dirito Brothers Walnut Creek Volkswagen in Walnut Creek, CA. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

17.     Plaintiff Gina Aprile ("Plaintiff" for purposes of this paragraph) is an individual residing in North Point, FL. Plaintiff purchased a used 2018 Volkswagen Atlas equipped with bench seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around November 2020 from Norm Reeves Volkswagen Superstore in Port Charlotte, FL. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary

course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

18.    Plaintiff Theresa Gillespie ("Plaintiff" for purposes of this paragraph) is an individual residing in Pensacola, FL. Plaintiff purchased a new 2021 Volkswagen Atlas equipped with bench seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around July 2020 from Pete Moore Imports in Pensacola, FL. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the

internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

19.    Plaintiff Talina Henderson ("Plaintiff" for purposes of this paragraph) is an individual residing in Lexington, KY. Plaintiff purchased a new 2021 Volkswagen Atlas equipped with captain's seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around September 2020 from Don Jacobs Volkswagen in Lexington, KY. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the

defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

20.     Plaintiff Diana Ferrara ("Plaintiff" for purposes of this paragraph) is an individual residing in Hyde Park, MA. Plaintiff purchased a new 2018 Volkswagen Atlas equipped with bench seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around October 2017 from Quirk Volkswagen in Braintree, MA. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

21.     Plaintiff Lauren Daly ("Plaintiff" for purposes of this paragraph) is an individual residing in Brockton, MA. Plaintiff purchased a new 2021 Volkswagen Atlas equipped with captain's seats (for purposes of Plaintiff's allegations, the

"Class Vehicle") for personal, family, and/or household use on or around May 2021 from Mastria Volkswagen in Raynham, MA. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

22.    Plaintiff Shane McDonald ("Plaintiff" for purposes of this paragraph) is an individual residing in Belding, MI. Plaintiff purchased a new 2018 Volkswagen Atlas equipped with bench seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around April 2018 from Gezon Motors in Grand Rapids, MI. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration.

To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

23.     Plaintiff Kasem Curovic ("Plaintiff" for purposes of this paragraph) is an individual residing in Staten Island, NY. Plaintiff leased a 2021 Volkswagen Atlas equipped with bench seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around September 2020 from Island Volkswagen in Staten Island, NY. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have leased the Class Vehicle, or would have paid less for his

lease, if Defendants did not conceal material information about the defective Latching Device.

24.    Plaintiff Christa Callahan ("Plaintiff" for purposes of this paragraph) is an individual residing in Coatesville, PA. Plaintiff purchased a new 2018 Volkswagen Atlas equipped with captain's seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around August 2018 from Jeff D'ambrosio Volkswagen in Downingtown, PA. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

25.    Plaintiff Erica Upshur ("Plaintiff" for purposes of this paragraph) is an individual residing in Philadelphia, PA. Plaintiff purchased a used 2018 Volkswagen

Atlas equipped with bench seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around July 2019 from CarMax in Maple Shade, NJ. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

26.    Plaintiff Johnnie Moutra ("Plaintiff" for purposes of this paragraph) is an individual residing in Missouri City, TX. Plaintiff purchased a new 2019 Volkswagen Atlas equipped with captain's seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around March 2019 from Momentum Volkswagen in Houston, TX. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing

the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

27.    Plaintiff Jennifer Tolbert ("Plaintiff" for purposes of this paragraph) is an individual residing in Dumfries, VA. Plaintiff purchased a new 2020 Volkswagen Atlas equipped with bench seats (for purposes of Plaintiff's allegations, the "Class Vehicle") for personal, family, and/or household use on or around November 2020 from Sheehy Volkswagen in Springfield, VA. At the time, Plaintiff reasonably expected that the seats would be restrained in the ordinary course of operation and in the event of the crash. Plaintiff had no way of knowing the Class Vehicle contained a defective Latching Device that could cause the seats to collapse forward during deceleration. To the contrary, before acquiring the Class Vehicle, Plaintiff viewed or heard commercials and reviews through television, radio, and/or the internet that touted the safety and reliability of the Class Vehicle. Defendants

17

concealed the existence of the Latching Device Defect from Plaintiff and consumers. Plaintiff would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the defective Latching Device and as a result, the value of Plaintiff's Class Vehicle has diminished.

## DEFENDANTS

28.    Defendant VWAG is a German corporation with its principal place of business in Wolfsburg, Germany. VWAG is one of the largest automobile manufacturers in the world and is in the business of designing, developing, manufacturing, and selling automobiles. VWAG is the parent corporation of VW America.

29.    Defendant VW America is a New Jersey corporation doing business throughout the United States. VW America's corporate headquarters is located in Herndon, Virginia. VW America is a wholly-owned U.S. subsidiary of VWAG, and it engages in business activities in furtherance of the interests of VWAG, including the advertising, marketing and sale of VW automobiles nationwide.

30.    At all relevant times, VW America acted as an authorized agent, representative, servant, employee and/or alter ego of VWAG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of VW

vehicles in the United States, including substantial activities that occurred within this jurisdiction.

31.     At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the VW brand name throughout the United States. Defendants and/or their agents designed, manufactured, and/or installed the Latching Device in the Class Vehicles. Defendants and/or their agents also developed and disseminated the owner's manuals and warranty booklets, USA Warranty and Maintenance Schedules, advertisements, other promotional materials relating to the Class Vehicles, and all materials that were available at the point of sale.

## IV.     FACTUAL ALLEGATIONS

### A.     The Atlas Is Manufactured In the United States and Marketed As A Safe, Family-Ready Vehicle.

32.     Defendants manufacture vehicles sold under the VW brand throughout the United States. Defendants designed, manufactured, distributed, marketed, and/or sold the Class Vehicles in the United States. Defendants also provide service and maintenance for the Class Vehicles through their extensive network of authorized dealers and service providers nationwide.

33.     The Atlas is the first American-made sport-utility vehicle ("SUV") by Volkswagen, manufactured alongside the VW Passat at Volkswagen's Chattanooga Assembly Plant in Chattanooga, Tennessee. The Chattanooga Assembly Plant has

faced significant obstacles, as establishing a new production facility requires a great deal of time, money, and land. Several years ago, sales of the midsize Passat sedan made at the plant fell as consumer tastes shifted to trucks and SUVs. In addition, a pair of rough-and-tumble union elections at the factory spurred political and labor battles, and Volkswagen's diesel emission scandal hurt the brand and its sales in the U.S. In 2016, to increase profitability, Volkswagen announced it would ramp up assembly at the plant to develop the Atlas at the factory, and sharply boost its employee headcount.

34.    On October 28, 2016, Volkswagen introduced the 2018 Volkswagen Atlas at AutoMobility L.A. Volkswagen and demonstrated the three-row crossover's interior—by filling the back seats, including the third-row, with five basketball players, such as former Los Angeles Lakers player Kareem Abdul-Jabbar, who stands at over 7 feet tall. Attendees who got close and personal with the Atlas were asked to comment on its interior space. James Burch, Volkswagen of America Product Manager for Atlas and Touareg, says that the Atlas is "a true seven-seater with a real third row," and that he, being 6.7 feet-tall, fits comfortably in there.

35.    Since the announcement of the Atlas lineup, Volkswagen has understood that safety is material to consumers. Thus, Volkswagen has promoted the Vehicle as 'family-ready' with a suite of safety features "designed to draw attention in the crowded family SUV segment," including third-row seating and

access.[5] Volkswagen's focus on safety and family has been a core focus for its marketing and advertising campaigns. Volkswagen continues to market the Atlas as a safe, family-ready vehicle, as stated on Volkswagen's website: "Safety is a core value to us. And while we can't predict everything you might encounter, we can and do spend long hours trying to help you prepare for it."[6] The Atlas is Volkswagen's "designated family-hauler," so Defendants ensured that the third row is easily accessible and promoted this feature in its marketing campaign.

36.    Volkswagen's target market is American families. Commercials for the Atlas show families coming together, such as in a ninety-second advert promoting the 2018 Volkswagen Atlas that follows the story of a widow and her family reacting to her deceased husband's last will for them to travel America together.[7]

37.    In order to appeal to its target market, Volkswagen has touted the safety of the Class Vehicle alongside the additional seating capacity features that contain the Latching Device Defect. In a marketing brochure for the 2018 Volkswagen Atlas, Volkswagen claims that "[it] never forget[s] that the most important things in an Atlas are you and your family. Helping you feel safe and helping you stay safe is a

---

[5]   Press Release, Volkswagen of America, Inc., 2018 Volkswagen Atlas: the family-sized SUV built in America (April 2, 2017), https://media.vw.com/en-us/releases/857/.

[6]        *See* VOLKSWAGEN GROUP OF AMERICA, INC., https://www.vw.com/en/models/atlas (last accessed July 28, 2021).

[7] Daily Commercials, *Volkswagen: Atlas – America – Full Version* (May 9, 2017), https://dailycommercials.com/volkswagen-atlas-america-full-version/.

[8] Further stating, "[b]ig families need a big SUV. Introducing the Atlas, large enough to handle everything from the daily carpool to a weekend adventure. ***It comes with seven seats and a 3rd row kids will love to sit in.***"[9] This brochure, and subsequent updates to it for later model years, contain visual representations of children contrasted against the Vehicle's safety features, as shown below:



38.    In sum, "[Volkswagen] designed and built the Atlas specifically for American families," said Scott Keogh, president and CEO of Volkswagen Group of America. Volkswagen designed and marketed the seats in the Atlas to accommodate

---

[8]    *See 2018 Atlas*, VOLKSWAGEN GROUP OF AMERICA, INC., cdn.dealereprocess.org/cdn/brochures/volkswagen/2018-atlas.pdf; *2019 Atlas*, VOLKSWAGEN GROUP OF AMERICA, INC., cdn.dealereprocess.org/cdn/brochures/volkswagen/2019-atlas.pdf; *2020 Atlas*, VOLKSWAGEN GROUP OF AMERICA, INC., cdn.dealereprocess.org/cdn/brochures/volkswagen/2020-atlas.pdf; *2021 Atlas*, VOLKSWAGEN GROUP OF AMERICA, INC., cdn.dealereprocess.org/cdn/brochures/volkswagen/2021-atlas.pdf.
[9] *Id.*

families, and promoted and advertised the rear seats as safe and spacious. Thus, the failure to disclose the Latching Device Defect is all the more egregious.

39.     In contrast to Volkswagen's marketing campaign, the Class Vehicles are equipped with second-row seats containing the Latching Device that may fail at any time, creating a safety risk. Defendants knew or should have known of the Defect but failed to rectify it.

**B.      Volkswagen Used A Dangerous and Defective Latching Device In The Atlas.**

40.     Generally, in certain automotive seating configurations, it may be desirable for one or more of the interior occupant seating assemblies to be selectively decouplable. For example, in multi-passenger vehicles, such as vans or SUVs, second-row seating may be selectively decoupled from the vehicle only at one end such that it may articulate away from the vehicle floor and provide easier ingress/egress to/from the third row of seating. Vehicle structure, seat design, cost-savings, and maintenance considerations, among others, influence how a manufacturer designs this seating assembly.

41.     To provide for the selective decoupling, the occupant seating assembly may include a latching device configured to engage and/or couple with a rigid portion of the vehicle. For example, the latching device may be configured to selectively interconnect with a rod-like striker that may be integrated into the floor of the vehicle. In one embodiment, the striker may be provided beneath the surface

23

of the vehicle floor, such as within a well-like channel. When engaged, the latching device may be configured to grasp the striker in a manner that generally prevents the seating assembly from being lifted or separated from the vehicle. To protect occupants from decoupling during deceleration and in the event of an accident or collision, latching devices are designed to last for the duration of the useful life of the vehicle and undergo extensive pre-production testing.

42.    SUVs and other vehicles accommodating multiple rows of seats are becoming increasingly popular. While providing a vehicle with multiple rows of seating maximizes the number of occupants that can be transported by the vehicle, such additional rows of seating provide challenges to vehicle manufacturers, as access to rear seat assemblies such as second or third-row seat assemblies is often obstructed by front or other intermediate seat assemblies. Thereby creating additional challenges during the manufacturing and design of the vehicle.

43.    The Volkswagen Atlas has two different models of seats: bench seats and captain's chairs in the second row, depicted below.

 

44.     The Latching Device fails upon deceleration, which is especially dangerous in the event of any accident or collision. When the Latching Device fails, the seating assembly is decoupled from the rigid portion of the Atlas that secures the seats for occupants. The Latching Device Defect manifests in all models of the Atlas.

45.     Based on Defendants' representations in the USA Warranty and Maintenance schedules provided with the Class Vehicles, a Latching Device is intended and reasonably expected to last for the useful life of the Class Vehicles and at least 280,000 miles without the need for inspection, repair or replacement. According to the Class Vehicles' maintenance schedules, the Latching Device in the Class Vehicles is expected to last beyond the warranty periods and should not require maintenance during the useful life of the vehicle. *See* Exhibit E. Thus, the failure of the Latching Device in the Class Vehicles occurs prematurely and before any reasonable consumer would expect the failure to occur.

46.     No reasonable consumer expects to be deprived of the beneficial use of their vehicle and/or pay out-of-pocket expenses to repair a necessary part that should last for the useful life of the vehicle. As a direct result of Defendants' wrongful conduct, Plaintiffs and members of the Class have been or will be forced to pay to replace or repair the Latching Device and/or have overpaid for their Class Vehicles.

47.     As detailed herein, Plaintiffs and members of the Class suffered deprivation of the benefit of their bargain at the time of sale or lease, diminished

market value, and other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendants' material misrepresentations and omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Latching Device Defect. The fact that the Latching Device is defective is material to Plaintiffs and members of the Class because it subjects Plaintiffs and members of the Class to overpayment, unexpected costs of repair or replacement, and because the sudden failure of the Latching Device presents a risk of injury and/or death to drivers and passengers of the Class Vehicles.

### C. Volkswagen Knew About the Latching Device Defect But Has Failed To Correct The Defect.

48. Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Plaintiffs and members of the Class the Defect in the Class Vehicles even though Defendants knew or should have known of design defects in Class Vehicles if Defendants had adequately tested the Latching Devices in the vehicles.

49. Knowledge and information regarding the Latching Device Defect was in the exclusive and superior possession of Defendants and their dealers. That information was not provided to Plaintiffs and members of the Class. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, a consumer complaints to dealers and the National Highway Traffic Safety Administration ("NHTSA"), and testing performed in response to

consumer complaints, *inter alia*, Defendants were aware (or should have been aware) of the Latching Device Defect in the Class Vehicles and fraudulently concealed the Defect and safety risk from Plaintiffs and members of the Class. Defendants knew, or should have known, that the Latching Device Defect was material to owners and lessees of the Class Vehicles and was not known or reasonably discoverable by Plaintiffs and members of the Class before they purchased or leased Class Vehicles.

50.    Defendants had actual knowledge of the Latching Device Defect shortly after production of the Class Vehicles commenced. Defendants engaged in extensive field research and quality investigations and analysis. In addition, Defendants have and continue to be under a legal obligation under federal law to monitor defects that can cause a safety issue and report them within five (5) days of learning of them. Defendants therefore assiduously monitor the NHTSA–ODI website and the complaints filed therein to comply with their reporting obligations under federal law.

51.    Defendants knew that any defect potentially leading to seating assembly failure, such as the Latching Device Defect, presents a serious safety risk. Numerous dangerous conditions occur when the rear-seats are suddenly decoupled; including that rear-seated passengers may be propelled into the front seats. Thus, drivers and occupants are at risk during accidents or collisions.

52.    Notwithstanding Defendants' exclusive and superior knowledge of the Latching Device Defect, Defendants failed to disclose the Defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the Defect through and including the 2021 model year. Defendants have intentionally concealed that Latching Device Defect and that the Latching Device may fail and presents a safety risk rather than disclosing the Defect and risk to consumers, including Plaintiffs, members of the Class, and the public.

### 1.    National Highway Traffic Safety Administration Complaints

53.    Defendants know about the Defect due to consumer complaints such as those made to the NHTSA, which Defendants monitor as part of a continuous obligation to identify potential defects in their vehicles.[10]

54.    Despite these complaints, Defendants have yet to issue a recall or even inform owners and lessees of the Latching Device Defect and its safety risk. Defendants' deceptive acts, misrepresentations and/or omissions regarding the Latching Device Defect create a safety risk for drivers and occupants of the Class

---

[10]    NHTSA-ODI does not share complainants' personal information with the general public. A complaint is added to a public NHTSA database only after NHTSA removes all information from complaint fields that personally identify a complainant. NHTSA-ODI complaints are made by individuals who must identify themselves, enter detailed contact information and vehicle information (including an accurate VIN) before the complaints are reviewed and analyzed by NHTSA. There are penalties for submitting false statements.

Vehicles and members of the public who may be involved in accidents with Class Vehicles that experience a Latching Device failure while they are being driven. When the Latching Device fails, the occupants in the rear seats may be propelled forward when coming to a stop while driving, increasing the risk of injury to occupants. The reasonable expectation that the Class Vehicles are safe and reliable to drive (and ride in) is and was material to Plaintiffs and members of the Class at all relevant times.

55.    Defendants also knew about the Latching Device Defect through monitoring NHTSA complaints identifying the Latching Device Defect, which were posted before Plaintiffs purchased or leased their Atlas:

NHTSA ID Number:      11092491
Incident Date:             March 18, 2018
Consumer Location:     Little Rock, AR
VIN:                          1V2DR2CA0JC****

The 2nd row does not lock easily. Upon sudden brake, the seat came loose and slammed into the back of the front seat. ***Nobody was sitting there at the time but if my child was in a child seat, she would have been injured very easily.*** [11]

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:      11138872
Incident Date:             October 5, 2018
Consumer Location:     San Bruno, CA
VIN:                          1V2LR2CA0JC****

We purchased our VW Atlas on August 24, 2018. Since then, we have experienced two occasions where the second row seat has hinged

---

[11]    All emphasis added. Complaints available at: https://www.nhtsa.gov/vehicle/.

forward while occupied by our seven year old daughter in her car seat with the car was in motion. In both cases it has been the second row seat on the right. In both instances, our daughter was thrown forward into the back of the passenger's seat with significant force when the vehicle was moving down hill at a slow speed toward a stop sign. ***Had the vehicle been moving faster and come to an abrupt stop it seems likely that severe injury and possible death could have occurred instantly to her***. We feel that the pop up indicator located on the top of the seat is an inadequate means to inform the driver that the seat is not properly secured to the floor. We missed this very important indicator on two occasions now. When we purchased the car and went through all notifications on the car with the salesperson, this was not brought to our attention. At minimum, this very technical vehicle should alert the driver before driving (similar to the seatbelt notification) with both an oral and visual alert that the seat is not properly secured to prevent this from happening to other owners or users of the vehicle. ***It has been a terrifying experience for our daughter who is trapped against the passenger seat until the driver can stop the car and move the seat back. She no longer wants to sit in that seat. This certainly seems like a possibly life-threatening issue to validate a safety recall***. *We hope that action is taken to keep all passengers safe.*

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:     11141524
Incident Date:       October 18, 2018
Consumer Location:   Alexandria, VA
VIN:                 1V2NR2CA1JC****

We have a front facing childseat installed in the 2nd row passenger captain seat and a rear facing infant child seat in the passenger side third row. This configuration is necessary because the infant seat has a bracing bar that is difficult to raise and lower prohibiting the chair from angling forward for climbing in and out of the third row. However, we have learned on 2 separate occasions, within the first moments of driving/accelerating, that the 2nd row car seat may spring forward forceably, smashing the face and body of our restrained 4 yr old child into the back of the front passenger seat. The seat is too heavy and locks in the forward position, making it impossible to push back, trapping the child until an adult is able to exit the vehicle and pull the seat back from the outside. The seat initially appears to be locked in the correct place,

or is at least stable enough for the child to climb into her seat, buckle in, and the trip to begin. At some point thereafter the seat propels forward. We are unclear whether the latch fails or is not sufficiently engaged. ***The incidents have been extremely scary, and has resulted in a bloody lip, and abrasions and contusions to our child's face. In these situations, until we are able to safely respond, we are only able to see our child's terrified eyes and hear her crying. We are extremely concerned about the potential for other head and neck injuries as the seat rockets forward extremely fast and with significant force***. We are unsure what would happen in the event we switched her spot with an infant seat instead.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:       11143677
Incident Date:              October 23, 2018
Consumer Location:     Pasadena, CA
VIN:                           1V2FR2CA6JC****

After owning an Atlas for about 2 weeks, I picked up my 2 year old and put him in his forward-facing car seat in the 2nd row. As I started to slow down as we approached a red light (normal stop - not a hard brake by any means), the seat that my 2 year old was sitting in slammed forward into the back of the front passenger seat. ***With my child screaming and crying, I quickly put the vehicle into park and turned around to push his seat back into the normal position. My child had a minor abrasion on his forehead but fortunately, the head protection on either side of his head took the brunt of the impact***. The captains chair must have not been locked into place. After investigating further, I found that I really have to make an effort to get these seats to lock into place. Simply pushing these seats into place will not lock them (I kind of have to slam them back to get them to lock). In my opinion, these seats should lock into place much easier. ***I could easily see many children sustaining injuries (or worse) in this vehicle due to this flaw***.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:       11181108
Incident Date:              February 19, 2019
Consumer Location:     Steamboat Springs, CO
VIN:                           1V2URCA6KC5****

While driving and coming to a slow stop at a stop sign. The middle row right side seat disengaged ***while child and car seat in the seat and flung forwarded and into the back of the front passenger sea***t.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:      11254801
Incident Date:           June 1, 2019
Consumer Location:     Falls Church, VA
VIN:                    1V2MR2CA8JC****

The contact owns a 2018 Volkswagen Atlas. While driving various speeds and depressing the brake pedal, the middle row seats violently shifted forward while occupied. The contact also mentioned that the failure occurred while the seats were not occupied. The vehicle was not taken to a dealer or independent mechanic for diagnostic testing or repairs. The manufacturer was made aware of the failure and the contact was provided a case number. The failure mileage was 11,000.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:      11338887
Incident Date:           July 12, 2020
Consumer Location:     Bensenville, IL
VIN:                    BR3CA1MC****

Rear passenger seat belts can become caught in over-shoulder seat release lever (affects all rear seats, except middle bench seat). This can prevent seat belts from retracting properly. This happens frequently when middle row seats are returned to seating position from fold-down position. This slightly has the potential to cause t to be seat to release while the vehicle is in motion.

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

NHTSA ID Number:      11341214
Incident Date:           July 23, 2020
Consumer Location:     Chattanooga, TN
VIN:                    1V2XR2CA2KC****

When lowering the third row seats of the atlas the seats slam down and forward with great force. When parked today, I was lowering the seats and the seat lowered with such force the my foot was mashed and pinned immediately a large knot appeared. I plan to have an x-ray of the foot tomorrow. ***My immediate thought was the damage that could have been done to a smaller child***.

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

NHTSA ID Number:       11395002
Incident Date:         February 4, 2021
Consumer Location:     Irvine, CA
VIN:                   1V2NR2CA8JC****

My 6-year-old son was in the middle left seat, I pulled the car out of garage and drove up to the intersection next to my home and applied gentle break. His seat came all the way in the front and his nose hit the driver seat. This is the third time it has happened that seat was not properly locked. After it happened second time, we have been careful to check the seat before we start driving. We heard the click sound indicating that the seat was properly locked. ***It's been a terrifying experience for the young one. I'm also attaching the picture of his bruised nose***.

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

NHTSA ID Number:       11423061
Incident Date:         May 13, 2021
Consumer Location:     Allentown, PA
VIN:                   1V2SR2CA4MC****

We have a 2021 Volkswagen Atlas with captain's chairs in the 2nd row. Our 4 year old was riding in a forward-facing car seat installed with lower anchors + tether strap in the 2nd row driver's side and a friend's 8 year old was riding in the 3rd row driver's side in a backless booster. I was in the front passenger seat and my husband was driving. While my husband was braking, the 8 year old lifted up on the 3rd row access lever, located on the upper left side of the 2nd row driver's side captain's chair. The 2nd row captain's chair lifted up, slid forward, and SLAMMED my 4 year old son into the driver's seat. The 8 year old immediately panicked, which caused me to turn around. ***My 4 year old***

33

***was not making any noise - almost certainly because his nose and mouth were pressed tightly into the back of the driver's seat, preventing him from making a sound. While in the front passenger seat, I tried to push the captain's chair back into place - but it was way too heavy.*** Luckily, we were on a road where my husband was able to quickly pull over and jump out to put the captain's chair back into place. As soon as my husband started to move the captain's chair away from the driver's seat, my 4 year old started screaming. After this incident, our 4 year old showed us that while buckled into his forward-facing car seat in the 3rd row of the Atlas he was able to use his foot to lift up on the 3rd row access lever, causing the captain's chair to slam into the back of the front seat exactly as happened when the 8 year old lifted the lever during our trip.

56.    Defendants monitored and saw the above quoted consumer complaints for three reasons:

a.    First, pursuant to the Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), 49 U.S.C. § 30118, manufacturers are required to monitor reports submitted to NHTSA and report information regarding internal customer complaints and warranty claims to NHTSA, and federal law imposes criminal penalties against manufacturers who fail to disclose known safety defects.

b.    Second, car manufacturers like Defendants know that NHTSA is a repository for complaints, and as such can provide an early warning mechanism for responding to design or manufacturing defects that pose a safety hazard. Hence, as courts have found, it is entirely reasonable to

assume that car manufacturers closely monitor and analyze complaints made to NHTSA—particularly when it entails safety hazard.

c.   Third, online reputation management (commonly called "ORM" for short) is now a standard business practice among most major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on products. "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation."[12] The growth of the internet and social media and the advent of reputation management companies have led to ORM becoming an integral part of many companies' marketing efforts. Defendants regularly monitored NHTSA in connection with its ORM activities because candid comments from Volkswagen owners provide valuable data regarding quality control issues and customer satisfaction. Defendants, therefore, would have learned about the

---

[12]   Moryt Milo, *Great Businesses Lean Forward, Respond Fast*, SILICON VALLEY BUSINESS JOURNAL (September 5, 2013), http://www.bizjournals.com/sanjose/print-edition/2013/05/17/great-businesses-lean-forward-respond.html

numerous complaints filed with NHTSA starting as early as March 2018.

57. Online, consumers have similarly complained of the Latching Device Defect.[13]

### 2. Technical Service Bulletins and Technical Tips

58. Due to their exclusive and superior knowledge regarding the Latching Device Defect, Defendants released at least one TSB describing the issue to their exclusive network of dealerships beginning on or around February 21, 2019.

---

[13] *See e.g.*, VW Atlas Forum, *Atlas 2nd row lever issue, if it is dangerous?*, https://www.vwatlasforum.com/threads/atlas-2nd-row-lever-issue-if-it-is-dangerous.3233/ (last accessed Jun 16, 2021) ("I reported this to my dealer and to NHSTA! The little red button was not popped up and my toddler was in a forward facing car seat. Came to a stop and was slammed into the front seat chocked and crying! I called the dealer right away [Greeley Volkswagen, located in Greeley, CO] and they were not concerned."); ("Hi! I just had this happen on my brand new 2021 and it was HORRIFYING. I only had the car for two weeks and the exact same thing happened, My child was slammed into the driver seat and his captain's chair locked, trapping him. I don't want the car back and I filed a claim. Can you tell me what the outcome of your situation was?"); ("This has happened three times now in my 2021 Teramont (what the Atlas is called in the Middle East). It happened today. I could have sworn I had clicked the seat down properly as I'm very conscious of it now, but apparently I hadn't (or my other child on the third row had released the latch and won't admit to it). I was driving, lightly tapped the brake and my 3 year old daughter in front facing car seat was flung forward into the rear of the front passenger seat and now has a bruise on her forehead, pic attached. I had to quickly stop the car which almost caused a car behind me to go into the back of me. This is extremely dangerous, I'm going to contact VW about it and if they don't reply I'll go to their social media. As someone mentioned it is horrifying to see happen and you can't help the poor child until you've stopped the car, jumped out and ran around to their side to get the door open and the seat back into position.").

59.    On or around February 21, 2019, Volkswagen released a TSB informing dealerships to contact the Volkswagen hotline before attempting repair based on the following report: customer states 2nd row seat rattles while driving (TSB-10158537). *See* Exhibit F. Plaintiffs and members of the Class were never provided with copies of or information about this TSB. Further, the TSB was not directly communicated to consumers. Defendants failed to disclose the Defect to owners and lessees of the Class Vehicles, including Plaintiffs and members of the Class, and, instead, intentionally concealed the Defect.

60.    The TSB, along with pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made to Defendants' network of exclusive dealers and the NHTSA, and testing performed in response to consumer complaints, evidence that since as early as 2018, Defendants have had exclusive and superior knowledge about the Latching Device Defect. Defendants gained their knowledge of the Defect through sources unavailable to Plaintiffs and members of the Class.

### 3.    Prior Recall of the 2018 Volkswagen Atlas and National Attention on Mounting Seat-Structural Injuries.

61.    Volkswagen's failure to remedy the Latching Device Defect is all the worse in the face of the mounting injuries and deaths because of national attention on the harms caused by poor seat structural design. During an investigation into seat-structural safety, CBS News identified more than 100 people, mostly children, who

were severely injured or killed in alleged seatback failures over the past 30 years.[14] The number is likely higher: In 2016, then-NHTSA administrator Mark Rosekind acknowledged that such crashes were not closely tracked.[15] As a result of the Latching Device Defect, and as with seat structural failures generally, the resulting injury is typically to the rear passenger.

62.    Moreover, following the Volkswagen emissions scandal, Volkswagen worked to strengthen its compliance program under a plea agreement with U.S. authorities, Kurt Michels, Volkswagen's chief compliance officer, said in an interview. Under Volkswagen's compliance program, Volkswagen monitors defects and consumer complaints and works to ensure compliance. As a result, Volkswagen was aware of the issues arising from seat assembly failures. Yet Volkswagen failed to take remedial action.

63.    Nor is this even the first instance that the Atlas has faced issues with the integrity of its seats. On June 29, 2018, Volkswagen initiated a recall of 54,537 of its 2018 Atlas vehicles because wide child car-seat bases were interfering with and damaging seat-belt buckles in the second row, causing the belts to release

---

[14]    *See* Exhibit G, Megan Towey, *"No excuse": Safety Experts Say This Car Defect Puts Kids in Danger*, CBS NEWS (March 10, 2016), https://www.cbsnews.com/news/seat-back-failures-injuries-deaths-auto-safety-experts-demand-nhtsa-action/.
[15]    *Id.*

unexpectedly.[16] According to Emily Thomas, Ph.D., an automotive safety engineer at Consumer Reports, Inc., the problem likely had to do with the Atlas rear-seat design.[17]

64.     In almost every recall scenario, some type of internal investigation will be necessary, and in many cases, multiple investigations involving global enforcement entities and stakeholders are increasingly common. From the initial reporting and root cause determination to follow-on regulatory inquiries, a company can find itself involved in several over-lapping and cascading investigations. When conducting its investigation, Volkswagen either did or should have discovered the Latching Device Defect involving the rear seats.

65.     Simply put, Defendants' knowledge of the Latching Device Defect stemmed from customer complaints, monitoring of the performance of Class Vehicles by VW America quality assurance employees, national attention alerting manufacturers to these issues, and prior investigations of prior recalls. Defendants elected to place into the stream of commerce Class Vehicles that they knew would suffer from the failure to design the Latching Device adequately.

---

[16]     *See* Exhibit H, Keith Barry, *2018 Volkswagen Atlas Recalled for Car Seat Issue*, CONSUMER REPORTS (June 19, 2018), https://www.consumerreports.org/car-recalls-defects/vw-recalls-atlas-suvs-for-child-car-seat-issue/.
[17]     *Id.*

**D.**      **Despite Its Knowledge, Volkswagen Misrepresented And Concealed Important Information About the Latching Device Defect and Class Vehicle Safety.**

66.      Defendants failed to inform Class Vehicle owners and lessees at the point of sale and before purchase or lease of the Class Vehicles that the Latching Device was defective and would not be replaced in the event of failure. Defendants misrepresented by affirmative conduct and/or by omission and/or fraudulent concealment the existence of the Latching Device Defect in the Class Vehicles.

67.      By early 2018, Defendants knew that Class Vehicles were experiencing seating assembly failures due to the Latching Device Defect. Despite this knowledge, Defendants continued to sell Class Vehicles with the Defect. This knowledge is imputed to all Defendants because VW America monitored Class Vehicle performance in the United States and reported to its affiliated and parent companies in Germany and the United States.

68.      Plaintiffs David Concepción, Diana Ferrara, and Lauren Daly reported the Defect and representatives of VW America failed to repair and/or replace the Latching Device.

69.      Defendants refused to fully reimburse or compensate the above-mentioned Plaintiffs for vehicle repair expenses or provide a suitable substitute or replacement vehicles.

70.    Despite actual and constructive knowledge of the Latching Device Defect as described in this complaint, Defendants failed to cure the Latching Device Defect and breached the terms of the express warranty.

71.    Through no fault of their own, Plaintiffs and members of the Class did not possess sufficient technical expertise to recognize symptoms of the Latching Device Defect. This information, however, was well known to Defendants, but not revealed.

72.    Plaintiffs and members of the Class relied on material misrepresentations, fraudulent statements and/or material omissions of employees and agents of Defendants at the time of purchase or lease, including, but not limited to, the useful and expected life of Class Vehicles and the recommended Class Vehicle maintenance program.

73.    Defendants actively concealed the true reasonably expected duration of the Latching Device, from Plaintiffs and all Class Vehicle purchasers and lessees. Defendants intentionally failed to inform Class Vehicle purchasers and lessees that Class Vehicles incorporated a Latching Device Defect that would cause the Latching Device to fail.

74.    Defendants actively and fraudulently concealed the existence of the Latching Device Defect including in, *inter alia*, the owner's manual accompanying Class Vehicles.

75. Plaintiffs and members of the Class did not learn that their respective Class Vehicles were defectively designed until after their Latching Device failed.

76. Defendants had actual knowledge, constructive knowledge and/or should have known upon proper inquiry and testing that Class Vehicles were defective with respect to their Latching Device, suffered from the Latching Device Defect during the implied warranty period, and did not have a normal and/or reasonable useful life before sales of Class Vehicles commenced in the United States. This information was technical, proprietary, and not known by the ordinary consumer or the public, including Plaintiffs and members of the Class. Plaintiffs and members of the Class were ignorant of this technical information through no fault of their own.

77. Additional information supporting allegations of fraud and fraudulent conduct is in the control of Defendants. This information includes but is not limited to communications with Class Vehicle owners, remedial measures, and internal corporate communications concerning how to deal with consumers who claim their Latching Device was defective.

78. Material information fraudulently concealed and/or actively suppressed by Defendants includes but is not limited to the Latching Device Defect described in the preceding paragraphs.

79.    Defendants continuously and affirmatively concealed the actual characteristics of Class Vehicles from Plaintiffs and other purchasers and lessees. Defendants breached their affirmative duty of disclosure to Class Vehicle owners and lessees.

80.    Defendants breached implied warranties and actively and affirmatively misrepresented, fraudulently concealed, and suppressed the existence of the Latching Device Defect in Class Vehicles and omissions in accompanying owner's manual and USA Warranty and Maintenance pamphlet.

81.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with

43

substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Class Vehicles without the Latching Device Defect.

82.    The bargaining position of Defendants for the sale of Class Vehicles was grossly disproportionate and vastly superior to that of individual vehicle purchasers and lessees, including Plaintiffs and members of the Class. This is because Defendants knew of the Defect in the Class Vehicles.

83.    Defendants included unfair contractual provisions concerning the length and coverage of the express warranty when they knew that Class Vehicles were inherently defective and dangerous and had been inadequately tested.

84.    Defendants unconscionably sold and leased defective Class Vehicles to Plaintiffs and members of the Class without informing these purchasers and lessees that the Class Vehicles were defective.

85.    Defendants' conduct renders the vehicle purchase and/or lease contract so one-sided as to be unconscionable under the circumstances existing at the formation of the vehicle purchase contract.

86.    Defendants engaged in unconscionable fraudulent commercial practices, attempted to conceal the Latching Device Defect. Defendants are engaged in a continuing fraud concerning the true underlying cause of Class Vehicle failures.

87.    Defendants fraudulently omitted to disclose material facts basic to both the purchase and warranty service concerning Class Vehicles, including information related to the Latching Device Defect, to deceive purchasers and lessees as described in this complaint. At the time of purchase or lease, Defendants fraudulently omitted to disclose material matters regarding the Defect in Class Vehicles, including its impact on future repairs, costs, and vehicle reliability. Defendants fraudulently concealed from Plaintiffs and members of the Defect in Class Vehicles even though Defendants knew or should have known that information concerning the Latch Device Defect was material and central to the marketing, sale, and lease of Class Vehicles to prospective purchasers and lessees, including Plaintiffs and members of the Class.

88.    Material information was fraudulently concealed and/or actively suppressed to sell or lease Class Vehicles to uninformed consumers (including Plaintiffs and members of the Class) premised on affirmations and representations as described in this complaint.

89.    If Plaintiffs and members of the Class had been informed of the Defect in their Class Vehicles, they would not have purchased or leased their respective Class Vehicles or paid substantially less. If Plaintiffs and members of the Class had learned of the Defect in their respective Class Vehicles and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs,

durability and care, they would not have purchased or leased the Class Vehicles since each class member believed they were purchasing or leasing vehicles without major defects and were not fully informed of true characteristics and attributes of Class Vehicles. Defendants' conduct that violated the consumer fraud statutes alleged below deprived Plaintiffs and members of the Class of that remedy.

90.    Material information concerning Class Vehicles was concealed and/or actively suppressed to protect Defendants' corporate profits from loss of sales, purchase refunds, warranty repairs, adverse publicity, and limit brand disparagement. Purchasers believed they were obtaining vehicles with different attributes than described and purchased or leased and were accordingly deprived of economic value and paid a price premium for their Class Vehicles. Defendants had a uniform policy of not properly disclosing Class Vehicle defects to promote sales and increase profits as described in this complaint.

91.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiffs and members of the Class purchased or leased Class Vehicles and sustained an ascertainable loss, including, but not limited to, financial harm as described in this complaint.

## V.    CLASS ACTION ALLEGATIONS

### A.    The Class Definition

92.    The "Class Vehicles" include all Volkswagen Atlas vehicles in the United States that contain the Latching Device Defect that were manufactured, sold, distributed, or leased by Defendants and purchased or leased by Plaintiffs or a Class member after January 1, 2017.

93.    The proposed Nationwide Class includes all persons and entities that purchased or leased a Class Vehicle in the United States, including its territories. Plaintiffs also propose separate State Sub-Classes for California, Florida, Kentucky, Massachusetts, Michigan, New Jersey, New York, Pennsylvania, Texas, and Virginia, each of which includes all persons and entities that purchased or leased a Class Vehicle in that state.

94.    Excluded from the Classes are:

a.    Defendants' officers, directors and employees; Defendants' affiliates and affiliates' officers, directors, and employees; Defendants' distributors and distributors' officers, directors, and employees; and

b.    Judicial officers and their immediate family members and associated court staff assigned to this case.

47

95.    Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that any Class should be expanded, reduced, divided into additional Sub-Classes under Rule 23(c)(5), or otherwise modified.

**B.    Numerosity: Federal Rule of Civil Procedure 23(a)(1)**

96.    The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are hundreds of thousands of Class Vehicles and Class members nationwide. The precise number and identities of Nationwide Class and State Class members may be ascertained from Defendants' records and motor vehicle regulatory data. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

**C.    Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**

97.    This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These include, without limitation, the following:

      a.    Whether the Class Vehicles' Latching Device is defective, as described above;

      b.    Whether Defendants knew, or should have known, about the Latching Device Defect, and, if so, when they knew or should have known about it;

c.    Whether Defendants had a duty to disclose the defective nature of the Class Vehicles to Plaintiffs and Class members;

d.    Whether Defendants' concealment of the Latching Device Defect caused Plaintiffs and Class members to act to their detriment by purchasing or leasing the Class Vehicles;

e.    Whether Defendants' representations concerning vehicle safety were misleading considering the risk that the Latching Device will not secure the second-row seats during deceleration and/or during an accident or collision;

f.    Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, or equitable estoppel;

g.    Whether Defendants misrepresented that the Class Vehicles were safe;

h.    Whether the Defendants concealed that Latching Device Defect;

i.    Whether Defendants' statements, concealments, and omissions regarding the Class Vehicles were material, in that a reasonable consumer could consider them essential in purchasing, selling, maintaining, or operating such vehicles;

j.  Whether Defendants engaged in unfair, deceptive, unlawful and/or fraudulent acts or practices, in trade or commerce, by failing to disclose that the Class Vehicles were designed, manufactured, and sold with defective seat structural components;

k.  Whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

l.  Whether Defendants' concealment of the true defective nature of the Class Vehicles caused their market price to incorporate a premium reflecting the assumption by consumers that the Class Vehicles were equipped with fully functional passenger safety systems and, if so, the market value of that premium; and

m.  Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

**D.    Typicality: Federal Rule of Civil Procedure 23(a)(3)**

98.    Plaintiffs' claims are typical of the Class members' claims whom they seek to represent under Fed. R. Civ. P. 23(a)(3), because Plaintiffs and each Class member purchased or leased a Class Vehicle and were comparably injured through Defendants' wrongful conduct as described above. Plaintiffs and the other Class members suffered damages as a direct proximate result of the same wrongful

practices by Defendants. Plaintiffs' claims arise from the same practices and courses of conduct that give rise to the claims of the other Class members. Plaintiffs' claims are based on the same legal theories as the claims of the other Class members.

### E.    Adequacy: Federal Rule of Civil Procedure 23(a)(4)

99.    Plaintiffs will fairly and adequately represent and protect the interests of the Class members as required by Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests do not conflict with the interests of the Class members. Plaintiffs have retained counsel competent and experienced in complex class action litigation, including automobile defect litigation and other consumer protection litigation. Plaintiffs intend to prosecute this action vigorously. Neither Plaintiffs nor their counsel have interests that conflict with the interests of the other Class members. Therefore, the interests of the Class members will be fairly and adequately protected.

### F.    Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)

100.    Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, for the Class as a whole.

### G.    Superiority: Federal Rule of Civil Procedure 23(b)(3)

101.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in its management. The damages or other financial detriment suffered

by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims individually against Defendants such that it would be impracticable for members of the Classes to individually seek redress for Defendants' wrongful conduct.

102.  Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    ANY APPLICABLE STATUTES OF LIMITATION ARE TOLLED

103.  Defendants have known of the Latching Device Defect based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, consumer complaints made as early as March 2018 to Defendants' network of exclusive dealers and NHTSA, aggregate warranty, consumer complaints to dealers and online, and testing performed in response to consumer complaints, *inter alia*, Defendants were aware (or should have been aware) of the Latching Device Defect in the Class Vehicles.

104.  Despite this knowledge, Defendants did not disclose the seriousness of the issue and, in fact, concealed the prevalence of the problem. In so doing,

Defendants have failed to warn consumers, initiate timely recalls, or inform NHTSA, as Volkswagen is obligated to do.

105.   Defendants had a duty to disclose the Latching Device Defect to consumers and NHTSA. Contrary to this duty, Volkswagen concealed the defect by continuing to distribute, sell, and/or lease the Class Vehicles to Plaintiffs and the Class members; to advertise the safety of the Class Vehicles; and to fail to notify regulators or the Plaintiffs and the Class members about the truth about the Class Vehicles.

106.   Because of the highly technical nature of the Latching Device Defect, Plaintiffs and Class members could not independently discover it using reasonable diligence. Before the retention of counsel and without third-party experts, Plaintiffs and Class members lack the necessary expertise repair the Latching Device and understand its defective nature.

107.   Accordingly: (1) Defendants' fraudulent concealment tolls the statute of limitations; (2) Defendants are estopped from relying on the statute of limitations; and (3) the statute of limitations is tolled by the discovery rule.

108.   The nature of notice to the proposed Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by the best notice practicable under the circumstance including, inter alia, email, publication in major newspapers and/or on the internet.

## VII.   NATIONWIDE CLASS CLAIMS

### NATIONWIDE COUNT I
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *ET SEQ.*
### (ON BEHALF THE NATIONWIDE CLASS)

109.   Plaintiffs re-allege and incorporate by reference all paragraphs as though full set forth herein.

110.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301, by virtue of 28 U.S.C. § 1332 (a)-(d).

111.   The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

112.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

113.   Each Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. 15 U.S.C. § 2301(4)-(5).

114.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a warranty.

115.   Defendants provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is a "written warranty" within the meaning of the Magnuson-Moss

Warranty Act, 15 U.S.C. § 2301(7). As part of these written warranties, Defendants warranted that the Class Vehicles were defect free and/or would meet a specified level of performance over a specified period of time and formed the basis of a bargain between Defendants and Plaintiffs and the other Class members.

116.   Defendants provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As part of the implied warranty of merchantability, Defendants warranted that the Class Vehicles were fit for their ordinary purpose as safe passenger motor vehicles, would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

117.   Defendants breached these warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Class Vehicles share a common design defect in that they are equipped with rear seats containing the Latching Device Defect. Despite their knowledge of the Defect, Defendants have not issued a recall to repair and/or replace the Class Vehicles.

118.    Any efforts to limit the warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

119.    Any limitations on the warranties are procedurally unconscionable. There was unequal bargaining power between Defendants on the one hand, and Plaintiffs and the other Class members, on the other.

120.    Any limitations on the warranties are substantively unconscionable. Defendants knew that the Class Vehicles were defective and would continue to pose safety risks. Defendants also knew that their express warranties would not cover the Latching Device Defect, and knowingly and intentionally transferred the costs of repair and/or replacement to Plaintiffs and the Class members.

121.    Plaintiffs and each of the other Class members have had sufficient direct dealings with either Defendants or their agents (dealerships) to establish privity of contract.

122.    Nonetheless, privity is not required here because Plaintiffs and each of the other Class members are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and

intended to benefit consumers. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the Latching Device Defect.

123.    Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and have provided Defendants notice and an opportunity to cure the Defect. *See* Exhibit A.

124.    Furthermore, affording Defendants an opportunity to cure their breach of the warranties would be unnecessary and futile here. At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

125.    Plaintiffs and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and the other

Class members have not re-accepted their defective Class Vehicles by retaining them.

126.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

127.   Plaintiffs also request, as a form of equitable monetary relief, re-payment of the out-of-pocket expenses and costs they have incurred in attempting to rectify the Latching Device Defect in their vehicles. Such expenses and losses will continue as Plaintiffs and Class members must take time off from work, pay for rental cars or other transportation arrangements, child care, and the myriad expenses involved in going through the recall process.

128.   The right of Class members to recover these expenses as an equitable matter to put them in the place they would have been but for Defendants' conduct presents common questions of law. Equity and fairness requires the establishment by Court decree and administration under Court supervision of a program funded by Defendants, using transparent, consistent, and reasonable protocols, under which such claims can be made and paid.

## NATIONWIDE COUNT II
## FRAUD BY CONCEALMENT OR OMISSION
## COMMON LAW
## (ON BEHALF OF THE NATIONWIDE CLASS)

129.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

130.   Plaintiffs bring this claim on behalf of themselves and the Nationwide Class under the common law of fraudulent concealment, as there are no true conflicts among various states' laws of fraudulent concealment. Defendants are liable for both fraudulent concealment and non-disclosure. *See, e.g.*, Restatement (Second) of Torts §§ 550-51 (1977). In the alternative, Plaintiffs bring this claim on behalf of the State Sub-Classes.

131.   Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Latching Device Defect with the intent to mislead Plaintiffs and Class members. Defendants knew, or should have known, that the Latching Device was defective in its design and that the manufacturer's

warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Latching Device Defect in the Class Vehicles could cause the rear seats to slam forward during deceleration. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

132.  A reasonable consumer would not have expected that the Class Vehicles contain a defective Latching Device that could cause the seats to slam forward during deceleration and risk death and/or injury to rear-seated passengers. Defendants knew that reasonable consumers expect that their vehicle has working seats, and would rely on those facts in deciding whether to purchase, lease, or retain a new or used motor vehicle. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

133.  Defendants ensured that Plaintiffs and the Class did not discover this information through actively concealing it and misrepresenting the Class Vehicles' seating assemblies without disclosing the truth. Defendants intended for Plaintiffs and the Class to rely on their omissions—which they did by purchasing and leasing the Class Vehicles at the prices they paid.

134.  Defendants had a duty to disclose the Latching Device Defect because:

a.  Defendants had exclusive and/or far superior knowledge and access to the facts about this hidden and complex safety Defect. Defendants also knew that these technical facts were not known to or reasonably discoverable by Plaintiffs and the Class;

b.  Defendants knew the Latching Device Defect (and its safety risks) was a material fact that would affect Plaintiffs' or Class members' decisions to buy or lease Class Vehicles;

c.  Defendants are subject to statutory duties to disclose known safety Defects to consumers and NHTSA; and

d.  Defendants made incomplete representations about the safety and reliability of the Class Vehicles and their passenger safety systems, while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to Plaintiffs and the Class that the Class Vehicles contained the dangerous Latching Device Defect. Because they volunteered to provide information about the Class Vehicles that they offered for sale to Plaintiffs and the Class, Defendants had the duty to disclose the whole truth. They did not.

135.   To this day, Defendants have not made full and adequate disclosure, continue to defraud Plaintiffs and the Class, and continue to conceal material information regarding the Latching Device Defect. The omitted and concealed facts were material because a reasonable person would find them important in purchasing, leasing, or retaining a new or used motor vehicle, and because they directly impact the value of the Class Vehicles purchased or leased by Plaintiffs and the Class.

136.   Defendants actively concealed or suppressed these material facts, in whole or in part, to maintain a market for their vehicles, to protect profits, and to avoid recalls that would hurt the brand's image and cost money. They did so at the expense of Plaintiffs and the Class. Had they been aware of the Latching Device Defect in the Class Vehicles, and Defendants' callous disregard for safety, Plaintiffs and the Class either would not have paid as much as they did for their Class Vehicles, or they would not have purchased or leased them.

137.   Accordingly, Defendants are liable to Plaintiffs and the Class for their damages in an amount to be proven at trial, including, but not limited to, their lost overpayment for the Class Vehicles at the time of purchase or lease.

138.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of Plaintiffs' and the Class' rights and well-being; and to enrich themselves. Their misconduct warrants an assessment of

punitive damages in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### NATIONWIDE COUNT III
### NEGLIGENT MISREPRESENTATION
### COMMON LAW
### (ON BEHALF OF THE NATIONWIDE CLASS)

139.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

140.   Plaintiffs assert this Negligent Misrepresentation count on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Sub-Classes.

141.   Defendants owed a duty to disclose the Latching Device Defect and its corresponding safety risk to Plaintiffs and Class members because Defendants knew or should have known of the Defect and the risks associated with the Latching Device's failure. Defendants also made partial disclosures regarding the safety of the Class Vehicles while Defendants either knew or should have known that the Class Vehicles possessed the Latching Device Defect and failed to disclose its existence and its corresponding safety hazard.

142.   Defendants negligently misrepresented and omitted material facts, in owners' manuals, maintenance schedules, or elsewhere, concerning the standard, quality, or grade of the Class Vehicles and the fact that the Latching Device installed in the Class Vehicles is defective and prone to failure, exposing drivers and

63

occupants to safety risks. Defendants misrepresented that they would remedy any defects under the express warranties but limited their coverage to mechanical defects. As a direct result of Defendants' negligent conduct, Plaintiffs and Class members have suffered actual damages.

143.   The fact that the Latching Device installed in the Class Vehicles is defective is material because it presents a safety risk and places the driver and occupants at risk of serious injury or death. When the Latching Device fails, the rear-seats slam forward and may cause death and/or bodily injury to the occupants. During failure, drivers may be shocked, distracted and distressed by the collision and/or injuries to the rear-seated occupants and be unable to safely operate the Class Vehicles. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents which may result in failure of the Latching Device. No reasonable consumer expects a vehicle to contain a defect in design, such as the Latching Device Defect, that can cause seating assembly failure with no warning or time to take preventative measures.

144.   Plaintiffs and Class members would not have purchased the Class Vehicles but for Defendants' negligent omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the Latching Device Defect and corresponding safety risk, or would have paid less for the Class Vehicles.

Plaintiffs and Class members justifiably relied upon Defendants' negligent false representations and omissions of material facts.

145.   As a direct and proximate result of Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Latching Device Defect, Plaintiffs and Class members have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## NATIONWIDE COUNT IV
## UNJUST ENRICHMENT
## COMMON LAW
## (ON BEHALF OF THE NATIONWIDE CLASS)

146.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

147.   Plaintiffs assert this Unjust Enrichment count on behalf of themselves and the Nationwide Class or, in the alternative, on behalf of the State Sub-Classes.

148.   Because of their conduct, Defendants caused damages to Plaintiffs and Class members.

149.   Plaintiffs and Class members conferred a benefit on the Defendants by overpaying for Class Vehicles at prices that were artificially inflated by Defendants' concealment of the Latching Device Defect and misrepresentations regarding the Class Vehicles' safety.

150.  As a result of Defendants' fraud and deception, Plaintiffs and Class members were not aware of the facts concerning the Class Vehicles and did not benefit from the Defendants' misconduct.

151.  Defendants knowingly benefitted from their unjust conduct. They sold and leased Class Vehicles equipped with a Latching Device Defect for more than what the vehicles were worth, at the expense of Plaintiffs and Class members.

152.  Defendants readily accepted and retained these benefits from Plaintiffs and Class members.

153.  It is inequitable and unconscionable for Defendants to retain these benefits because they misrepresented that the Class Vehicles were safe, and intentionally concealed, suppressed, and failed to disclose the Latching Device Defect to consumers. Defendants knowingly limited their warranty coverage and excluded the Latching Device Defect. Plaintiffs and Class members would not have purchased or leased the Class Vehicles or paid less for them had Defendants not concealed the Latching Device Defect.

154.  Plaintiffs and Class members do not have an adequate remedy at law.

155.  Equity cannot in good conscience permit the Defendants to retain the benefits that they derived from Plaintiffs and Class members through unjust and unlawful acts, and therefore restitution or disgorgement of the amount of the Defendants' unjust enrichment is necessary.

**NATIONWIDE COUNT V**
**VIOLATION OF THE N.J. CONSUMER FRAUD ACT ("NJCFA")**
**N.J. STAT. ANN. § 56:8-2 ET SEQ.**
**(ON BEHALF OF THE NATIONWIDE CLASS AND**
**NEW JERSEY SUB-CLASS)**

156.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

157.   Plaintiff Erica Upshur (for purposes of this count, "Plaintiff") brings this claim on behalf of herself, the Nationwide Class, and the New Jersey Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

158.   The NJCFA prohibits:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J. STAT. ANN. § 56:8-2.

159.   Plaintiff and members of the Nationwide Class and New Jersey Sub-Class are consumers who purchased or leased Class Vehicles for personal, family, or household use.

160.   In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by

providing Class Vehicles that contain the Latching Device Defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles. Further, Defendants misrepresented the standard, quality or grade of the Class Vehicles— which were sold or leased—and failed to disclose the Latching Device Defect and corresponding safety risk in violation of the NJCFA.

161.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiff and members of the Nationwide Class and New Jersey Sub-Class. When Plaintiff and members of the Nationwide Class and New Jersey Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Latching Device was free from latent defects or alternatively, would be covered under Defendants' express warranties. Had Defendants disclosed that the Latching Device may fail and/or create an unavoidable safety risk, Plaintiff and members of the Nationwide Class and New Jersey Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

162.    Defendants knowingly concealed, suppressed and/or omitted the existence of the Latching Device Defect and safety risk in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

163.    Defendants knew that the Latching Device Defect was designed defectively and unconscionably limited the manufacturer's warranty coverage so

that the Latching Device would be excluded, thereby unlawfully transferring the costs of repair or replacement to Plaintiff and members of the Nationwide Class and New Jersey Sub-Class. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

164.    Defendants owed a duty to disclose the Latching Device Defect and its corresponding safety risk to Plaintiff and members of the Nationwide Class and New Jersey Sub-Class because Defendants possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Latching Device's failure. Rather than disclose the Defect, Defendants intentionally concealed the Defect with the intent to mislead Plaintiff and members of the Nationwide Class and New Jersey Sub-Class in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Latching Device to Plaintiff and members of the Nationwide Class and New Jersey Sub-Class.

165.    Defendants also knew, or should have known, that the Latching Device Defect in the Class Vehicles could cause the seats to slam forward during deceleration. Further, Defendants knew, or should have known, that such failure would place vehicle operators and rear passengers at risk for serious death or injury.

69

166.   Had Plaintiff and members of the Nationwide Class and New Jersey Sub-Class known about the Latching Device Defect at the time of purchase, including the safety hazard posed by the Defect, they would not have bought the Class Vehicles or would have paid much less for them.

167.   As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Plaintiff and members of the Nationwide Class and New Jersey Sub-Class have suffered and continue to suffer harm by the threat of unexpected failure of the Latching Device and/or actual damages in the amount of the cost to replace the Latching Device, and damages to be determined at trial. Plaintiff and members of the Nationwide Class and New Jersey Sub-Class have also suffered the ascertainable loss of the diminished value of their vehicles.

168.   As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiff and members of the Nationwide Class and New Jersey Sub-Class are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial. *See* N.J. STAT. ANN. § 56:8-19. Plaintiff and members of the Nationwide Class and New Jersey Sub-Class also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA. *See* N.J. STAT. ANN. § 56:8-19.

## NATIONWIDE COUNT VI
## BREACH OF EXPRESS WARRANTY

## N.J. STAT. ANN. §§ 12A:2-314 AND 12A:2A-210
## (ON BEHALF OF THE NATIONWIDE CLASS AND
## NEW JERSEY SUB-CLASS)

169.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

170.    Plaintiff Erica Upshur (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Nationwide Class and New Jersey Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

171.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J. STAT. ANN. § 12A:2-104(1), and "sellers" and "lessors" of motor vehicles under § 12A:2-103(1)(d) and § 12A:2A-103(1)(p).

172.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. §§ 12A:2-105(1) and 2A-103(1)(h).

173.    Defendants provided Plaintiffs and members of the Nationwide Class and New Jersey Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. For illustrative purposes, Defendants currently provide: (1) bumper-to-bumper coverage for six years or 72,000 miles, whichever came first; or (2) four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis. Under the warranties provided to Plaintiff and the Nationwide Class and New Jersey Sub-Class, Defendants promised to repair or

71

replace covered defective components, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

174.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Latching Device prior to 280,000 miles. Such representations formed the basis of the bargain in Plaintiff and members of the Nationwide Class's and New Jersey Sub-Class's decisions to purchase or lease the Class Vehicles.

175.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Latching Device Defect and its corresponding safety risk from Plaintiff and members of the Nationwide Class and New Jersey Sub-Class.

176.   Plaintiff and members of the Nationwide Class and New Jersey Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Nationwide Class and New Jersey Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty

agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

177.  Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Nationwide Class and New Jersey Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Latching Device Defect is by design, the warranties are substantively unconscionable because Defendants knew that the Latching Device was defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Latching Device.

178.  Plaintiff and members of the Nationwide Class and New Jersey Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the Nationwide Class and New Jersey Sub-Class that the Class Vehicles contained the Latching Device Defect and failed to provide a suitable repair or replacement of the Latching Device free of charge within a reasonable time.

179.  On information and belief, Defendants have not suitably repaired or replaced the defective Latching Device free of charge for Plaintiff and members of

the Nationwide Class and New Jersey Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

180.   The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Class Vehicles without the Latching Device Defect.

181.   The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Nationwide Class and New Jersey Sub-Class.  Among other things, Plaintiff and members of the Nationwide Class and New Jersey Sub-Class did not determine these time

limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

182.   Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Latching Device Defect and have failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

183.   Defendants were provided notice by Plaintiff of their breach of express warranties by letter dated August 16, 2021. *See* Exhibit A. Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

184.   Because of the Latching Device Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

185.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the Nationwide Class and New Jersey Sub-Class have been damaged in an amount to be determined at trial.

186.    In the alternative, should Defendants claim that the Latching Device Defect is covered under the warranties, the warranties now fail in its essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Nationwide Class and New Jersey Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

187.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the Nationwide Class and New Jersey Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Nationwide Class and New Jersey Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**NATIONWIDE COUNT VII**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**N.J. STAT. ANN. §§ 12A:2-314, 12A:2A-103, AND 12A:2A-212**
**(ON BEHALF OF THE NATIONWIDE CLASS AND**
**NEW JERSEY SUB-CLASS)**

188.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

189.    Plaintiff Erica Upshur (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Nationwide Class and New Jersey Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

190.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J. STAT. ANN.§ 12A:2-104(1), and "sellers" and "lessors" of motor vehicles under § 12A:2-103(1)(d) and § 12A:2A-103(1)(p).

191.    The Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. STAT. ANN. §§ 12A:2-105(1) and 2A-103(1)(h).

192.    Plaintiff and members of the Nationwide Class and New Jersey Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

193.    A warranty that the Class Vehicles and/or the defective Latching Devices installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.J. STAT. ANN. §§ 12A:2- 314 and 2A-212.

194.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect—the Latching Device Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

195.   Through their maintenance schedules, Defendants further represented that the defective Latching Device would not need periodic inspection, repair or replacement before 280,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Latching Device before 280,000 miles by omitting the Latching Device from the maintenance schedules.  Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

196.   Plaintiff and members of the Nationwide Class and New Jersey Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Nationwide Class and New Jersey Sub-Class, on the other hand.  Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers.  The dealers were not intended to

78

be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.

197. Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Latching Device Defect and, on information and belief, have refused to repair or replace the defective Latching Device free of charge within a reasonable time.

198. Defendants were further provided notice by Plaintiff of their breach of implied warranties by letter dated August 16, 2021. *See* Exhibit A. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

199. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Nationwide Class and New Jersey Sub-Class have been damaged in an amount to be proven at trial.

200. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they

knowingly sold or leased a defective product without informing consumers about the Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Nationwide Class and New Jersey Sub-Class. Among other things, Plaintiff and members of the Nationwide Class and New Jersey Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Nationwide Class and New Jersey Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

201.    Plaintiff and members of the Nationwide Class and New Jersey Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

202.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

## VIII.  STATE SPECIFIC CLAIMS

### A.    California Counts

**CALIFORNIA COUNT I**
**VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**CAL. CIV. CODE § 1750, *ET SEQ.***
**(ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

203.   Plaintiffs Beatriz Tijerina and David Concepción (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

204.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

205.   Plaintiffs and California Sub-Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

206.   Defendants, the California Plaintiffs, and California Sub-Class members are "persons" within the meaning of Cal. Civ. Code § 1761(c).

207.   The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

208.   The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

209.   Defendants engaged in unfair or deceptive acts or practices when, in the course of their business they, among other acts and practices, intentionally and knowingly made materially false representations regarding the reliability, safety, and

performance of the Class Vehicles and/or the defective Latching Device, as detailed above.

210.    Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

a.    Representing that the Class Vehicles have characteristics, uses, benefits, and qualities they do not have.

b.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not.

c.    Advertising the Class Vehicles and/or with the intent not to sell or lease them as advertised.

d.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

211.    Additionally, in the various channels of information through which Defendants sold and marketed Class Vehicles, Defendants failed to disclose material information concerning the Class Vehicles, which they had a duty to disclose. Defendants had a duty to disclose the defect because, as detailed above: (a) Defendants knew about the defect in the Latching Device in the Class Vehicles; (b)

Defendants had exclusive knowledge of material facts not known to the general public or the other California Sub-Class members; (c) Defendants actively concealed material facts concerning the seat restraints from the general public and Plaintiffs and California Sub-Class members; and (d) Defendants made partial representations about the Class Vehicles that were misleading because they did not disclose the full truth.

212.    Defendants' unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and/or suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did, in fact, deceive reasonable consumers, including Plaintiffs and California Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

213.    Plaintiffs and the other California Sub-Class members have suffered injury in fact and actual damages resulting from Defendants' material omissions.

214.    Defendants' violations present a continuing risk to Plaintiffs and California Sub-Class members, as well as to the general public, and therefore affect the public interest.

215.    Defendants are on notice of the issues raised in this count and this Complaint by way of notice letters sent by Plaintiffs to Defendants on August 16,

2021 in accordance with Cal. Civ. Code § 1782(a) of the CLRA, notifying Defendants of their alleged violations of Cal. Civ. Code § 1770(a) and demanding that Defendants correct or agree to correct the actions described therein within thirty (30) days of the notice letter. *See* Exhibit A. Defendants failed to remedy their unlawful conduct within the requisite time period, and continue to fail to do so.

216.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs and California Sub-Class members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the CLRA.

217.    Attached hereto as Exhibit B is a venue affidavit required by CLRA, Cal. Civ. Code § 1780(d).

**CALIFORNIA COUNT II**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE § 17200, *ET SEQ.***
**(ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

218.    Plaintiffs Beatriz Tijerina and David Concepción (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

219.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

220.   The California Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

221.   Defendants' knowing and intentional conduct described in this Complaint constitutes unlawful, fraudulent, and unfair business acts and practices in violation of the UCL. Specifically, Defendants' conduct is unlawful, fraudulent, and unfair in at least the following ways:

a.    by knowingly and intentionally concealing from Plaintiffs and California Sub-Class members that the Class Vehicles suffer from the Latching Device Defect while obtaining money from the California Sub-Class members;

b.    by marketing Class Vehicles as possessing a functional, safe, and defect-free passenger safety system.

c.    by purposefully designing and manufacturing the Class Vehicles to contain a defective Latching Device that causes second-row seats to decouple from the seating assembly during deceleration and/or an accident or collision contrary to what was disclosed to regulators and represented to consumers who purchased or leased Class Vehicles, and failing to fix the Latching Device Defect free of charge; and

d.    by violating the other California laws alleged herein, including the

False Advertising Law, Consumers Legal Remedies Act, California Commercial Code, and Song-Beverly Consumer Warranty Act.

222.    Defendants' misrepresentations, omissions, and concealment were material to the California Plaintiffs and California Sub-Class members, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealment, and omissions.

223.    Defendants' material misrepresentations and omissions alleged herein caused Plaintiffs and the California Sub-Class members to make their purchases or leases of their Class Vehicles. Absent those misrepresentations and omissions, Plaintiffs and California Sub-Class members would not have purchased or leased these vehicles, or would not have purchased or leased these Class Vehicles at the prices they paid.

224.    Accordingly, Plaintiffs and California Sub-Class members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

225.    Defendants' violations present a continuing risk to Plaintiffs and California Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

226.   Plaintiffs requests that this Court enter an order enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices and restoring to members of the California Sub-Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345, and for such other relief set forth below.

### CALIFORNIA COUNT III
### VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW
### CAL. BUS. & PROF. CODE § 17500, *ET SEQ.*
### (ON BEHALF OF THE CALIFORNIA SUB-CLASS)

227.   Plaintiffs Beatriz Tijerina and David Concepción (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles. The California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, prohibits false advertising.

228.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

229.   Defendants, Plaintiffs, and California Sub-Class members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

230.   Defendants violated the FAL by causing to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements regarding the safety of the Class Vehicles that were untrue

or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including California Sub-Class members. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

231. The misrepresentations and omissions regarding the reliability and safety of Class Vehicles as set forth in this Complaint were material and had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did, in fact, deceive reasonable consumers, including Plaintiffs and California Sub-Class members, about the true safety and reliability of Class Vehicles, the quality of the Defendants' brands, and the true value of the Class Vehicles.

232. In purchasing or leasing their Class Vehicles, the California Sub-Class members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Class Vehicles. Defendants' representations turned out not to be true because the Class Vehicles are distributed with a dangerous safety defect, rendering the second-row seats hazardous in certain conditions.

233. Plaintiffs and the other California Sub-Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. Had they known the truth, Plaintiffs and

California Sub-Class members would not have purchased or leased the Class Vehicles or paid significantly less for them.

234.   The California Plaintiffs and California Sub-Class members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and California Sub-Class members did not, and could not, unravel Defendants' deception on their own.

235.   Defendants had an ongoing duty to Plaintiffs and California Sub-Class members to refrain from unfair or deceptive practices under the California False Advertising Law in the course of their business. Specifically, the Defendants owed Plaintiffs and California Sub-Class members a duty to disclose all the material facts concerning the Latching Device Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the defect from Plaintiffs and California Sub-Class members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

236.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

237.   Defendants' violations present a continuing risk to Plaintiffs and California Sub-Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

238.   Plaintiffs request that this Court enter an order enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices and restoring to the California Sub-Class any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**
**CAL. COM. CODE §§ 2313 AND 10210**
**(ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

239.   Plaintiffs Beatriz Tijerina and David Concepción (for purposes of this count, "Plaintiffs") brings this claim on behalf of themselves and the California Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

240.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

241.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

242.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

243.   All California Sub-Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

244.   All California Sub-Class members who leased Class Vehicles in the California are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

245.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

246.   Defendants provided Plaintiffs and members of the California Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. For illustrative purposes, Defendants currently provide: (1) bumper-to-bumper coverage for six years or 72,000 miles, whichever came first; or (2) four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis. Under the warranties provided to Plaintiffs and the California Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

247.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Latching Device prior to 280,000 miles. Such representations formed the basis of the bargain in Plaintiffs and members of the California Sub-Class's decisions to purchase or lease the Class Vehicles.

248.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Latching Device Defect and its corresponding safety risk from Plaintiffs and members of the California Sub-Class.

249.   Plaintiffs and members of the California Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the California Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

250.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and members of the California Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Latching Device Defect is by design, the warranties are substantively unconscionable because Defendants knew that the

Latching Device was defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Latching Device.

251.  Plaintiffs and members of the California Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiffs and members of the California Sub-Class that the Class Vehicles contained the Latching Device Defect and failed to provide a suitable repair or replacement of the Latching Device free of charge within a reasonable time.

252.  On information and belief, Defendants have not suitably repaired or replaced the defective Latching Device free of charge for Plaintiffs and members of the California Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

253.  The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to

Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Class Vehicles without the Latching Device Defect.

254.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the California Sub-Class.  Among other things, Plaintiffs and members of the California Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

255.  Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of, concealed the

Latching Device Defect, and have failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

256.    Defendants were provided notice by Plaintiffs of their breach of express warranties by letter dated August 16, 2021. *See* Exhibit A.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

257.    Because of the Latching Device Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

258.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and members of the California Sub-Class have been damaged in an amount to be determined at trial.

259.    In the alternative, should Defendants claim that the Latching Device Defect is covered under the warranties, the warranties now fail in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the California Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

260.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and members of the California Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the California Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**CALIFORNIA COUNT V**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**CAL. COM. CODE §§ 2314 AND 10212**
**(ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

261.   Plaintiffs Beatriz Tijerina and David Concepción (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

262.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

263.   Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

264.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

265.   All California Sub-Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

266.   All California Sub-Class members who leased Class Vehicles in the California are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

267.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

268.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

269.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

270.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles were used. Specifically, the Class Vehicles suffer from the Latching Device Defect, which may cause the airbags and seatbelt to fail to deploy during an accident, rendering the Class Vehicles inherently defective and dangerous.

271.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.

Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the California Sub-Class. Among other things, Plaintiffs and members of the California Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the California Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

272.    Defendants were provided reasonable notice of these issues and an opportunity to cure the breaches of their express warranties by way of a letter sent by Plaintiffs on August 16, 2021. *See* Exhibit A. Alternatively, any opportunity to cure the breach is unnecessary and futile.

273.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and California Sub-Class members have been damaged in an amount to be proven at trial.

**CALIFORNIA COUNT VI**
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT,**
**BREACH OF IMPLIED WARRANTY**
**CAL CIV. CODE § 1790, *ET SEQ.***
**(ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

274.   Plaintiffs Beatriz Tijerina and David Concepción (for the purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the California Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

275.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

276.   All California Sub-Class members who purchased Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

277.   All California Sub-Class members who leased Class Vehicles in California are "lessors" within the meaning of Cal. Civ. Code § 1791(h).

278.   The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

279.   Defendants are the "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

280.   Defendants impliedly warranted to Plaintiffs and the other members of the California Sub-Class that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Class Vehicles do not have the quality that a buyer would reasonably expect.

281.   The Class Vehicles would not pass without objection in the automotive trade due to the Latching Device Defect. Because the Class Vehicles contain

defective Latching Devices, the Class Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

282.    The Class Vehicles are not adequately labeled because the labeling fails to disclose the Latching Device Defect. The Class Vehicles do not conform to the promises and affirmations made by the Defendants regarding safety.

283.    The Defendants' breach of the implied warranty of merchantability caused damage to Plaintiffs and California Sub-Class members who purchased or leased the defective Class Vehicles. The amount of damages due will be proven at trial.

284.    Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and California Sub-Class members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

**B.    Florida Counts**

### COUNT I
### VIOLATION OF FLORIDA'S DECEPTIVE & UNFAIR TRADE PRACTICES ACT ("FDUTPA"), FLA. STAT. §§ 501.201, *ET SEQ.* (ON BEHALF OF THE FLORIDA SUB-CLASS)

285.    Plaintiffs Gina Aprile and Theresa Gillespie (for purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Florida Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

286.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

287.    Plaintiffs and the members of the Florida Sub-Class are "consumers" within the meaning of the FDUTPA, FLA. STAT. § 501.203(7).

288.    Defendants engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

289.    FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1). Defendants engaged in unfair and deceptive practices that violated the FDUTPA as described above.

290.    In the course of their businesses, Defendants failed to disclose and actively concealed the Latching Device Defect contained in the Class Vehicles and the corresponding dangers and risks posed by the Class Vehicles, as described above and otherwise engaged in activities with a tendency or capacity to deceive.

291.    In violation of the FDUTPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles. Defendants knowingly concealed, suppressed, and omitted material facts regarding the Latching Device Defect and associated safety hazard and

misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiffs and the members of the Florida Sub-Class.

292.    Defendants actively suppressed the fact that the Latching Device in Class Vehicles is defective and presents a safety hazard. Further, Defendants employed unfair and deceptive trade practices by denying repairs or replacement of the Latching Device Defect within a reasonable time in violation of FDUTPA. Defendants also breached warranties as alleged below in violation of FDUTPA.

293.    As alleged above, Defendants knew or should have known of the Latching Device Defect contained in the Class Vehicles since at least 2018. Prior to installing the defective Latching Devices in the seating assemblies in the Class Vehicles, Defendants engaged in pre-production testing and failure mode analysis. Defendants also knew about the Latching Device Defect after releasing a TSB describing the issue to their exclusive network of dealerships. Defendants should have known about the Latching Device Defect after monitoring numerous consumer complaints sent to NHTSA and online. Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and seating assemblies with the Latching Device Defect installed in them.

294.    By failing to disclose and by actively concealing the Latching Device Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as a reputable manufacturer or distributor for a

reputable manufacture that values safety, Defendants engaged in unfair or deceptive business practices in violation of the FDUTPA. Defendants deliberately withheld the information about the propensity of the Latching Device Defect to cause rear-seats to slam forward during deceleration as well as the corresponding safety hazard to vehicle occupants.

295.    Defendants' unfair and deceptive trade practices were likely intended to deceive a reasonable consumer. Plaintiffs and the members of the Florida Sub-Class had no reasonable way to know that the Class Vehicles contained the Latching Device Defect, which were defective in design and posed a serious and significant health and safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Latching Device Defect within their seating assemblies and the corresponding safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiffs and the members of the Florida Sub-Class did.

296.    Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Latching Device Defect with the intent to mislead Plaintiffs and members of the Florida Sub-Class. Defendants knew, or should have known, that the Latching Device was defective in its design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or

should have known, that the Latching Device Defect in the Class Vehicles could cause the seats to slam forward during deceleration. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

297.   Defendants knew or should have known that their conduct violated the FDUTPA.

298.   Defendants made material statements and/or omissions about the safety and reliability of the Class Vehicles and/or the Latching Device Defect installed in them that were either false or misleading. Defendants' misrepresentations, omissions, statements, and commentary have included selling and marketing Class Vehicles as safe and reliable, despite their knowledge of the Latching Device Defect and its corresponding safety hazard.

299.   To protect their profits, avoid remediation costs and public relation problems, and increase their profits by having consumers pay to remedy the Latching Device Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles and the seating assemblies with the Latching Device Defect installed in them. Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

300.   Defendants owed Plaintiffs and the members of the Florida Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and the existence of the Latching Device Defect because Defendants:

(a)   Possessed exclusive knowledge of the Latching Device Defect and its associated safety hazard;

(b)   Intentionally concealed the foregoing from Plaintiffs and the members of the Florida Sub-Class; and/or

(c)   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the members of the Florida Sub-Class that contradicted these representations.

301.   Because Defendants fraudulently concealed the Latching Device Defect in the seating assemblies of Class Vehicles, and now that the Defect has been disclosed, the value of the Class Vehicles has greatly diminished, and they are now worth significantly less than they otherwise would be. Further, Plaintiffs and the members of the Florida Sub-Class were deprived of the benefit of the bargain they reached at the time of purchase or lease.

302.   Defendants' failure to disclose and active concealment of the Latching Device Defect in the Class Vehicles are material to Plaintiffs and the members of the Florida Sub-Class. A vehicle made by an honest and reputable manufacturer of

safe vehicles is worth more than an otherwise comparable vehicle made by a dishonest and disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly reports on and remedies them.

303. Plaintiffs and the members of the Florida Sub-Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information. Had Plaintiffs and the members of the Florida Sub-Class been aware of the Latching Device Defect that existed in the Class Vehicles and Defendants' complete disregard for the safety of its consumers, Plaintiffs and the members of the Florida Sub-Class either would have not paid as much for their vehicles or would not have purchased or leased them at all. Plaintiffs and the members of the Florida Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

304. Plaintiffs and the members of the Florida Sub-Class risk loss of use of their vehicles as a result of Defendants' act and omissions in violation of FDUTPA, and these violations present a continuing risk to Plaintiffs, the Florida Sub-Class, and the public in general. Defendants' unlawful act and practices complained of above affect the public interest.

305. As a direct and proximate result of Defendants' violations of the FDUTPA, Plaintiffs and the members of the Florida Sub-Class have suffered injury-in-fact and/or actual damage.

306.   Plaintiffs and the members of the Florida Sub-Class are entitled to recover their actual damages, under FLA. STAT. § 501.211(2), and attorneys' fees under FLA. STAT. § 501.2105(1).

307.   Plaintiffs and the members of the Florida Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUTPA.

### COUNT II
### BREACH OF EXPRESS WARRANTY
### FLA. STAT. §§ 672.313, 680.21, AND 680.1031
### (ON BEHALF OF THE FLORIDA SUB-CLASS)

308.   Plaintiffs Gina Aprile and Theresa Gillespie (for purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Florida Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

309.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

310.   Defendants are and were at all relevant times "merchants" with respect of motor vehicles under FLA. STAT. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

311.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under FLA. STAT. § 680.1031(1)(p).

312.   The Class Vehicles are and were at all relevant times "goods" within the meaning of FLA. STAT. §§ 672.105(1) and 680.1031(1)(h).

313.   Defendants provided Plaintiffs and members of the Florida Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. For illustrative purposes, Defendants currently provide: (1) bumper-to-bumper coverage for six years or 72,000 miles, whichever came first; or (2) four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis. Under the warranties provided to Plaintiffs and the Florida Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

314.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Latching Device prior to 280,000 miles. Such representations formed the basis of the bargain in Plaintiffs and members of the Florida Sub-Class's decisions to purchase or lease the Class Vehicles.

315.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Latching Device Defect and its corresponding safety risk from Plaintiffs and members of the Florida Sub-Class.

316.   Plaintiffs and members of the Florida Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to

establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Florida Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

317.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Florida Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Latching Device Defect is by design, the warranties are substantively unconscionable because Defendants knew that the Latching Device was defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Latching Device.

318.   Plaintiffs and members of the Florida Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiffs and members of the Florida Sub-Class that the Class Vehicles contained the Latching Device Defect and failed to provide a suitable repair or replacement of the Latching Device free of charge within a reasonable time.

319.    On information and belief, Defendants have not suitably repaired or replaced the defective Latching Device free of charge for Plaintiffs and members of the Florida Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

320.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Class Vehicles without the Latching Device Defect.

321.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Florida Sub-

Class.  Among other things, Plaintiffs and members of the Florida Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

322.    Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of, concealed the Latching Device Defect, and have failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

323.    Defendants were provided notice by Plaintiffs of their breach of express warranties by letter dated August 16, 2021. *See* Exhibit A.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

324.   Because of the Latching Device Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

325.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and members of the Florida Sub-Class have been damaged in an amount to be determined at trial.

326.   In the alternative, should Defendants claim that the Latching Device Defect is covered under the warranties, the warranties now fail in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the Florida Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

327.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and members of the Florida Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Florida Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT III
## BREACH OF IMPLIED WARRANTY
## FLA. STAT. §§ 672.314, 372.315, AND 680.1031
## (ON BEHALF OF THE FLORIDA SUB-CLASS)

328.    Plaintiffs Gina Aprile and Theresa Gillespie (for purposes of this count, "Plaintiffs") brings this claim on behalf of themselves and the Florida Sub-Class against Defendants.

329.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

330.    Plaintiffs and members of the Florida Sub-Class purchased or leased the Class Vehicles, manufactured by Defendants, from Defendants by and through their authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

331.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under FLA. STAT. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

332.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under FLA. STAT. § 680.1031(1)(p).

333.   The Class Vehicles are and were at all relevant times "goods" within the meaning of FLA. STAT. §§ 672.105(1) and 680.1031(1)(h).

334.   Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for ordinary purpose for which vehicles are used pursuant to FLA. STAT. § 672.314.

335.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation pursuant to FLA. STAT. § 672.315. The Class Vehicles contain an inherent defect—the Latching Device Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached the implied warranty of merchantability.

336.   Through their maintenance schedules, Defendants further represented that the defective Latching Device would not need periodic inspection, repair, or replacement before 280,000 miles and/or fraudulently concealed the need for periodic inspection, repair, or replacement of the Latching Device before 280,000 miles by omitting the Latching Device from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

337.   Plaintiffs and members of the Florida Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to

establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Florida Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the implied warranty of merchantability provided with the Class Vehicles.

338.    Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Latching Device Defect and, on information and belief, have refused to repair or replace the defective Latching Device free of charge within a reasonable time.

339.    Defendants were further provided notice by Plaintiffs of their breach of implied warranties by letter dated August 16, 2021. *See* Exhibit A.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

340.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and members of the Florida Sub-Class have been damaged in an amount to be proven at trial.

341.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Florida Sub-Class. Among other things, Plaintiffs and members of the Florida Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Florida Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

342.   Plaintiffs and members of the Florida Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

343.   Any applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

**C.    Kentucky Counts**

### COUNT I
### VIOLATION OF KENTUCKY CONSUMER PROTECTION ACT
### KENTUCKY REV. STAT. §§ 367.110, *ET. SEQ.*
### (ON BEHALF OF THE KENTUCKY SUB-CLASS)

344.    Plaintiff Talina Henderson (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Kentucky Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

345.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

346.    Under the Kentucky Consumer Protection Act ("Kentucky CPA") Plaintiff, members of the Kentucky Sub-Class, and Defendants are "person[s]" within the meaning of Kentucky Rev. Stat. § 367.110.

347.    Defendants were and are engaged in "trade" or "commerce" within the meaning of Kentucky Rev. Stat. § 367.110.

348.    The Kentucky CPA prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Kentucky Rev. Stat. § 367.170.

349.    Plaintiff and members of the Kentucky Sub-Class "purchase[d] or lease[d] goods or services primarily for personal, family or household purposes and thereby suffer[ed] an[] ascertainable loss of money or property." Kentucky Rev. Stat. § 367.220.

350.   In the course of Defendants' business, Defendants violated the Kentucky CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective Latching Devices installed in them, as described above. Specifically, in marketing, offering for sale, and selling the Class Vehicles with defective Latching Devices installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices: representing that the Class Vehicles and/or the defective Latching Devices installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent no to sell them as advertised.

351.   Defendants have known of the Latching Device Defect in their Class Vehicles and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Latching Devices installed in them.

352.   By failing to disclose and by actively concealing the Latching Device Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair and deceptive business practices in violation of the Kentucky CPA. Defendants deliberately withheld the information about the propensity of the defective Latching Devices and the associated safety risks.

353.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Kentucky Sub-Class, about the true safety and reliability of Class Vehicles and/or the defective Latching Devices installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

354.    Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Latching Device Defect with the intent to mislead Plaintiff and members of the Kentucky Sub-Class. Defendants knew, or should have known, that the Latching Device was defective in its design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Latching Device Defect in the Class Vehicles could cause the seats to slam forward during deceleration. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

355.    Defendants knew or should have known that their conduct violated the Kentucky CPA.

356.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective Latching Devices installed in them that were either false or misleading.

357.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective Latching Devices installed in them and their associated safety risk, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

358.   Defendants owed members of the Kentucky Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Latching Device Defect because Defendants:

    a.    Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    b.    Intentionally concealed the foregoing from the Class; and/or

    c.    Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

359.   Because Defendants fraudulently concealed the Latching Device Defect in Class Vehicles, and disclosure of the Latching Device Defect would cause

a reasonable consumer to be deterred from purchasing the Class Vehicles, members of the Kentucky Sub-Class overpaid for the Class Vehicles and the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

360.    Defendants' failure to disclose and active concealment of the dangers and risks posed by the Latching Device Defect in Class Vehicles were material to members of the Kentucky Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

361.    Members of the Kentucky Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the Latching Device Defect that existed in the Class Vehicles, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. The members of the Kentucky Sub-Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

362.    Members of the Kentucky Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

363.    As a direct and proximate result of Defendants' violations of the Kentucky CPA, members of the Kentucky Sub-Class have suffered injury-in-fact and/or actual damage.

364.    Pursuant to Kentucky Rev. Stat. § 367.220, members of the Kentucky Sub-Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each member of the Class. Because Defendants' conduct was committed willfully and knowingly, the members of the Kentucky Sub-Class are entitled to recover, for each member, up to three times actual damages, but no less than two times actual damages.

365.    Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above. In addition, on August 16, 2021, a notice letter was sent on behalf of members of the Kentucky Sub-Class to Defendants pursuant to KRS § 367.220. *See* Exhibit A. Because Defendants failed to remedy their unlawful conduct within the requisite time-period, members of the Kentucky Sub-Class seek all damages and relief to which they are entitled.

## COUNT II
## BREACH OF EXPRESS WARRANTY
## KENTUCKY REV. STAT. §§ 367.110, *ET. SEQ.*
## (ON BEHALF OF THE KENTUCKY SUB-CLASS)

366.   Plaintiff Talina Henderson (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Kentucky Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

367.   Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

368.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Kentucky Rev. Stat. §§ 355.2-105(1) and 355.2A-103(h).

369.   Volkswagen was at all relevant times a "seller" and "merchant" with respect to the Class Vehicles under Kentucky Rev. Stat. §§ 355.2-103 and 355.2-104, and, with respect to leases, is and was at all relevant times a "lessor" of the Class Vehicles under Kentucky Rev. Stat. § 355.2A-103.

370.   Plaintiff and Class Members are "buyers" or "lessees" within the meaning of Kentucky Rev. Stat. §§ 355.2-103(1) and 355.2A-103(n).

371.   Defendants provided Plaintiff and Class Members express warranties for the Class Vehicles under Kentucky Rev. Stat. §§ 355.2-313.

372.   Defendants provided Plaintiff and members of the Kentucky Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. For illustrative purposes, Defendants currently provide: (1) bumper-

to-bumper coverage for six years or 72,000 miles, whichever came first; or (2) four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis. Under the warranties provided to Plaintiff and the Kentucky Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles. As alleged herein, Defendants breached these warranties.

373. Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Latching Device prior to 280,000 miles. Such representations formed the basis of the bargain in Plaintiff and members of the Kentucky Sub-Class's decisions to purchase or lease the Class Vehicles.

374. Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Latching Device Defect and its corresponding safety risk from Plaintiff and members of the Kentucky Sub-Class.

375. Plaintiff and members of the Kentucky Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Kentucky Sub-Class, on the other hand. Nonetheless, privity is not

required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

376.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Kentucky Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Latching Device Defect is by design, the warranties are substantively unconscionable because Defendants knew that the Latching Device was defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Latching Device.

377.    Plaintiff and members of the Kentucky Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the Kentucky Sub-Class that the Class Vehicles contained the Latching Device Defect and failed to provide a suitable repair or replacement of the Latching Device free of charge within a reasonable time.

378.    On information and belief, Defendants have not suitably repaired or replaced the defective Latching Device free of charge for Plaintiff and members of

the Kentucky Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

379.   The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Class Vehicles without the Latching Device Defect.

380.   The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Kentucky Sub-Class.  Among other things, Plaintiff and members of the Kentucky Sub-Class did not determine these time limitations, the terms of which unreasonably favored

Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

381.   Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of, concealed the Latching Device Defect, and have failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

382.   Defendants were provided notice by Plaintiff of their breach of express warranties by letter dated August 16, 2021. *See* Exhibit A.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

383.   Because of the Latching Device Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

384.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the Kentucky Sub-Class have been damaged in an amount to be determined at trial.

385.   In the alternative, should Defendants claim that the Latching Device Defect is covered under the warranties, the warranties now fail in its essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Kentucky Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

386.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the Kentucky Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Kentucky Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## KENTUCKY REV. STAT. §§ 355.2, *ET. SEQ.*
## (ON BEHALF OF THE KENTUCKY SUB-CLASS)

387.   Plaintiff Talina Henderson (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Kentucky Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

388.   Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

389.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Kentucky Rev. Stat. §§ 355.2-105(1) and 355.2A-103(h).

390.   Volkswagen was at all relevant times a "seller" and "merchant" with respect to the Class Vehicles under Kentucky Rev. Stat. §§ 355.2-103 and 355.2-104, and, with respect to leases, is and was at all relevant times a "lessor" of the Class Vehicles under Kentucky Rev. Stat. § 355.2A-103.

391.   Plaintiff and Class Members are "buyers" or "lessees" within the meaning of Kentucky Rev. Stat. §§ 355.2-103(1) and 355.2A-103(n).

392.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to A Kentucky Rev. Stat. §§ 355.2-314.

393.   Plaintiff and the Kentucky Sub-Class bought or leased Class Vehicles manufactured, marketed to them, warranted, and intended to be purchased by buyers or lessees such as them, by Volkswagen, and are in privity with Volkswagen through their purchases.

394.   Plaintiff and the Kentucky Sub-Class have had sufficient direct dealings with either Volkswagen or its agents (dealerships) to establish privity of contract between Plaintiff, the Kentucky Sub-Class, and Volkswagen. Further, the

written, express warranties issued by Volkswagen with buyers/lessees of the Class Vehicles as its intended beneficiaries create a direct contractual relationship between Volkswagen and Plaintiff and the Kentucky Sub-Class.

395. Further, Plaintiff and Class Members are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's express and implied warranties. The dealers were not intended to be the ultimate buyers or lessees of the Class Vehicles and have no rights under the warranties provided with the Class Vehicles; the warranties were designed for and intended to benefit the ultimate buyers and lessees only. Moreover, privity is not required where a manufacturer makes representations directly to intended buyers and lessees, as Volkswagen did here.

396. When it sold or leased its Class Vehicles, Volkswagen extended an implied and express warranty to Class Members that the subject vehicles were merchantable and fit for the ordinary purpose for which they were sold or leased, pursuant to Kentucky Rev. Stat. §§ 355.2-314 and 355.2A-212.

397. The Class Vehicles and/or the Latching Device Defect, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used. Specifically, they are inherently defective and dangerous in that the Latching Device: (a) fails to properly secure rear-seats during deceleration and/or in an accident or collision; and (b) does not secure occupants upon failure.

398.    Any attempt by Volkswagen to disclaim the implied warranty of merchantability is unenforceable and unconscionable because it does not meet the requirements of Kentucky Rev. Stat. § 355.2-316(2).

399.    Defendants were further provided notice by Plaintiffs of their breach of implied warranties by letter dated August 16, 2021. *See* Exhibit A. Further, Defendants were provided notice of these issues by their knowledge of the issues, by customer complaints, by numerous online complaints, by internal investigations for prior recalls, and by numerous communications sent by the consumers.

400.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the Kentucky Consumer Sub-Class have been damaged in an amount to be proven at trial.

### D.    Massachusetts Counts

**COUNT I**
**VIOLATION OF THE MASS. CONSUMER PROTECTION ACT**
**MASS. GEN. LAWS CH. 93A, § 1, *ET SEQ.***
**(ON BEHALF THE MASSACHUSETTS SUB-CLASS)**

401.    Plaintiffs Diana Ferrara and Lauren Daly (for purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Massachusetts Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

402.    Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

403.   Plaintiffs, members of the Massachusetts Sub-Class, and Defendants are "persons" within the meaning of MASS. GEN. LAWS ch. 93A, §1(a) who purchased and/or leased Class Vehicles for personal, family or household use.

404.   Defendants were and are engaged in "trade or commerce" within the meaning of MASS. GEN. LAWS ch. 93A, § 1(b).

405.   The Massachusetts Consumer Protection Act ("Massachusetts CPA") prohibits "unfair or deceptive act or practices in the conduct of any trade or commerce." MASS. GEN. LAWS ch. 93A, § 2.

406.   In the course of Defendants' business, Defendants violated the Massachusetts CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective Latching Devices installed in them, as described above. Specifically, in marketing, offering for sale, and selling the Class Vehicles with defective Latching Devices installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices: representing that the Class Vehicles and/or the defective Latching Devices installed in them have characteristics or benefits that they do not have; representing that they are of a particular standard and quality when they are not; and/or advertising them with the intent no to sell them as advertised.

407.    Defendants have known of the Latching Device Defect in their Class Vehicles and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Latching Devices installed in them.

408.    By failing to disclose and by actively concealing the Latching Device Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair and deceptive business practices in violation of the Massachusetts CPA. Defendants deliberately withheld the information about the propensity of the defective Latching Devices and the associated safety risks.

409.    Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Massachusetts Sub-Class, about the true safety and reliability of Class Vehicles and/or the defective Latching Devices installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

410.    Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Latching Device Defect with the intent to mislead Plaintiffs and members of the Massachusetts Sub-Class. Defendants knew, or should have known, that the Latching Device was defective in its design

133

and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Latching Device Defect in the Class Vehicles could cause the seats to slam forward during deceleration. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

411.   Defendants knew or should have known that their conduct violated the Massachusetts CPA.

412.   As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective Latching Devices installed in them that were either false or misleading.

413.   To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective Latching Devices installed in them and their associated safety risk, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

414.   Defendants owed members of the Massachusetts Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Latching Device Defect because Defendants:

(a)   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

(b)   Intentionally concealed the foregoing from the Class; and/or

(c)   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from the Class that contradicted these representations.

415.   Because Defendants fraudulently concealed the Latching Device Defect in Class Vehicles, and disclosure of the Latching Device Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, members of the Massachusetts Sub-Class overpaid for the Class Vehicles and the value of the Class Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

416.   Defendants' failure to disclose and active concealment of the dangers and risks posed by the Latching Device Defect in Class Vehicles were material to members of the Massachusetts Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

417.    Members of the Massachusetts Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the Latching Device Defect that existed in the Class Vehicles, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. The members of the Massachusetts Sub-Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

418.    Members of the Massachusetts Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

419.    As a direct and proximate result of Defendants' violations of the Massachusetts CPA, members of the Massachusetts Sub-Class have suffered injury-in-fact and/or actual damage.

420.    Pursuant to MASS. GEN. LAWS ch. 93A, §9, members of the Massachusetts Sub-Class seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each member of the Class. Because Defendants' conduct was committed willfully and knowingly, the members of the Massachusetts Sub-Class are entitled to recover, for each member, up to three times actual damages, but no less than two times actual damages.

136

421.   Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above. In addition, on August 16, 2021, a notice letter was sent on behalf of members of the Massachusetts Sub-Class to Defendants pursuant to MASS. GEN. LAWS ch. 93A, §9(3). *See* Exhibit A. Because Defendants failed to remedy their unlawful conduct within the requisite time-period, members of the Massachusetts Sub-Class seek all damages and relief to which they are entitled.

## COUNT II
## BREACH OF EXPRESS WARRANTY
## MASS. GEN. LAWS CH. 106, §§ 2-313, 2A-103, AND 2A-210 ET SEQ.
## (ON BEHALF OF THE MASSACHUSETTS SUB-CLASS)

422.   Plaintiffs Diana Ferrara and Lauren Daly (for purposes of this count, "Plaintiffs") brings this claim on behalf of themselves and the Massachusetts Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

423.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

424.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under MASS. GEN. LAWS ch. 106 § 2-104(a), and "sellers" and "lessors" of motor vehicles under § 2-103(1)(d) and § 2A-103(1)(p).

425.   354.   The Class members are and were at all relevant times "buyers" with respect to the Class Vehicles under MASS. GEN. LAWS ch. 106 § 2-103(1)(a).

426.   355.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MASS. GEN. LAWS ch. 106 §§2-105(1) and 2A-103(1)(h).

427.   Defendants provided Plaintiffs and members of the Massachusetts Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. For illustrative purposes, Defendants currently provide: (1) bumper-to-bumper coverage for six years or 72,000 miles, whichever came first; or (2) four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis. Under the warranties provided to Plaintiffs and the Massachusetts Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

428.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Latching Device prior to 280,000 miles. Such representations formed the basis of the bargain in Plaintiffs and members of the Massachusetts Sub-Class's decisions to purchase or lease the Class Vehicles.

429.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the

138

existence of the Latching Device Defect and its corresponding safety risk from Plaintiffs and members of the Massachusetts Sub-Class.

430.  Plaintiffs and members of the Massachusetts Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiffs and members of the Massachusetts Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

431.  Defendants' warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Massachusetts Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Latching Device Defect is by design, the warranties are substantively unconscionable because Defendants knew that the Latching Device was defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Latching Device.

432.  Plaintiffs and members of the Massachusetts Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

Despite the existence of the warranties, Defendants failed to adequately inform Plaintiffs and members of the Massachusetts Sub-Class that the Class Vehicles contained the Latching Device Defect and failed to provide a suitable repair or replacement of the Latching Device free of charge within a reasonable time.

433.   On information and belief, Defendants have not suitably repaired or replaced the defective Latching Device free of charge for Plaintiffs and members of the Massachusetts Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

434.   The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other

manufacturers or models much like the Class Vehicles without the Latching Device Defect.

435.   The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Massachusetts Sub-Class.   Among other things, Plaintiffs and members of the Massachusetts Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.   A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

436.   Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of, concealed the Latching Device Defect, and have failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

437.   Defendants were provided notice by Plaintiffs of their breach of express warranties by letter dated August 16, 2021. *See* Exhibit A.   Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a

suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

438.   Because of the Latching Device Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

439.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and members of the Massachusetts Sub-Class have been damaged in an amount to be determined at trial.

440.   In the alternative, should Defendants claim that the Latching Device Defect is covered under the warranties, the warranties now fail in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the Massachusetts Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

441.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and members of the Massachusetts Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Massachusetts Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT III
## BREACH OF IMPLIED WARRANTY
## MASS. GEN. LAWS CH. 106 §§ 2-314 AND 2A-212
## (ON BEHALF OF THE MASSACHUSETTS SUB-CLASS)

442.   Plaintiffs Diana Ferrara and Lauren Daly (for purposes of this count, "Plaintiffs") bring this claim on behalf of themselves and the Massachusetts Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

443.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

444.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under MASS. GEN. LAWS ch. 106 §2-104(1), and "sellers" and "lessors" of motor vehicles under §2-103(1)(d) and §2A-103(1)(p).

445.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MASS. GEN. LAWS ch. 106 §§2-105(1) and 2A-103(1)(h).

446.   Plaintiffs and members of the Massachusetts Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

447.   A warranty that the Class Vehicles and/or the defective Latching Devices installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to MASS. GEN. LAWS ch. 106 §§2-314 and 2A-212.

448.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect—the Latching Device Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

449.   Through their maintenance schedules, Defendants further represented that the defective Latching Device would not need periodic inspection, repair or replacement before 280,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Latching Device before 280,000 miles by omitting the Latching Device from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

450.   Plaintiffs and members of the Massachusetts Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand,

144

and Plaintiffs and members of the Massachusetts Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

451.   Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Latching Device Defect and, on information and belief, have refused to repair or replace the defective Latching Device free of charge within a reasonable time.

452.   Defendants were further provided notice by Plaintiffs of their breach of implied warranties by letter dated August 16, 2021. *See* Exhibit A. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

453.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and members of the Massachusetts Sub-Class have been damaged in an amount to be proven at trial.

454.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Massachusetts Sub-Class. Among other things, Plaintiffs and members of the Massachusetts Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Massachusetts Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

455.    Plaintiffs and members of the Massachusetts Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

456.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

### E.  Michigan Counts

### COUNT I
### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
### ("MCPA"), MICH. COMP. LAWS § 445.901, *ET SEQ.*
### (ON BEHALF THE MICHIGAN SUB-CLASS)

457.  Plaintiff Shane McDonald (for purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Michigan Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

458.  Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

459.  Plaintiff and members of the Michigan Sub-Class are "persons" within the meaning of the MCPA. *See* MICH. COMP. LAWS § 445.902(1)(d).

460.  Plaintiff and members of the Michigan Sub-Class are permitted to bring this action for injunctive relief and actual damages under the MCPA. *See* MICH. COMP. LAWS § 445.911.

461.  Defendants are "persons" engaged in "trade or commerce" within the meaning of the MCPA. *See* MICH. COMP. LAWS §§ 445.902(1)(d) and (g).

462.  The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . ." MICH. COMP. LAWS § 445.903(1). Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the MCPA, including, inter alia: "[r]epresenting that goods or services have . . . characteristics . . . that they do not have"; "[r]epresenting

that goods or services are of a particular standard, quality, or grade . . . if they are of another"; "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "[m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; and "[f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).

463.    Defendants violated the MCPA by employing unfair, unconscionable, or deceptive acts or practices, and/or by engaging in fraud, misrepresentations, concealment, suppression and/or omissions of material facts with the intent that others rely upon such concealment, suppression and/or omissions, in connection with the sale and/or lease of Class Vehicles.

464.    Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Latching Device Defect and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff and members of the Michigan Sub-Class. Plaintiff and members of the Michigan Sub-Class could not reasonably have known about the Latching Device Defect and its corresponding safety risk as the information was in the superior and exclusive control of Defendants.

465.   Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Latching Device Defect with the intent to mislead Plaintiff and members of the Michigan Sub-Class. Defendants knew, or should have known, that the Latching Device was defective. Defendants also knew, or should have known, that the Latching Device Defect in the Class Vehicles could cause the seats to slam forward during deceleration. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

466.   Defendants owed a duty to disclose the Latching Device Defect and its corresponding safety risk to Plaintiff and members of the Michigan Sub-Class because they possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Latching Device. Rather than disclose the Defect, Defendants engaged in unfair, unconscionable and deceptive trade practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Latching Device to Plaintiff and members of the Michigan Sub-Class.

467.   Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or material omissions regarding the Latching Device Defect were intended to mislead consumers and misled Plaintiff and members of the Michigan Sub-Class.

468.   At all relevant times, Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or omissions regarding the Latching Device Defect and its corresponding safety risk were material to Plaintiff and members of the Michigan Sub-Class. When Plaintiff and members of the Michigan Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Latching Devices were free from latent defects or alternatively, would be covered under Defendants' express warranties. Had Defendants disclosed that the Latching Device may fail and/or create an unavoidable safety risk, Plaintiff and members of the Michigan Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

469.   Defendants had a continuous duty to Plaintiff and members of the Michigan Sub-Class to refrain from unfair and deceptive practices under the MCPA and to disclose the Latching Device Defect. Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or material omissions regarding the Latching Device Defect and corresponding safety risk are substantially injurious to consumers. As a result of Defendants knowing, intentional concealment, suppression and/or omission of the Latching Device Defect in violation of the MCPA, Plaintiff and members of the Michigan Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Latching Device and/or actual damages in the amount of the cost to replace the

Latching Device and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' unfair, unconscionable and deceptive acts and practices in the course of their business.

470.   Defendants' unfair, unconscionable and deceptive acts and practices occurred in the conduct of trade or commerce.

471.   Defendants have knowingly and willfully engaged in the unfair, unconscionable and deceptive acts and practices alleged herein. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed Defect and corresponding safety risk.

472.   Defendants' unfair, unconscionable and deceptive acts and practices affect the public interest and present a continuing safety risk to Plaintiff and members of the Michigan Sub-Class as well as the public.

473.   As a direct and proximate result of Defendants' violations of the MCPA, Plaintiff and members of the Michigan Sub-Class have suffered actual damages and/or injury in fact.

474.   As a result of Defendants' unlawful conduct, Plaintiff and members of the Michigan Sub-Class are entitled to actual damages, costs of litigation, attorneys' fees, injunctive and other equitable relief. *See* MICH. COMP. LAWS § 445.911.

## COUNT II
## BREACH OF EXPRESS WARRANTY
## MICH. COMP. LAWS §§ 440.2313, 440.2803, AND 440.2860
## (ON BEHALF OF THE MICHIGAN SUB-CLASS)

475.    Plaintiff Shane McDonald (for purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Michigan Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

476.    Plaintiff re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

477.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under MICH. COMP. LAWS §440.2104(1), and "sellers" and "lessors" of motor vehicles under § 440.2103(1)(c)and § 440.2803(1)(p).

478.    The Class Vehicles are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS §§ 440.2105(1) and 440.2803(1)(h).

479.    Defendants provided Plaintiff and members of the Michigan Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. For illustrative purposes, Defendants currently provide: (1) bumper-to-bumper coverage for six years or 72,000 miles, whichever came first; or (2) four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis.  Under the warranties provided to Plaintiff and the Michigan Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners

and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

480.    Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Latching Device prior to 280,000 miles. Such representations formed the basis of the bargain in Plaintiff and members of the Michigan Sub-Class's decisions to purchase or lease the Class Vehicles.

481.    Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Latching Device Defect and its corresponding safety risk from Plaintiff and members of the Michigan Sub-Class.

482.    Plaintiff and members of the Michigan Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Michigan Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the

warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

483.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Michigan Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Latching Device Defect is by design, the warranties are substantively unconscionable because Defendants knew that the Latching Device was defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Latching Device.

484.   Plaintiff and members of the Michigan Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the Michigan Sub-Class that the Class Vehicles contained the Latching Device Defect and failed to provide a suitable repair or replacement of the Latching Device free of charge within a reasonable time.

485.   On information and belief, Defendants have not suitably repaired or replaced the defective Latching Device free of charge for Plaintiff and members of the Michigan Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

486.   The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the

parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Class Vehicles without the Latching Device Defect.

487. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Michigan Sub-Class. Among other things, Plaintiff and members of the Michigan Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

488.   Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of, concealed the Latching Device Defect, and have failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

489.   Defendants were provided notice by Plaintiff of their breach of express warranties by letter dated August 16, 2021. *See* Exhibit A.   Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

490.   Because of the Latching Device Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

491.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the Michigan Sub-Class have been damaged in an amount to be determined at trial.

492.   In the alternative, should Defendants claim that the Latching Device Defect is covered under the warranties, the warranties now fail in its essential

purpose because the contractual remedy is insufficient to make Plaintiff and members of the Michigan Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

493.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the Michigan Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Michigan Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## MICH. COMP. LAWS §§ 440.2314 AND 440.2860
## (ON BEHALF OF THE MICHIGAN SUB-CLASS)

494.   Plaintiff Shane McDonald (for purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Michigan Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

495.   Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

496.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under MICH. COMP. LAWS § 440.2104(1), and "sellers" and "lessors" of motor vehicles under § 440.2103(1)(c) and § 440.2803(1)(p).

497.   The Class Vehicles are and were at all relevant times "goods" within the meaning of MICH. COMP. LAWS §§ 440.2105(1) and 440.2803(1)(h).

498.   Plaintiff and members of the Michigan Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

499.   A warranty that the Class Vehicles and/or the defective Latching Devices installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to MICH. COMP. LAWS §§ 440.2314 and 440.2862.

500.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect – the Latching Device Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

501.    Through their maintenance schedules, Defendants further represented that the defective Latching Device would not need periodic inspection, repair or replacement before 280,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Latching Device before 280,000 miles by omitting the Latching Device from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

502.    Plaintiff and members of the Michigan Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Michigan Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

503.    Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a

159

reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Latching Device Defect and, on information and belief, have refused to repair or replace the defective Latching Device free of charge within a reasonable time.

504.   Defendants were further provided notice by Plaintiff of their breach of implied warranties by letter dated August 16, 2021. *See* Exhibit A. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

505.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Michigan Sub-Class have been damaged in an amount to be proven at trial.

506.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Michigan Sub-Class. Among other things, Plaintiff and members of the Michigan Sub-Class did not determine these limitations, the terms of which unreasonably

favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Michigan Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

507.    Plaintiff and members of the Michigan Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

508.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

### F.    New York Counts

**COUNT I**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW, ("NYGBL")**
**N.Y. GEN. BUS. LAW § 349**
**(ON BEHALF OF THE NEW YORK SUB-CLASS)**

509.    Plaintiff Kasem Curovic (for purposes of this count, "Plaintiff") brings this claim on behalf of himself and the New York Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

510.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

511.    Plaintiff and members of the New York Sub-Class purchased or leased their Class Vehicles for personal or household use.

512.   Plaintiff and members of the New York Sub-Class are permitted to bring this action for injunctive relief and actual damages under the NYGBL. *See* N.Y. GEN. BUS. LAW § 349(h).

513.   Defendants are engaged in the conduct of "business, trade or commerce" within the meaning of the NYGBL. *See* N.Y. GEN. BUS. LAW § 349(a).

514.   The NYGBL prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." *See* N.Y. GEN. BUS. LAW § 349(a).

515.   Defendants violated the NYGBL by engaging in deceptive acts or practices directed to consumers in connection with the sale and/or lease of Class Vehicles.

516.   Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Latching Device Defect and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff and members of the New York Sub-Class. Plaintiff and members of the New York Sub-Class could not reasonably have known about the Latching Device Defect and its corresponding safety risk as the information was in the superior and exclusive control of Defendants.

517.   Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Latching Device Defect with the intent

to mislead Plaintiff and members of the New York Sub-Class. Defendants knew, or should have known, that the Latching Device was defective in its design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Latching Device Defect in the Class Vehicles could cause the seats to slam forward during deceleration. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

518. Defendants owed a duty to disclose the Latching Device Defect and its corresponding safety risk to Plaintiff and members of the New York Sub-Class because they possessed superior and exclusive knowledge regarding the Defect and the risks associated with the Latching Device's failure. Rather than disclose the Defect, Defendants engaged in deceptive acts or practices in order to sell additional Class Vehicles and wrongfully transfer the cost of repair or replacement of the Latching Device to Plaintiff and members of the New York Sub-Class.

519. Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Latching Device Defect were intended to mislead consumers, were misleading to reasonable consumers, and misled Plaintiff and members of the New York Sub-Class.

520.    At all relevant times, Defendants' unfair, unconscionable and deceptive acts, affirmative misrepresentations and/or omissions regarding the Latching Device Defect and its corresponding safety risk were material to Plaintiff and members of the New York Sub-Class. When Plaintiff and members of the New York Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' Latching Devices were free from defects or alternatively, would be covered under Defendants' express warranties. Had Defendants disclosed that the Latching Device may fail and/or create an unavoidable safety risk, Plaintiff and members of the New York Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

521.    Defendants had a continuous duty to Plaintiff and members of the New York Sub-Class to refrain from unfair and deceptive practices under the NYGBL and to disclose the Latching Device Defect. Defendants' deceptive acts or practices, affirmative misrepresentations and/or material omissions regarding the Latching Device Defect and corresponding safety risk are substantially injurious to consumers. As a result of Defendants' knowing, intentional concealment, suppression and/or omission of the Latching Device Defect in violation of the NYGBL, Plaintiff and members of the New York Sub-Class have suffered harm and/or continue to suffer harm by the threat of sudden and unexpected failure of the Latching Device and/or actual damages in the amount of the cost to replace the

Latching Device and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of the diminished value of their vehicles as a result of Defendants' deceptive acts or practices in the course of their business.

522.   Defendants' deceptive acts or practices occurred in the conduct of business, trade or commerce.

523.   Defendants have knowingly and willfully engaged in the deceptive acts or practices alleged herein. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety risk.

524.   Defendants' deceptive acts or practices affect the public interest and present a continuing safety risk to Plaintiff and members of the New York Sub-Class as well as the public.

525.    As a direct and proximate result of Defendants' violations of the NYGBL, Plaintiff and members of the New York Sub-Class have suffered actual damages and/or injury in fact.

526.   As a result of Defendants' unlawful conduct, Plaintiff and members of the New York Sub-Class are entitled to actual damages, treble damages, costs of litigation, attorneys' fees, injunctive and other equitable relief. *See* N.Y. GEN. BUS. LAW § 349(h).

## COUNT II
## BREACH OF EXPRESS WARRANTY
## N.Y. U.C.C. LAW §§ 2-313, 2A-103, AND 2A-210
## (ON BEHALF OF THE NEW YORK SUB-CLASS)

527.   Plaintiff Kasem Curovic (for purposes of this count, "Plaintiff") brings this claim on behalf of himself and the New York Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

528.   Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

529.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. U.C.C. LAW § 2-104(1), and "sellers" and "lessors" of motor vehicles under § 2-103(1)(d) and § 2A-103(1)(p).

530.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW §§ 2-105(1) and 2A-103(1)(h).

531.   Defendants provided Plaintiff and members of the New York Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. For illustrative purposes, Defendants currently provide: (1) bumper-to-bumper coverage for six years or 72,000 miles, whichever came first; or (2) four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis.  Under the warranties provided to Plaintiff and the New York Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners

166

and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

532.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Latching Device prior to 280,000 miles. Such representations formed the basis of the bargain in Plaintiff and members of the New York Sub-Class's decisions to purchase or lease the Class Vehicles.

533.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Latching Device Defect and its corresponding safety risk from Plaintiff and members of the New York Sub-Class.

534.   Plaintiff and members of the New York Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the New York Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the

warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

535.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the New York Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Latching Device Defect is by design, the warranties are substantively unconscionable because Defendants knew that the Latching Device was defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Latching Device.

536.    Plaintiff and members of the New York Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the New York Sub-Class that the Class Vehicles contained the Latching Device Defect and failed to provide a suitable repair or replacement of the Latching Device free of charge within a reasonable time.

537.    On information and belief, Defendants have not suitably repaired or replaced the defective Latching Device free of charge for Plaintiff and members of the New York Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

538.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the

parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Class Vehicles without the Latching Device Defect.

539.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the New York Sub-Class.  Among other things, Plaintiff and members of the New York Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

540.   Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of, concealed the Latching Device Defect, and have failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

541.   Defendants were provided notice by Plaintiff of their breach of express warranties by letter dated August 16, 2021. *See* Exhibit A.   Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

542.   Because of the Latching Device Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

543.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the New York Sub-Class have been damaged in an amount to be determined at trial.

544.   In the alternative, should Defendants claim that the Latching Device Defect is covered under the warranties, the warranties now fail in its essential

purpose because the contractual remedy is insufficient to make Plaintiff and members of the New York Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

545.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the New York Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the New York Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**N.Y. U.C.C. §§ 2-314, 2A-103, AND 2A-212**
**(ON BEHALF OF THE NEW YORK SUB-CLASS)**

546.    Plaintiff Kasem Curovic (for purposes of this count, "Plaintiff") brings this claim on behalf of himself and the New York Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

547.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

548.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. U.C.C. LAW § 2-104(1), and "sellers" and "lessors" of motor vehicles under § 2-103(1)(d) and § 2A-103(1)(p).

549.   The Class Vehicles are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. LAW §§ 2-105(1) and 2A-103(1)(h).

550.   Plaintiff and members of the New York Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

551.   A warranty that the Class Vehicles and/or the defective Latching Devices installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.Y. U.C.C. LAW §§ 2-314 and 2A-212.

552.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect—the Latching Device Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

553.   Through their maintenance schedules, Defendants further represented that the defective Latching Device would not need periodic inspection, repair or replacement before 280,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Latching Device before 280,000 miles by omitting the Latching Device from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

554.   Plaintiff and members of the New York Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the New York Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

555.   Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a

173

reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Latching Device Defect and, on information and belief, have refused to repair or replace the defective Latching Device free of charge within a reasonable time.

556.   Defendants were further provided notice by Plaintiff of their breach of implied warranties by letter dated August 16, 2021. *See* Exhibit A. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

557.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the New York Sub-Class have been damaged in an amount to be proven at trial.

558.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the New York Sub-Class. Among other things, Plaintiff and members of the New York Sub-Class did not determine these limitations, the terms of which unreasonably

favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the New York Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

559.   Plaintiff and members of the New York Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

560.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

### G.    Pennsylvania Counts

**COUNT I**
**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES**
**AND CONSUMER PROTECTION LAW, 73 P.S. §§ 201-1 *ET SEQ.***
**(ON BEHALF THE PENNSYLVANIA SUB-CLASS)**

561.   Plaintiff Christa Callahan (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Pennsylvania Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

562.   Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

563.   Plaintiff and members of the Pennsylvania Sub-Class are persons within the context of the Pennsylvania Unfair Trade Practices and Consumer

Protection Law, 73 P.S. §§ 201-1 *et seq.* (hereinafter "PUTPCPL"), specifically §

201-2(2).

564.    Defendants are persons within the context of PUTPCPL, § 201-2(2).

565.    Defendants are engaged in trade and commerce within the context of

PUTPCPL, § 201-2(3).

566.    Plaintiff and members of the Pennsylvania Sub-Class purchased and/or

leased Class Vehicles for personal, family or household use.

567.    Defendants committed unfair and deceptive acts in the course of trade

and commerce as described in this complaint in violation of PUTPCPL, §§ 201-

2(4)(v), (vii), (ix) and (xxi), *inter alia*.

568.    Defendants committed unconscionable, deceptive and unfair trade

practices including but not limited to deception, fraud, false pretense, false promise,

misrepresentation and the knowing concealment, suppression and omission of

material facts concerning the Latching Device with intent that Plaintiff and members

of the Pennsylvania Sub-Class would rely upon their misrepresentations in

connection with the sale and/or advertisement of Class Vehicles.

569.    Defendants' deceptive trade practices were likely to deceive a

consumer acting reasonably under the circumstances which Plaintiff and members

of the Pennsylvania Sub-Class were caused to expend sums of money in purchasing

and later repairing their Class Vehicles. As reasonable consumers, Plaintiff and

members of the Pennsylvania Sub-Class had no reasonable way to know that Class Vehicles contained Latching Devices that were defective in design. Any reasonable consumer under the circumstances would have relied on the representations of Defendants who alone possessed the knowledge as to the quality and characteristics of the Class Vehicles, including the Latching Device durability and functionality.

570.    Defendants committed unfair and deceptive trade practices as described in this complaint. Defendants repeatedly violated the PUTPCPL on multiple occasions with their continuous course of conduct including omissions of material fact and misrepresentations concerning *inter alia,* the causes of the Latching Device Defect in Class Vehicles owned by Plaintiff and members of the Pennsylvania Sub-Class.

571.    As a proximate and direct result of Defendants' unfair and deceptive trade practices, Plaintiff and members of the Pennsylvania Sub-Class purchased or leased Class Vehicles and sustained an ascertainable loss and financial harm. Plaintiff and members of the Pennsylvania Sub-Class experienced the Latching Device Defect, diminution of Class Vehicle resale value, increased repair and maintenance costs and incurred other substantial monetary damages and inconvenience.

572.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and

caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

573.    Plaintiff and members of the Pennsylvania Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT II
### BREACH OF EXPRESS WARRANTY
### 13 PA. CONS. STAT. §§ 2313 AND 2A103
### (ON BEHALF OF THE PENNSYLVANIA SUB-CLASS)

574.    Plaintiff Christa Callahan (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Pennsylvania Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

575.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

576.    Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 13 PA. CONS. STAT. §§ 2104 and 2A103(a), and "sellers" and "lessors" of motor vehicles under § 2103(a) and § 2A103(1)(p).

577.    612.    The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 PA. CONS. STAT. §§ 2105(a) and 2A103(a).

578.   Defendants provided Plaintiff and members of the Pennsylvania Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. For illustrative purposes, Defendants currently provide: (1) bumper-to-bumper coverage for six years or 72,000 miles, whichever came first; or (2) four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis. Under the warranties provided to Plaintiff and the Pennsylvania Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles. As alleged herein, Defendants breached these warranties.

579.   Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Latching Device prior to 280,000 miles. Such representations formed the basis of the bargain in Plaintiff and members of the Pennsylvania Sub-Class's decisions to purchase or lease the Class Vehicles.

580.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Latching Device Defect and its corresponding safety risk from Plaintiff and members of the Pennsylvania Sub-Class.

581. Plaintiff and members of the Pennsylvania Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Pennsylvania Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

582. Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Pennsylvania Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Latching Device Defect is by design, the warranties are substantively unconscionable because Defendants knew that the Latching Device was defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Latching Device.

583. Plaintiff and members of the Pennsylvania Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the Pennsylvania Sub-Class that the Class Vehicles contained the

Latching Device Defect and failed to provide a suitable repair or replacement of the Latching Device free of charge within a reasonable time.

584. On information and belief, Defendants have not suitably repaired or replaced the defective Latching Device free of charge for Plaintiff and members of the Pennsylvania Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

585. The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Class Vehicles without the Latching Device Defect.

586.   The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Pennsylvania Sub-Class.  Among other things, Plaintiff and members of the Pennsylvania Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.   A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

587.   Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.   Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of, concealed the Latching Device Defect, and have failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

588.   Defendants were provided notice by Plaintiff of their breach of express warranties by letter dated August 16, 2021. *See* Exhibit A.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

589.   Because of the Latching Device Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

590.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the Pennsylvania Sub-Class have been damaged in an amount to be determined at trial.

591.   In the alternative, should Defendants claim that the Latching Device Defect is covered under the warranties, the warranties now fail in its essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Pennsylvania Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

592.   Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the Pennsylvania Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Pennsylvania Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY,
## 13 PA. CONS. STAT. §§ 2314, 2A103, AND 2A212
## (ON BEHALF OF THE PENNSYLVANIA SUB-CLASS)

593.    Plaintiff Christa Callahan (for purposes of this count, "Plaintiff") brings

this claim on behalf of herself and the Pennsylvania Sub-Class against Defendants

on behalf of purchasers and lessees of the Class Vehicles.

594.    Plaintiff re-alleges and incorporates by reference all preceding

allegations as though fully set forth herein.

595.    Defendants are and were at all relevant times "merchants" with respect

to motor vehicles under 13 PA. CONS. STAT. §§ 2104 and 2A103(a), and "sellers" and

"lessors" of motor vehicles under § 2103(a) and § 2A103(1)(p).

596.    The Class Vehicles are and were at all relevant times "goods" within

the meaning of 13 PA. CONS. STAT. §§ 2105(a) and 2A103(a).

597.    Plaintiff and members of the Pennsylvania Sub-Class purchased or

leased the Class Vehicles from Defendants by and through Defendants' authorized

agents for retail sales, or were otherwise expected to be the eventual purchasers of

the Class Vehicles when bought from a third party. At all relevant times, Defendants

were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.

Defendants knew or had reason to know of the specific use for which the Class

Vehicles were purchased or leased.

598.   A warranty that the Class Vehicles and/or the defective Latching Devices installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 13 Pa. Cons. Stat. § 2314.

599.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect – the Latching Device Defect – (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

600.   Through their maintenance schedules, Defendants further represented that the defective Latching Device would not need periodic inspection, repair or replacement before 280,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Latching Device before 280,000 miles by omitting the Latching Device from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

601.   Plaintiff and members of the Pennsylvania Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand,

185

and Plaintiff and members of the Pennsylvania Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Class are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

602.   Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Latching Device Defect and, on information and belief, have refused to repair or replace the defective Latching Device free of charge within a reasonable time.

603.   Defendants were further provided notice by Plaintiff of their breach of implied warranties by letter dated August 16, 2021. *See* Exhibit A. Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

604.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Pennsylvania Sub-Class have been damaged in an amount to be proven at trial.

605.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Pennsylvania Sub-Class. Among other things, Plaintiff and members of the Pennsylvania Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Pennsylvania Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

606.   Plaintiff and members of the Pennsylvania Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

607.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

H.    **Texas Counts**

## COUNT I
## VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES-CONSUMER  PROTECTION ACT
## TEX. BUS. AND COMM. CODE §§ 17.41 *ET SEQ.*
## (ON BEHALF OF THE TEXAS SUB-CLASS)

608.    Plaintiff Johnnie Moutra (for purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Texas Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

609.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

610.    Plaintiff and members of the Texas Sub-Class are persons and consumers within the context of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. and Comm. Code §§ 17.41 et seq. (hereinafter "TDTPA") who purchased and/or leased Class Vehicles for personal, family or household use, specifically § 17.45(3) and (4).

611.    Defendants are persons within the context of TDTPA § 17.45(3) who sell goods within the context of TDTPA § 17.45(1).

612.    The sale of Class Vehicles in Texas constitutes trade and commerce of consumer goods affecting the people of the state of Texas within the context of TDTPA § 17.45(6).

613.   Defendants knowingly and intentionally violated TDTPA § 17.46(b)(5) by representing Class Vehicles have characteristics, uses, benefits and/or qualities which they do not possess.

614.   Defendants violated TDTPA § 17.46(b)(7) by representing Class Vehicles are of a particular standard, quality, or grade, when they are not.

615.   Defendants violated TDTPA § 17.46(b)(24) by deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts concerning Class Vehicles with the intent to deceive Plaintiff and members of the Texas Sub-Class.

616.   In violation of the TDTPA, Defendants employed unfair and deceptive acts or practices, fraud, false pretense, misrepresentation, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale and/or lease of Class Vehicles. Defendants knowingly concealed, suppressed, and omitted material facts regarding the Latching Device Defect and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff and the members of the Texas Sub-Class.

617.   Defendants actively suppressed the fact that the Latching Device in Class Vehicles is defective and presents a safety hazard. Further, Defendants employed unfair and deceptive trade practices by denying repairs or replacement of

the Latching Device Defect within a reasonable time in violation of TDTPA. Defendants also breached warranties as alleged below in violation of TDTPA.

618.   As alleged above, Defendants knew or should have known of the Latching Device Defect contained in the Class Vehicles since at least 2018. Prior to installing the defective Latching Devices in the seating assemblies in the Class Vehicles, Defendants engaged in pre-production testing and failure mode analysis. Defendants also knew about the Latching Device Defect after releasing a TSB describing the issue to their exclusive network of dealerships. Defendants should have known about the Latching Device Defect after monitoring numerous consumer complaints sent to NHTSA and online. Defendants, nevertheless, failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and seating assemblies with the Latching Device Defect installed in them.

619.   By failing to disclose and by actively concealing the Latching Device Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as a reputable manufacturer or distributor for a reputable manufacture that values safety, Defendants engaged in unfair or deceptive business practices in violation of the TDTPA. Defendants deliberately withheld the information about the propensity of the Latching Device Defect to cause rear-seats to slam forward during deceleration as well as the corresponding safety hazard to vehicle occupants.

620.   Defendants committed unfair and deceptive acts in the course of trade and commerce within the context of the TDTPA as described in this complaint in violation of TDTPA § 17.46.

621.   Defendants' unfair and deceptive trade practices were likely intended to deceive a reasonable consumer. Plaintiff and the members of the Texas Sub-Class had no reasonable way to know that the Class Vehicles contained the Latching Device Defect, which were defective in design and posed a serious and significant health and safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Latching Device Defect within their seating assemblies and the corresponding safety risks, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions, as Plaintiff and the members of the Texas Sub-Class did.

622.   Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Latching Device Defect with the intent to mislead Plaintiff and members of the Texas Sub-Class. Defendants knew, or should have known, that the Latching Device was defective in its design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Latching Device Defect in the Class Vehicles could cause the seats to slam forward during deceleration. Further, Defendants knew, or

should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

623.   Defendants knew or should have known that their conduct violated the TDTPA.

624.   Defendants made materials statements and/or omissions about the safety and reliability of the Class Vehicles and/or the Latching Device Defect installed in them that were either false or misleading. Defendants' misrepresentations, omissions, statements, and commentary have included selling and marketing Class Vehicles as safe and reliable, despite their knowledge of the Latching Device Defect and its corresponding safety hazard.

625.   To protect their profits, avoid remediation costs and public relation problems, and increase their profits by having consumers pay to remedy the Latching Device Defect, Defendants concealed the defective nature and safety risk posed by the Class Vehicles and the seating assemblies with the Latching Device Defect installed in them. Defendants allowed unsuspecting new and used car purchasers and lessees to continue to buy or lease the Class Vehicles and continue to drive them, despite the safety risk they pose.

626.   Defendants owed Plaintiff and the members of the Texas Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and the existence of the Latching Device Defect because Defendants:

a.      Possessed exclusive knowledge of the Latching Device Defect and its associated safety hazard;

b.      Intentionally concealed the foregoing from Plaintiff and the members of the Texas Sub-Class; and/or

c.      Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiff and the members of the Texas Sub-Class that contradicted these representations.

627.    Because Defendants fraudulently concealed the Latching Device Defect in the seating assemblies of Class Vehicles, and now that the Defect has been disclosed, the value of the Class Vehicles has greatly diminished, and they are now worth significantly less than they otherwise would be. Further, Plaintiff and the members of the Texas Sub-Class were deprived of the benefit of the bargain they reached at the time of purchase or lease.

628.    Defendants' failure to disclose and active concealment of the Latching Device Defect in the Class Vehicles are material to Plaintiff and the members of the Texas Sub-Class. A vehicle made by an honest and reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a dishonest and disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly reports on and remedies them.

629.   Plaintiff and the members of the Texas Sub-Class suffered ascertainable losses caused by Defendants' misrepresentations and their failure to disclose material information. Had Plaintiff and the members of the Texas Sub-Class been aware of the Latching Device Defect that existed in the Class Vehicles and Defendants' complete disregard for the safety of its consumers, Plaintiff and the members of the Texas Sub-Class either would have not paid as much for their vehicles or would not have purchased or leased them at all. Plaintiff and the members of the Texas Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

630.   Plaintiff and the members of the Texas Sub-Class risk loss of use of their vehicles as a result of Defendants' act and omissions in violation of TDTPA, and these violations present a continuing risk to Plaintiff, the Texas Sub-Class, and the public in general. Defendants' unlawful act and practices complained of above affect the public interest.

631.   As a direct and proximate result of Defendants' violations of the TDTPA, Plaintiff and the members of the Texas Sub-Class have suffered injury-in-fact and/or actual damage.

632.   Plaintiff and the members of the Texas Sub-Class also seek an order enjoining Defendants' unfair, unlawful, and deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the TDTPA.

633.    Plaintiff and members of the Texas Sub-Class provided 60-day notice pursuant to TDTPA § 17.505 to Defendants via certified mail, return receipt requested on August 16, 2021. *See* Exhibit A.

634.    Plaintiff and members of the Texas Sub-Class demand judgment against Defendants for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting Defendants from further deceptive acts and practices described in this complaint.

## COUNT II
## BREACH OF EXPRESS WARRANTY
## TEX. BUS. & COM. CODE §§ 2.313 AND 2A.210
## (ON BEHALF OF THE TEXAS SUB-CLASS)

635.    Plaintiff Johnnie Moutra (for purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Texas Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

636.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

637.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4)

638.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16). Plaintiff

and members of Texas Sub-Class who purchased Class Vehicles are "buyers" within the meaning of Tex. Bus. & Com. Code Ann. § 2.103(a)(1).

639.    Members of the Texas Sub-Class who leased Class Vehicles "lessees" within the meaning of Tex. Bus. & Com. Code Ann. § 2A.103(a)(14).

640.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

641.    Defendants provided Plaintiff and members of the Texas Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. For illustrative purposes, Defendants currently provide: (1) bumper-to-bumper coverage for six years or 72,000 miles, whichever came first; or (2) four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis.  Under the warranties provided to Plaintiff and the Texas Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

642.    Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Latching Device prior to 280,000 miles. Such representations formed the basis of the bargain in Plaintiff and members of the Texas Sub-Class's decisions to purchase or lease the Class Vehicles.

643.   Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Latching Device Defect and its corresponding safety risk from Plaintiff and members of the Texas Sub-Class.

644.   Plaintiff and members of the Texas Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Texas Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers.  The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

645.   Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Texas Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Latching Device Defect is by design, the warranties are substantively unconscionable because Defendants knew that the

Latching Device was defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Latching Device.

646. Plaintiff and members of the Texas Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the Texas Sub-Class that the Class Vehicles contained the Latching Device Defect and failed to provide a suitable repair or replacement of the Latching Device free of charge within a reasonable time.

647. On information and belief, Defendants have not suitably repaired or replaced the defective Latching Device free of charge for Plaintiff and members of the Texas Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

648. The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to

Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Class Vehicles without the Latching Device Defect.

649.    The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Texas Sub-Class.  Among other things, Plaintiff and members of the Texas Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

650.    Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of, concealed the

Latching Device Defect, and have failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

651.   Defendants were provided notice by Plaintiff of their breach of express warranties by letter dated August 16, 2021. *See* Exhibit A.  Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

652.   Because of the Latching Device Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

653.   As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the Texas Sub-Class have been damaged in an amount to be determined at trial.

654.   In the alternative, should Defendants claim that the Latching Device Defect is covered under the warranties, the warranties now fail in its essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Texas Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

655.    Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the Texas Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Texas Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## TEX. BUS. & COM. CODE §§ 2.314 AND 2A.212
## (ON BEHALF OF THE TEXAS SUB-CLASS)

656.    Plaintiff Johnnie Moutra (for purposes of this count, "Plaintiff") brings this claim on behalf of himself and the Texas Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

657.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

658.    Defendants are and were at all relevant times "merchant[s]" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4).

659.    With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

660.    All Texas State Class members who purchased Class Vehicles are "buyers" within the meaning of Tex. Bus. & Com. Code Ann. § 2.103(a)(1).

661.    All Texas State Class members who leased Class Vehicles "lessees" within the meaning of Tex. Bus. & Com. Code Ann. § 2A.103(a)(14).

662.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

663.    Plaintiff and members of the Texas Sub-Class purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

664.    A warranty that the Class Vehicles and/or the defective Latching Devices installed in them were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Tex. Bus. & Com. Code §§ 2.314 and 2A.212.

665.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect—the Latching Device Defect—(at the time of sale or lease and thereafter)

and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

666. Through their maintenance schedules, Defendants further represented that the defective Latching Device would not need periodic inspection, repair or replacement before 280,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Latching Device before 280,000 miles by omitting the Latching Device from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

667. Plaintiff and members of the Texas Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Texas Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.

668. Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a

reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Latching Device Defect and, on information and belief, have refused to repair or replace the defective Latching Device free of charge within a reasonable time.

669.    Defendants were further provided notice by Plaintiff of their breach of implied warranties by letter dated August 16, 2021. *See* Exhibit A.  Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

670.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Texas Sub-Class. Among other things, Plaintiff and members of the Texas Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Texas Sub-Class, and Defendants knew or should have known that

the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

671.   Plaintiff and members of the Texas Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

672.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

673.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Texas Sub-Class have been damaged in an amount to be proven at trial.

### I.    Virginia Counts

**COUNT I**
**VIOLATION OF THE VIRGINIA CONSUMER  PROTECTION ACT**
**VA. CODE ANN. § 59.1-196, *ET SEQ.***
**(ON BEHALF OF THE VIRGINIA SUB-CLASS)**

674.   Plaintiff Jennifer Tolbert (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Virginia Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

675.   Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

676.   Under the Virginia Consumer Protection Act ("Virginia CPA") Plaintiff, members of the Virginia Sub-Class, and Defendants are "persons" within the meaning of within the meaning of Va. Code Ann. § 59.1-198.

677.   Defendants were and are "suppliers" within the meaning of Va. Code Ann. § 59.1-198.

678.   The Class Vehicles and defective Latching Devices installed in them are "goods" within the meaning of Va. Code Ann. § 59.1-198.

679.   Defendants were and are engaged in "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198.

680.   The Virginia Consumer Protection Act ("Virginia CPA") prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction[.]" Va. Code Ann. § 59.1-200(A).

681.   In the course of Defendants' business, Defendants violated the Virginia CPA by failing to disclose and actively concealing the dangers and risks posed by the Class Vehicles and/or the defective Latching Devices installed in them, as described above. Specifically, in marketing, offering for sale, and selling the Class Vehicles with defective Latching Devices installed in them, Defendants engaged in one or more of the following unfair or deceptive acts or practices: representing that the Class Vehicles and/or the defective Latching Devices installed in them have characteristics or benefits that they do not have; representing that they are of a

particular standard and quality when they are not; and/or advertising them with the intent no to sell them as advertised.

682.   Defendants have known of the Latching Device Defect in their Class Vehicles and failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles and/or the Latching Devices installed in them.

683.   By failing to disclose and by actively concealing the Latching Device Defect in the Class Vehicles, by marketing them as safe, reliable, and of high quality, and by presenting themselves as reputable manufacturers that value safety, Defendants engaged in unfair and deceptive business practices in violation of the Virginia CPA. Defendants deliberately withheld the information about the propensity of the defective Latching Devices and the associated safety risks.

684.   Defendants' unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead, tended to create a false impression in consumers, were likely to and did in fact deceive reasonable consumers, including the members of the Virginia Sub-Class, about the true safety and reliability of Class Vehicles and/or the defective Latching Devices installed in them, the quality of Defendants' brands, and the true value of the Class Vehicles.

685.   Defendants intentionally and knowingly misrepresented and concealed, suppressed and/or omitted facts regarding the Latching Device Defect with the intent

to mislead Plaintiff and members of the Virginia Sub-Class. Defendants knew, or should have known, that the Latching Device was defective in its design and that the manufacturer's warranties were manipulated in such a manner so that Defendants could avoid for the costs of repair and/or replacement. Defendants also knew, or should have known, that the Latching Device Defect in the Class Vehicles could cause the seats to slam forward during deceleration. Further, Defendants knew, or should have known, that such failure would place vehicle operators and passengers at risk for serious injury.

686. Defendants knew or should have known that their conduct violated the Virginia CPA.

687. As alleged above, Defendants made material statements about the safety and reliability of the Class Vehicles and/or the defective Latching Devices installed in them that were either false or misleading.

688. To protect their profits and to avoid remediation costs and a public relations nightmare, Defendants concealed the dangers and risks posed by the Class Vehicles and/or the defective Latching Devices installed in them and their associated safety risk, and allowed unsuspecting new and used car purchasers to continue to buy/lease the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

689.    Defendants owed members of the Virginia Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles and/or the Latching Device Defect. Accordingly, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Va. Code Ann. § 59.1-200:

    a.    Representing that the Class Vehicles and/or the defective Latching Devices installed in them have characteristics, uses, benefits, and qualities which they do not have;

    b.    Representing that the Class Vehicles and/or the defective Latching Devices installed in them are of a particular standard, quality, and grade when they are not;

    c.    Advertising the Class Vehicles and/or the defective Latching Devices installed in them with the intent not to sell or lease them as advertised; and

    d.    Engaging in any other deception, fraud, false pretense, false promise, or misrepresentation.

Va. Code Ann. §§ 59.1-200(A)(5)-(6), (8), and (14).

690.    Because Defendants fraudulently concealed the Latching Device Defect in Class Vehicles, and disclosure of the Latching Device Defect would cause a reasonable consumer to be deterred from purchasing the Class Vehicles, members of the Virginia Sub-Class overpaid for the Class Vehicles and the value of the Class

Vehicles has greatly diminished. In light of the stigma attached to Class Vehicles by Defendants' conduct, they are now worth significantly less than they otherwise would be.

691.    Defendants' failure to disclose and active concealment of the dangers and risks posed by the Latching Device Defect in Class Vehicles were material to members of the Virginia Sub-Class. A vehicle made by a reputable manufacturer of safe vehicles is worth more than an otherwise comparable vehicle made by a disreputable manufacturer of unsafe vehicles that conceals defects rather than promptly remedies them.

692.    Members of the Virginia Sub-Class suffered ascertainable loss caused by Defendants' misrepresentations and their failure to disclose material information. Had they been aware of the Latching Device Defect that existed in the Class Vehicles, and Defendants' complete disregard for safety, the members of the Class either would have paid less for their vehicles or would not have purchased or leased them at all. The members of the Virginia Sub-Class had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose.

693.    Members of the Virginia Sub-Class did not receive the benefit of their bargain as a result of Defendants' misconduct.

694.   As a direct and proximate result of Defendants' violations of the Virginia CPA, members of the Virginia Sub-Class have suffered injury-in-fact and/or actual damage.

695.   Pursuant to Va. Code Ann. § 59.1-204(A)–(B), the Plaintiff and members of the Virginia Sub-Class may seek an order enjoining the Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Virginia CPA.

696.   Defendants were provided notice of the issues raised in this Count and this Complaint, as detailed above. In addition, on August 16, 2021, a notice letter was sent on behalf of members of the Virginia Sub-Class to Defendants. Because Defendants failed to remedy their unlawful conduct within the requisite time-period, members of the Virginia Sub-Class seek all damages and relief to which they are entitled.

### COUNT II
### BREACH OF EXPRESS WARRANTY
### VA. CODE ANN. §§ 8.2-313 AND 8.2A-210
### (ON BEHALF OF THE VIRGINIA SUB-CLASS)

697.   Plaintiff Jennifer Tolbert (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Virginia Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

698.   Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

699.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Va. Code Ann. §§ 8-2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

700.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code Ann. § 8-2A-103(1)(p).

701.   Plaintiff and members of the Virginia Sub-Class members who purchased Class Vehicles in Virginia are "buyers" within the meaning of Va. Code Ann. § 8.2-103(1)(a).

702.   Members of the Virginia Sub-Class who leased FCA Class Vehicles in Virginia are "lessees" within the meaning of Va. Code Ann. § 8.2A-103(1)(n).

703.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

704.   Defendants provided Plaintiff and members of the Virginia Sub-Class with one or more express warranties in connection with the purchase or lease of Class Vehicles. For illustrative purposes, Defendants currently provide: (1) bumper-to-bumper coverage for six years or 72,000 miles, whichever came first; or (2) four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis. Under the warranties provided to Plaintiff and the Virginia Sub-Class, Defendants promised to repair or replace covered defective components, at no cost to owners

and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties.

705.  Defendants represented in the maintenance schedules and warranty guides for the Class Vehicles that there would be no need to inspect, repair, replace or service the Latching Device prior to 280,000 miles. Such representations formed the basis of the bargain in Plaintiff and members of the Virginia Sub-Class's decisions to purchase or lease the Class Vehicles.

706.  Defendants also marketed the Class Vehicles as high quality, reliable, and safe vehicles, and that Defendants would stand behind the quality of their products and promptly repair any defects. These statements helped conceal the existence of the Latching Device Defect and its corresponding safety risk from Plaintiff and members of the Virginia Sub-Class.

707.  Plaintiff and members of the Virginia Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Virginia Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the

warranty agreements were designed for and intended to benefit purchasers and lessees of the Class Vehicles only.

708.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Virginia Sub-Class purchased or leased their Class Vehicles. Given that the nature of the Latching Device Defect is by design, the warranties are substantively unconscionable because Defendants knew that the Latching Device was defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace the Latching Device.

709.    Plaintiff and members of the Virginia Sub-Class were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendants failed to adequately inform Plaintiff and members of the Virginia Sub-Class that the Class Vehicles contained the Latching Device Defect and failed to provide a suitable repair or replacement of the Latching Device free of charge within a reasonable time.

710.    On information and belief, Defendants have not suitably repaired or replaced the defective Latching Device free of charge for Plaintiff and members of the Virginia Sub-Class despite the existence of the Defect in the Class Vehicles at the time of sale or lease.

711.    The warranties accompanying Class Vehicles were procedurally and substantively unconscionable because of the disparity in bargaining power of the

parties, the purchasers' lack of knowledge that Class Vehicles were defective, the inability of Class Vehicle purchasers to bargain with Defendants to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendants particularly where there were Class Vehicle defects known only to Defendants and the warranty unfairly shifted repair costs to consumers when the Defect manifests in the Class Vehicles during their reasonably expected life), absence of effective warranty competition, and the fact that Class Vehicles fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Class Vehicles without the Latching Device Defect.

712. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Virginia Sub-Class. Among other things, Plaintiff and members of the Virginia Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

713.    Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of, concealed the Latching Device Defect, and have failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

714.    Defendants were provided notice by Plaintiff of their breach of express warranties by letter dated August 16, 2021. *See* Exhibit A.    Despite this notice, Defendants did not cure their breach of express warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

715.    Because of the Latching Device Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

716.    As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the Virginia Sub-Class have been damaged in an amount to be determined at trial.

717.    In the alternative, should Defendants claim that the Latching Device Defect is covered under the warranties, the warranties now fail in its essential

purpose because the contractual remedy is insufficient to make Plaintiff and members of the Virginia Sub-Class whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

718. Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the Virginia Sub-Class assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Virginia Sub-Class of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT III**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**VA. CODE ANN. §§ 8.2-314 AND 8.2A-212**
**(ON BEHALF OF THE VIRGINIA SUB-CLASS)**

719. Plaintiff Jennifer Tolbert (for purposes of this count, "Plaintiff") brings this claim on behalf of herself and the Virginia Sub-Class against Defendants on behalf of purchasers and lessees of the Class Vehicles.

720. Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

721. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Va. Code Ann. §§ 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

722.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code Ann. § 8.2A-103(1)(p).

723.   Plaintiff and members of the Virginia Sub-Class who purchased Class Vehicles in Virginia are "buyers" within the meaning of Va. Code Ann. § 8-2-313(1).

724.   Members of the Virginia Sub-Class who leased FCA Class Vehicles in Virginia are "lessees" within the meaning of Va. Code Ann. § 8-2A-103(1)(n).

725.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

726.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Va. Code Ann. §§ 8.2-314 and 8.2A-212.

727.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherent defect—the Latching Device Defect—(at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants.  Thus, Defendants breached their implied warranty of merchantability.

728.   Through their maintenance schedules, Defendants further represented that the defective Latching Device would not need periodic inspection, repair or

replacement before 280,000 miles and/or fraudulently concealed the need for periodic inspection, repair or replacement of the Latching Device before 280,000 miles by omitting the Latching Device from the maintenance schedules. Defendants cannot disclaim their implied warranty as they knowingly sold or leased a defective product.

729.    Plaintiff and members of the Virginia Sub-Class have had sufficient direct dealings with Defendants or their agents, their authorized dealerships, to establish privity of contract between Defendants, on the one hand, and Plaintiff and members of the Virginia Sub-Class, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendants and their dealers. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles.

730.    Defendants were provided notice of the Latching Device Defect by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Latching Device Defect and, on information and belief, have refused to repair or replace the defective Latching Device free of charge within a reasonable time.

731.   Defendants were further provided notice by Plaintiff of their breach of implied warranties by letter dated August 16, 2021. *See* Exhibit A.   Despite this notice, Defendants did not cure their breach of implied warranties and failed to provide a suitable repair or replacement of the defective Latching Device free of charge within a reasonable time.

732.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, any limitation on Defendants' warranty is unenforceable because they knowingly sold or leased a defective product without informing consumers about the Defect. Any applicable time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Virginia Sub-Class. Among other things, Plaintiff and members of the Virginia Sub-Class did not determine these limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Virginia Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Latching Device Defect posed a safety risk.

733.   Plaintiff and members of the Virginia Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct

described herein. The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule and/or fraudulent concealment.

734.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Virginia Sub-Class have been damaged in an amount to be proven at trial.

## IX.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class and Sub-Class, and award the following relief:

A.   An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class and Sub-Class, and Plaintiffs' counsel as counsel for the Class and Sub-Class;

B.   An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.   Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Latching Device in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Class for all costs and economic losses;

D.      Appropriate injunctive and equitable relief;

E.      A declaration that Defendants are financially responsible for all Class notice and the administration of Class relief;

F.      An order awarding costs, restitution, disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss, overpayment damages, and out-of-pocket costs in an amount to be determined at trial;

G.      An order awarding any applicable statutory and civil penalties;

H.      A declaration that Defendants are required to engage in corrective advertising;

I.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

J.      An award of costs, expenses and attorneys' fees as permitted by law; and

K.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## X.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: October 15, 2021   Respectfully submitted,

            */s/ James E. Cecchi*

Christopher A. Seeger     James E. Cecchi
Christopher L. Ayers      Caroline F. Bartlett
**SEEGER WEISS LLP**    Jordan M. Steele
55 Challenger Road, 6th Floor  **CARELLA, BYRNE, CECCHI,**
Ridgefield Park, NJ 07660   **OLSTEIN, BRODY & AGNELLO, P.C.**
Telephone: (973) 639-9100   5 Becker Farm Road
Facsimile: (973) 679-8656   Roseland, New Jersey 07068
cseeger@seegerweiss.com   Telephone: (973) 994-1700
cayers@seegerweiss.com    Facsimile: (973) 994-1744
            jcecchi@carellabyrne.com
            cbartlett@carellabyrne.com
            jsteele@carellabyrne.com

            Steve W. Berman
            **HAGENS BERMAN SOBOL**
            **SHAPIRO LLP**
            1301 Second Avenue, Suite 2000
            Seattle, Washington 98101
            Telephone: (206) 623-7292
            Facsimile: (206) 623-0594
            steve@hbsslaw.com