<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| BEATRIZ TIJERINA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., *et al.*,<br><br>Defendants. | Case No. 2:21-cv-18755 (BRM) (LDW)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) filed by Defendant Volkswagen Group of America, Inc. ("VW America") (ECF No. 32); Defendant Volkswagen Group of America Chattanooga Operations, LLC ("VW Chattanooga") (ECF No. 38); and Defendant Volkswagen Aktiengesellschaft ("VWAG") (collectively "Defendants") (ECF No. 52). Plaintiffs filed oppositions to the motions.[1] (ECF Nos.

---

[1] Plaintiffs Beatriz Tijerina, David Concepción, Gina Aprile, Theresa Gillespie, Talina Henderson, Diana Ferrara, Lauren Daly, Shane McDonald, Kasem Curovic, Christa Callahan, Erica Upshur, Johnnie Moutra, Jennifer Tolbert, Derek Lowe, Phillip Hooks, and Delia Masone (collectively, "Plaintiffs") bring this putative class action individually and on behalf of all others similarly situated. (Am. Compl. (ECF No. 26).) Plaintiffs Tijerina and Concepción reside in California. (*Id.* ¶¶ 24, 28.) Plaintiffs Aprile, Gillespie, and Masone reside in Florida. (*Id.* ¶¶ 34, 38, 91.) Plaintiff Henderson resides in Kentucky. (*Id.* ¶ 44.) Plaintiffs Ferrara and Daly reside in Massachusetts. (*Id.* ¶¶ 47, 51.) Plaintiff McDonald resides in Michigan. (*Id.* ¶ 58.) Plaintiff Curovic resides in New York. (*Id.* ¶ 62.) Plaintiff Callahan resides in Pennsylvania. (*Id.* ¶ 65.) Plaintiff Lowe resides in New Jersey. (*Id.* ¶ 78.) Plaintiff Upshur resides in Pennsylvania but purchased her vehicle in New Jersey. (*Id.* ¶ 70.) Plaintiff Tolbert resides in Virginia. (*Id.* ¶ 74.) Plaintiff Moutra resides in Texas. (*Id.* ¶ 72.) Plaintiff Hooks resides in Florida but purchased his vehicle in Missouri. (*Id.* ¶ 82.)

45, 61.) VW America, VW Chattanooga, and VWAG filed their respective replies. (ECF Nos. 50, 51, 69.) Having reviewed the parties' submissions filed in connection with the Motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, VW Chattanooga's Motion to Dismiss is **GRANTED**; VW America's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**; and VWAG's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

For the purpose of these motions to dismiss, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to Plaintiffs. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)). However, on a motion to dismiss pursuant to Rule 12(b)(2), "plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Therefore, the Court is not bound by the pleadings to determine jurisdiction, *see id.*, and, to the extent they are material or applicable, the Court will include relevant allegations pertaining to jurisdiction in its summary of the facts, while construing all disputed facts in favor of Plaintiffs. *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

This action arises out of an alleged design defect in certain 2018 through 2021 model Volkswagen Atlas vehicles purchased or leased after January 1, 2017 ("Class Vehicles"). (Am. Compl. (ECF No. 26) ¶¶ 1, 18, 171.) Plaintiffs bring this putative class action individually and on behalf of all others similarly situated against VW America, VW Chattanooga, and VWAG. (*Id.* at

2

1, ¶ 172.) VWAG, a German corporation with its principal place of business in Germany, is the parent corporation of VW America. (*Id*. ¶ 97.) VW America is a New Jersey corporation with its corporate headquarters located in Virginia and is a wholly owned subsidiary of VWAG. (*Id*. ¶ 98.) VW Chattanooga is a Volkswagen plant located in Chattanooga, Tennessee, which manufactured the Class Vehicles. (*Id*. ¶ 100.) VW Chattanooga is a wholly owned subsidiary of VW America. (Hinson Decl. (ECF No. 38-2) ¶ 20.)

Plaintiffs allege the Class Vehicles' second-row seating is designed defectively because the seats are improperly latched to their base ("Seat Defect"). (ECF No. 26 ¶ 2.) Moreover, Plaintiffs claim the only warning the second-row seats are unlatched is a "slight appearance of a small red button" which "can easily be obstructed from the driver's view by a high-back booster seat." (*Id*. ¶¶ 7–8.) The Seat Defect causes the Class Vehicles' second-row seats to lurch forward and slam passengers into the front seats when the Class Vehicles decelerate or are involved in an accident or collision. (*Id*. ¶ 3.) Defendants marketed the Class Vehicles to families with infants and young children who are typically seated in the second row. (*Id*. ¶ 4.) Plaintiffs allege Defendants knew of and concealed the Seat Defect. (*Id*. ¶¶ 5–6.)

The 2018 and 2019 model years of the Class Vehicles are purportedly covered by a warranty which "furnishes bumper-to-bumper coverage for six years or 72,000 miles, whichever comes first[,] and is fully transferrable with no loss in coverage," and the 2020 and 2021 model years are alleged to be covered by a warranty which "covers four years, or 50,000 miles, whichever comes first, on a bumper-to-bumper basis." (*Id*. ¶ 13.) Defendants excluded coverage for the Seat Defect from these warranties because the Seat Defect is one of design, and the warranties apply to defects in "materials and/or workmanship." (*Id*. ¶ 14.)

On February 5, 2022, Plaintiffs filed an Amended Class Action Complaint bringing the following claims on behalf of a nationwide class: (1) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.*, (Nationwide Count I); (2) fraud by concealment or omission (Nationwide Count II); (3) negligent misrepresentation (Nationwide Count III); (4) unjust enrichment (Nationwide Count IV); (5) violation of the New Jersey Consumer Fraud Act (Nationwide Count V) (also brought on behalf of a New Jersey state sub-class); (6) breach of express warranty (Nationwide Count VI); and (7) breach of implied warranty of merchantability (Nationwide Count VII). (*Id.* ¶¶ 71–97.) Plaintiffs also raise claims based on violations of various state laws on behalf of state sub-classes for California (California Counts I–VI), Florida (Florida Counts I–III), Kentucky (Kentucky Counts I–III), Massachusetts (Massachusetts Counts I–III), Michigan (Michigan Counts I–III), Missouri (Missouri Counts I–III), New York (New York Counts I–III), Pennsylvania (Pennsylvania Counts I–III), Texas (Texas Counts I–III), and Virginia (Virginia Counts I–III). (*Id.* ¶¶ 97–865.)

On April 15, 2022, VW America filed its motion to dismiss the Amended Class Action Complaint. (ECF No. 32.) On May 13, 2022, VW Chattanooga filed its motion to dismiss. (ECF No. 38.) On June 10, 2022, Plaintiffs filed an opposition to both motions. (ECF No. 45.) On July 15, 2022, VW America and VW Chattanooga filed their replies, respectively. (ECF Nos. 50, 51.) On July 22, 2022, VWAG filed its motion to dismiss. (ECF No. 52.) On September 23, 2022, Plaintiffs filed their opposition to VWAG's motion, (ECF No. 61), and on November 4, 2022, VWAG replied to the opposition (ECF No. 69).

## II.   LEGAL STANDARD

### A.   Rule 12(b)(2)

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction." *Fatouros v. Lambrakis*, 627 F. App'x 84, 86–87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). A court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker*, 292 F.3d at 368 (quoting *Carteret Sav. Bank*, 954 F.2d at 142 n.1.) Pursuant to Federal Rule of Civil Procedure 4(k), a district court may exercise personal jurisdiction according to the law of the state where it sits. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 95 (3d Cir. 2004) (citing N.J. Court Rule 4:4-4(c)). In other words, the Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Therefore, "parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: specific jurisdiction and general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citing *Int'l Shoe*, 326 U.S. at 317); *see Metcalfe*, 566 F.3d at 334 ("Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction."). Specific jurisdiction exists when the defendant's activities in the forum state: (1) were "continuous and systematic" and (2) gave rise to the plaintiff's claims. *Id*. General jurisdiction requires only continuous and systematic

contacts, and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id*. (quoting *Int'l Shoe*, 326 U.S. at 318).

"Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the 'plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003) (citing *Pinker*, 292 F.3d at 368.) The defendant must have "'purposefully directed' his activities at residents of the forum and the litigation [must] result[] from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Metcalfe*, 566 F.3d at 334. Further, the Due Process Clause of the Fifth Amendment requires that a "defendant has constitutionally sufficient 'minimum contacts' with the forum" and that "the court's jurisdiction comports with traditional notions of fair play and substantial justice." *Pinker*, 292 F.3d at 369 (citing *Burger King*, 471 U.S. at 474 and *Int'l Shoe*, 326 U.S. at 316).

With respect to a corporation, the Supreme Court in *Daimler* emphasized the general jurisdiction inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 139 (quoting *Goodyear*, 564 U.S. at 919). The Supreme Court explained that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id*. at 137. For a corporate defendant, "the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Id*. (internal citation omitted).

*Daimler* also recognized the possibility that in an "exceptional" case, "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 139 n.19. However, an approach that "approve[s] the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business . . . is unacceptably grasping." *Id*. at 138 (internal citation and quotation marks omitted). If general jurisdiction is established, a defendant can be sued in that jurisdiction on any matter. *Boswell v. Cable Servs. Co., Inc.*, Civ. A. No. 16-4498, 2017 U.S. Dist. LEXIS 100708, at *8 (D.N.J. June 29, 2017).

Specific jurisdiction may be established over a defendant where the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal citations omitted). More particularly, specific jurisdiction requires: "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair." *WAG Acquisition, LLC v. Multi-Media, LLC*, Civ. A. No. 14-1661, 2015 U.S. Dist. LEXIS 121028, at *34 (D.N.J. Sept. 10, 2015) (citation omitted); *Shuker v. Smith & Nephew, PLC*, 885 F.3d at 780 (stating "what is necessary [for specific jurisdiction] is a deliberate targeting of the forum") (citation omitted).

In general, a court's exercise of personal jurisdiction "requires some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Nicastro*, 564 U.S. at 880. Additionally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414

7

(1984) (quoting *Int'l Shoe*, 326 U.S. at 316); *see also O'Connor*, 496 F.3d at 316 (discussing the three-step process in determining personal jurisdiction). Importantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being hauled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[A] plaintiff's residence, by itself, is insufficient to establish personal jurisdiction" over a defendant. *Choi v. Damul Corp.*, Civ. A. No. 12-2440, 2013 U.S. Dist. LEXIS 184402, at *22 (D.N.J. Dec. 11, 2013). "Once specific jurisdiction is established, a defendant can be sued in the jurisdiction only in the matter from which the jurisdiction arises." *Boswell*, 2017 U.S. Dist. LEXIS 100708, at *9.

Moreover, "the minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252, 1255 (N.J. 1989) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297–98). Indeed, the *Sandy Lane* inquiry is meant to ensure that an out-of-state defendant will not be haled into court based on "random, fortuitous, or attenuated contacts or as a result of the unilateral activity of some other party." *Waste Mgmt., Inc. v. Admiral Ins.*, 649 A.2d 379, 386 (N.J. 1994). The plaintiff "bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court *in personam* jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)).

**B.      Rule 12(b)(6)**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause

of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (emphasis added) (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral'

document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

C.      **Rule 9(b)**

Fraud-based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). For a fraud-based claim, a court may grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) if the plaintiff fails to plead with the required particularity. *See Frederico v. Home Depot*, 507 F.3d 188, 200–02 (3d Cir. 2007). The level of particularity required is such that a defendant is provided with sufficient details to be put on notice of the "precise misconduct with which [it is] charged." *Id*. at 200 (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted).

III.    **DECISION**

VW America, VW Chattanooga, and VWAG all seek to dismiss various claims asserted in the Amended Complaint on several grounds. VW Chattanooga argues dismissal is warranted because the Court lacks personal jurisdiction over them. (ECF No. 38-1 at 5–17.) VW America argues the nationwide class claims, certain state-specific claims, and all claims for injunctive relief should be dismissed for lack of standing. (ECF No. 32-1 at 5–11, 60–63.) VW America also contends Plaintiffs' express and implied warranty claims, MMWA claims, statutory and common law fraud claims, negligent misrepresentation claims, and unjust enrichment claims should be dismissed for failure to state a claim. (*Id*. at 12–59, 65–68.) VWAG argues all breach of express warranty claims should be dismissed because it did not issue them, that certain implied warranty

11

and statutory fraud claims should be dismissed for lack of privity, and certain false advertising claims should be dismissed for failing to allege that VWAG advertised the vehicles. (ECF No. 52 at 3–8.) The Court addresses each in turn.

### A.   Defendants' Motions to Dismiss for Lack of Standing

VW America argues Plaintiffs' nationwide class claims should be dismissed because Plaintiffs lack standing on behalf of unnamed plaintiffs in states in which the Plaintiffs themselves have suffered no alleged injury. (ECF No. 32-1 at 7.) VW America also asserts certain named Plaintiffs lack standing, arguing: (1) Plaintiffs Concepción and Ferrara lack standing because they did not personally purchase or lease a Class Vehicle; and (2) Plaintiffs McDonald, Upshur, and Moutra lack standing because they do not claim to have experienced any problem with their vehicles, to have incurred any out-of-pocket expenses, or to have sold their vehicles at diminished value. (*Id*. at 11.) Defendants VW Chattanooga (ECF No. 38-1 at 4) and VWAG (ECF No. 52-1 at 1) adopt VW America's arguments in their own motion to dismiss the nationwide class claims. Plaintiffs contend there is no requirement for injured Plaintiffs Concepción and Ferrara to be listed in a purchasing agreement to have Article III standing. (*Id*. at 13.) With respect to Plaintiffs McDonald, Upshur, and Moutra, Plaintiffs argue their injury was suffered at the time of purchase and the alleged damages do not depend on the second-row seats failing. (*Id*. at 15)

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa.*, 757 F.3d at 360 (citing *Davis v. FEC*, 554 U.S. 724, 734 (2008)).

Article III "standing consists of three elements." *Spokeo*, 578 U.S. at 338 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. As the party invoking federal jurisdiction, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cnty. Court of Common Pleas*, 75 F. 3d 834, 838 (3d Cir. 1996) (quoting *Lujan*, 504 U.S. at 561); *see also Spokeo*, 578 U.S. at 338 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.") (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)). However, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

With respect to class actions, the Third Circuit has explicitly narrowed "[the] standing inquiry [] solely on the class representative(s)." *Mielo v. Steak 'N Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018); *see also Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015) ("We now squarely hold that unnamed, putative class members need not establish Article III standing."). Only after the Court addresses the class representatives' Article III standing can the Court analyze Federal Rule of Civil Procedure 23's certification requirements. *See id.* at 480 (citing *Neale*, 794 F.3d at 368); *see also Duncan v. Governor of Virgin Islands*, 48 F.4th 195, 203 (3d Cir. 2022).

The first element of standing, establishing an "injury in fact," requires a plaintiff to "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339

(quoting *Lujan*, 504 U.S. at 560). When "determining whether Plaintiffs have suffered an invasion of a legally protected interest, [the Court] must carefully 'separate [its] standing inquiry from any assessment of the merits of the plaintiff's claim.'" *Mielo*, 897 F.3d at 478–79 (quoting *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017)). A "concrete" injury is "real, or distinct and palpable, as opposed to merely abstract." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *N.J. Physicians, Inc. v. President of the U.S.*, 653 F.3d 234, 238 (3d Cir. 2011)). A "particularized" injury "must 'affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). "The injury-in-fact requirement is 'very generous' to claimants, demanding only that the claimant 'allege[] some specific, "identifiable trifle" of injury.'" *Cottrell*, 874 F.3d at 162 (quoting *Bowman v. Wilson*, 672 F.2d 1145, 1151 (3d Cir. 1982)); *see also Mielo*, 897 F.3d at 479 (quoting *Finkelman*, 810 F.3d at 197) ("[O]ur caselaw requires us to 'examine the allegations in the complaint from a number of different angles to see if [plaintiffs'] purported injury can be framed in a way that satisfies Article III.'").

The second element of standing, traceability, "is akin to 'but for' causation in tort and may be satisfied even where the conduct in question might not have been a proximate cause of the harm." *Mielo*, 897 F.3d at 481 (internal citations omitted) (quoting *Finkelman*, 810 F.3d at 193–94); *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009)) ("This causal connection need not be as close as the proximate causation needed to succeed on the merits of a tort claim."). This requirement "is not satisfied if the alleged injury is merely 'the result of the independent action of some third party not before the court.'" *Id.* (quoting *Finkelman*, 810 F.3d at 193). Lastly, the redressability element of standing "requires the plaintiff to show that it is likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision." *Id.* (internal quotation marks omitted) (quoting *Finkelman*, 810 F.3d at 194).

14

VW America does not contest Plaintiffs' standing to bring their own respective state-law claims. Rather, VW America challenges Plaintiffs' standing to assert claims on behalf of unnamed plaintiffs under the laws of states which the named Plaintiffs themselves do not have standing. The Third Circuit has repeatedly affirmed, "[a] plaintiff must 'demonstrate standing for each claim he seeks to press.'" *Long v. SEPTA*, 903 F.3d 312, 323 (3d Cir. 2018) (quoting *Neale*, 794 F.3d at 359). To that end, courts "do not exercise jurisdiction over one claim simply because it arose 'from the same nucleus of operative fact' as another claim." *Neale*, 794 F.3d at 359 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Plaintiffs collectively reside or purchased the subject vehicles in eleven states—California, Florida, Kentucky, Massachusetts, Michigan, Missouri, New Jersey, New York, Pennsylvania, Texas, and Virginia. Following the general principles of Article III, Plaintiffs have standing to assert violations of state laws in the eleven states where a named Plaintiff suffered an alleged injury in fact. While Plaintiffs maintain VW America is conflating Article III standing with the requirements of class certification, Plaintiffs are drawing a distinction without a difference because "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *see also Mielo*, 897 F.3d at 480 (explaining "the standing inquiry must be limited to a consideration of the class representatives themselves, after which [the court] may 'employ Rule 23 to ensure that classes are properly certified'"). The requirements for standing do not change because Plaintiffs fashion their claims in a purported nationwide class. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017) ("The requirements for standing do not change in the class action context.").

15

Indeed, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks omitted); *see also Long*, 903 F.3d at 325 ("[A]ny harm to unnamed class members cannot constitute injury in fact."). The Amended Complaint does not allege named Plaintiffs were personally injured under the laws of states where they never resided or purchased the subject vehicles. Named plaintiffs who incur injuries under the laws of their respective states cannot assert Article III standing to pursue separate, distinct state-law claims under the laws of other states where they suffered no alleged injury. *See In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, MDL No. 2895, 2022 U.S. Dist. LEXIS 43561, at *47 (D. Del. Mar. 11, 2022) (holding the named plaintiffs "cannot premise Article III standing for claims outside of the [fifteen] states on the injuries allegedly suffered by putative, unnamed class members in other states"). Because Plaintiffs lack standing to bring state-specific claims outside the eleven states they represent, the purported nationwide claims premised on laws of states unrepresented by Plaintiffs does not present a valid 'case or controversy' under Article III.[2] *See Ponzio v. Mercedes-*

---

[2] Plaintiffs rely on *In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, for the proposition that only named Plaintiffs need to satisfy standing even when asserting claims on behalf of a putative nationwide class. Civ. A. No. 19-2875, 2022 U.S. Dist. LEXIS 63536 (D.N.J. April 5, 2022). The *In re Valsartan* court wrestled with the Article III standing issue, criticized the holding in *Ponzio*, and relied on sparse reasoning in reaching its conclusion. The court reasoned that if the Third Circuit had concerns about a named plaintiff's standing to raise claims for putative out-of-state members, the Circuit would have addressed the issue *sua sponte* and the Third Circuit did not do so in either *Neale* or *Mielo*. However, *Mielo* concerned a putative class action arising under a violation of federal law which would not present the same issues regarding standing to assert various state-law claims. In *Neale*, the Third Circuit was considering an appeal of an order denying a motion for class certification and addressed whether unnamed, putative class members need to

*Benz USA, LLC,* 447 F. Supp. 3d 194, 223 (D.N.J. 2020) ("Plaintiffs lack standing to assert claims

on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered no alleged injury.");

*In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) ("[N]amed plaintiffs lack

standing to assert claims under the laws of the states in which they do not reside or in which they

suffered no injury."); *McGuire v. BMW of N. Am., LLC*, Civ. A. No. 13-7356, 2014 U.S. Dist.

LEXIS 77009, at *17 (D.N.J. June 6, 2014) ("Plaintiff here lacks standing to assert claims under

the laws of the states in which he does not reside, or in which he suffered no injury."); *Semeran v.*

*BlackBerry Corp.*, Civ. A. No. 15-750, 2016 U.S. Dist. LEXIS 87379, at *18–19 (D.N.J. July 6,

2016) (stating "[a] named plaintiff must be a part of the class which he seeks to represent" and

deciding standing issues at the pleadings stage "in light of the fact that [p]laintiff was not a member

of the Multi-State Class, and because such a class would require the court to apply the substantive

law from numerous other states"); *Cohen v. Subaru of Am., Inc.*, Civ. A. No. 20-08442, 2022 U.S.

Dist. LEXIS 42511, at *17–18 (D.N.J. Mar. 10, 2022) (dismissing plaintiffs' state specific claims

to the extent they are brought on behalf of putative class members outside of the states they

represent); *Robinson v. GM LLC*, Civ. A. No. 20-663, 2021 U.S. Dist. LEXIS 134320, at *58 (D.

Del. July 19, 2021) ("Plaintiffs lack standing to assert unjust enrichment claims under the common

law of states in which Plaintiffs did not suffer an alleged injury."). Accordingly, because no named

Plaintiff has established standing, Plaintiffs' nationwide claims are dismissed to the extent they

---

establish Article III standing. In neither *Mielo* nor *Neale* did the Third Circuit find named plaintiffs
can assert claims on behalf of putative class members which the named plaintiffs themselves do
not have standing to bring. In any event, this Court is bound by the Third Circuit's controlling
precedent that "[a] plaintiff must 'demonstrate standing for each claim he seeks to press.'" *Long*,
903 F.3d at 323 (quoting *Neale*, 794 F.3d at 359).

are premised on state-law claims brought on behalf of putative class members outside of the eleven states represented by named Plaintiffs.[3]

With respect to VW America's contention that Plaintiffs Concepción and Ferrara lack standing because they are not listed on their vehicles' purchase agreement, the argument is unavailing because Plaintiffs do not need to be a signatory to a purchasing agreement to sustain a cognizable injury-in-fact traceable to the allegedly defective seats. The Amended Complaint

---

[3] Several district courts within the Third Circuit have taken different views in evaluating Article III and class standing where named class representatives assert claims arising under the laws of states where they neither reside nor allege to have suffered any injury. *See Ponzio,* 447 F. Supp. 3d at 223 ("Plaintiffs lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered no alleged injury."); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d at 759 ("[N]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."); *In re Magnesium Oxide Antitrust Litig.*, Civ. A. No. 10-5943, 2011 U.S. Dist. LEXIS 121373, at *37–38 (D.N.J. Oct. 20, 2011) (noting that if a plaintiff did not have to demonstrate standing for each claim, "a plaintiff would be able to bring a class action complaint under the laws of nearly every state in the Union without having to allege concrete, particularized injuries relating to those states"); *compare, e.g., In re Generic Pharm. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 831 (E.D. Pa. 2019) (declining to dismiss because state law claims of named plaintiffs "largely parallel those of the putative class members"); *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 462 (M.D. Pa. 2019) ("Plaintiffs' capacity to state claims under the laws of other states on behalf of putative class members . . . is a matter to be decided under the rubric of Rule 23" and is not an issue of standing); *In re Liquid Aluminum Sulfate Antitrust Litig.*, Civ. A. No. 16-2687, 2017 U.S. Dist. LEXIS 115294, at *83–84 (D.N.J. July 20, 2017) (rejecting the defendants' argument that named plaintiffs lack standing to bring state law claims under the laws of a state in which they do not reside). In *Neale*, the Third Circuit held, "[U]nnamed, putative class members need not establish Article III standing. Instead, the 'case or controversy' requirement is satisfied so long as a class representative has standing." 794 F.3d at 362. Some courts have expanded the holding in *Neale* to permit named class representatives who would not traditionally have Article III standing to bring claims on behalf of unnamed, putative class members who may have standing. *In re Valsartan*, 2022 U.S. Dist. LEXIS 63536, at *52; *Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co.*, Civ. A. No. 20-6717, 2021 U.S. Dist. LEXIS 47791, at *19 (D.N.J. Mar. 15, 2021). Neither the Supreme Court nor the Third Circuit have made such a leap. The Court declines to do so as well.

asserts Plaintiff Concepción purchased a Class Vehicle for personal, family, and household use, Plaintiff Concepción is the primary driver of the Class Vehicle, and Plaintiff Concepción used personal funds to pay for the Class Vehicle. (ECF No. 26 ¶ 28); *see Cottrell*, 874 F.3d at 163 ("[W]here a plaintiff alleges financial harm, standing is often assumed without discussion." (quotation omitted)). The Amended Complaint further alleges Plaintiff Concepción was driving alone in the subject vehicle when the second-row seat spontaneously lurched forward and slammed into the back of the front passenger seat. (*Id.* ¶¶ 29–30.) This purportedly occurred on several occasions, and Plaintiff Concepción took the vehicle for servicing and reported the problem. (*Id.* ¶¶ 31–32.) For purposes of Article III, Plaintiff Concepción has established a requisite stake in the outcome to confer standing. *See Davis*, 554 U.S. at 734 ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed."). Similar allegations concerning Plaintiff Ferrara are also asserted in the Amended Complaint, including that Plaintiff Ferrara is the primary driver of the Class Vehicle, the vehicle was for personal, family, and household use, the Seat Defect manifested when she was driving by herself, and Plaintiff Ferrara took the vehicle in for servicing to inspect the second-row bench seat. (ECF No. 26 ¶¶ 47–49.) Plaintiff Ferrara alleges the value of her vehicle is diminished as the result of the purported defect and she "would not have purchased the Class Vehicle, or would have paid less for it, if Defendants did not conceal material information about the Seat Defect." (*Id.* ¶ 50); *see also Scattaglia v. Mercedes-Benz USA, LLC*, Civ. A. No. 21-12750, 2021 U.S. Dist. LEXIS 239889, at *15 (D.N.J. Dec. 15, 2021) ("Plaintiffs' allegations of diminished vehicle value and time spent taking the vehicle to the dealership for repairs are sufficient to demonstrate Article III standing."). Therefore, Plaintiff Ferrara's allegations are sufficient to confer Article III standing. *See Cottrell*, 874 F.3d at 162 (explaining the injury-in-fact requirement is "very generous" and

demands only "that the claimant allege some specific, identifiable trifle of injury" (quotation marks and alterations omitted)).

To the extent VW America argues Plaintiffs McDonald, Upshur, and Moutra lack standing because they do not claim to have experienced any malfunction or problem with the second-row seats in their vehicles, "alleged economic injury in the form of diminished resale value of their vehicles" can serve to satisfy Article III's injury-in-fact requirement. *Bang v. BMW of N. Am., LLC*, Civ. A. No. 15-6945, 2016 WL 7042071, at *4 (D.N.J. Dec. 1, 2016). Plaintiffs allege all Class Vehicles contain the second-row seat defect resulting in overpayment for the vehicles at the time of sale or lease and diminished value of the subject vehicles. (ECF No. 26 ¶ 20.) Therefore, the Amended Complaint has sufficiently asserted Plaintiffs Concepción, Ferrara, McDonald, Upshur, and Moutra have a cognizable injury-in-fact traceable to the Seat Defect to confer Article III standing.

Accordingly, Defendants' motions to dismiss the nationwide claims for lack of standing are **GRANTED** to the extent they are premised on state-law claims brought on behalf of putative class members outside of the eleven states represented by named Plaintiffs. Defendants' motion to dismiss Plaintiffs Concepción, Ferrara, McDonald, Upshur, and Moutra for lack of standing are **DENIED.**

### B.      VW Chattanooga's Motion to Dismiss for Lack of Personal Jurisdiction

VW Chattanooga challenges Plaintiffs' basis for personal jurisdiction, arguing that (Plaintiffs fail to allege VW Chattanooga conducted any purposeful activity in or directed at New

Jersey, much less any purposeful activity that relates to Plaintiffs' claims.[4] (ECF No. 38-1 at 5–6, 9.) Plaintiffs, on the other hand, argue VW Chattanooga purposefully targeted New Jersey by manufacturing and selling the Class Vehicles to its parent company, VW America, which markets, tests, and distributes the Class Vehicles from locations in New Jersey. (ECF No. 45 at 81.) Plaintiffs assert their claims are based directly on VW America's fraudulent testing, marketing, and sale of the Class Vehicles in New Jersey. (*Id*. at 82.) Plaintiffs contend it is entirely fair and just for the Court to exercise personal jurisdiction over VW Chattanooga because it manufactured the Class Vehicles for its parent company which is incorporated in New Jersey. (*Id*. at 83.)

Pursuant to Federal Rule of Civil Procedure 4(k), a federal district court may exercise personal jurisdiction over a defendant to the extent permitted by the law of the state in which it sits. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007); *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) ("[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state."). In New Jersey, "courts may exercise jurisdiction over a nonresident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 987

---

[4] VW Chattanooga states it has not conducted any purposeful activity in or directed at the State of New Jersey. (ECF No. 38-1 at 9.) VW Chattanooga argues fourteen non-resident Plaintiffs fail to establish any nexus between their claims against VW Chattanooga and the State of New Jersey and two other named Plaintiffs do not allege their claims arose from or relate to any intentional and deliberate act of VW Chattanooga in or directed at the State of New Jersey. (*Id*. at 11–14.) VW Chattanooga contends any exercise of specific personal jurisdiction over it in this action would not comport with traditional notions of fair play and substantial justice and would be unreasonable. (*Id*. at 18.)

A.2d 575, 589 (N.J. 2010), *rev'd on other grounds sub nom.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). "Accordingly, in determining whether personal jurisdiction exists, [the Court] ask[s] whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316.

Personal jurisdiction over a defendant may be established through general or specific jurisdiction. *See Goodyear*, 564 U.S. at 919 ("Opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction"). For purposes of determining personal jurisdiction over a corporation, the Court must determine "whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Daimler*, 571 U.S. at 139 (quoting *Goodyear*, 564 U.S. at 919).

Here, Plaintiffs have not established VW Chattanooga purposefully directed its activities at New Jersey, and therefore have failed to meet their burden of demonstrating facts sufficient to establish personal jurisdiction over VW Chattanooga. *See Fatouros*, 627 F. App'x at 86–87 (holding the plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction") (citation omitted). VW Chattanooga is a limited liability company organized under the laws of Tennessee with its principal place of business in Chattanooga, Tennessee. [5] (ECF No. 38-2 ¶¶ 2–3.) While VW Chattanooga manufactures the Class Vehicles and sells them to VW

---

[5] On a motion to dismiss for lack of personal jurisdiction, the Court may consider documents outside of the pleadings. *See Time Share Vacation Club*, 735 F.2d at 66 n.9 ("A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies.").

America, its parent company incorporated in New Jersey, VW Chattanooga assembles the Class Vehicles in Tennessee, sells them in Tennessee, transfers title in Tennessee, delivers them in Tennessee, and VW America takes possession of the Class Vehicles in Tennessee. (ECF No. 26 ¶ 100; ECF No. 38-2 ¶ 6.) Although VW Chattanooga transacted with VW America, all the transactions occurred in Tennessee and VW Chattanooga's contacts with VW America in Tennessee are insufficient to subject it to personal jurisdiction in New Jersey. *See Walden v. Fiore*, 571 U.S. 277, 285–86 (2014) (quoting *Burger King*, 471 U.S. at 478) ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.").

Moreover, VW Chattanooga does not maintain any places of business or conduct any business operations in New Jersey (ECF No. 38-2 ¶¶ 10, 12), has never been registered or licensed to do business in New Jersey or has a registered agent in New Jersey (*id*. ¶ 19), does not sell, transfer, lease or deliver any vehicles in or into New Jersey (*id*. ¶ 9), does not have any bank accounts, employees, real or personal property, or dealerships in New Jersey (*id*. ¶¶ 11, 14, 15, 17), and does not pay any tax to the State of New Jersey or to any locality in New Jersey (*id*. ¶ 18). VW Chattanooga did not design the Class Vehicles for the New Jersey market (*id*. ¶ 8), did not advertise in New Jersey (*id*. ¶¶ 7, 13), and did not market the Class Vehicles in New Jersey (*id*.). The Amended Complaint does not allege VW Chattanooga established channels for providing regular advice to customers in New Jersey. Indeed, VW Chattanooga does not market, advertise, distribute, warrant, service or repair the Class Vehicles. (*Id*. ¶ 7.)

To the extent Plaintiffs argue VW Chattanooga sold Class Vehicles to VW America knowing that some of those vehicles would be tested, marketed, distributed, and sold in New Jersey (ECF No. 45 at 82), the argument fails because the "'substantial connection[]' . . . between the

defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (quoting *Burger King*, 471 U.S. at 475–76). Absent some action by VW Chattanooga directed at the forum state, VW Chattanooga has not "purposefully avail[ed] itself of the privilege of conducting activities within [New Jersey]," sufficient to invoke the benefits and protections of its laws. *Shuker*, 885 F.3d at 780 (quoting *Asahi*, 480 U.S. at 109).

Further, while not explicitly stated, Plaintiffs' specific personal jurisdiction argument relies on the "stream-of-commerce" theory. The "stream-of-commerce" theory contends "that specific personal jurisdiction exists over a non-resident defendant when that defendant 'has injected its goods into the forum state indirectly via the so-called stream of commerce,' rendering it foreseeable that one of the defendant's goods could cause injury in the forum state." *Id.* (quoting *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd*., 566 F.3d 94, 104–05 (3d Cir. 2009)); *see also Levy v. Jaguar Land Rover N. Am., LLC*, Civ. A. No. 19-13497, 2020 U.S. Dist. LEXIS 18711, at *18 (D.N.J. Feb. 4, 2020) ("Personal jurisdiction based on stream of commerce is an issue of specific, not general, jurisdiction."). The Third Circuit and a plurality of the United States Supreme Court Justices rejected this stream of commerce theory and instead require "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Asahi*, 480 U.S. at 109); *see also Hannah v. Johnson & Johnson Inc*., Civ. A. No. 18-1422, 2020 U.S. Dist. LEXIS 113284, at *109 (D.N.J. June 29, 2020) (quoting *Asahi*, 480 U.S. at 117) (Brennan, J., concurring) (noting the Third Circuit and the United States Supreme Court have expressly rejected an

24

expansive stream-of-commerce theory in which specific personal jurisdiction may be established if the defendant was "aware that the final product [was] being marketed in the forum").[6]

Two cases dealing with a similar jurisdictional issue, *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429 (D.N.J. 2021) and *Opheim v. Volkswagen Aktiengesellschaft*, Civ. No. 20-02483, 2021 U.S. Dist. LEXIS 118735 (D.N.J. June 25, 2021), are factually distinguishable to this case . In *Rickman*, consumers of certain BMW vehicles brought a putative class action asserting state-law consumer protection and fraud claims arising from alleged misrepresentations regarding vehicle emissions. 538 F. Supp. 3d at 432. Among the defendants were Germany-based manufacturer BMW AG and its New Jersey-based American distributor BMW NA. *Id*. BMW AG did not have a physical or operational United States presence and BMW NA—an indirect subsidiary of BMW AG with a principal place of business in New Jersey—marketed, distributed, sold, and warranted new BMW vehicles in the United States. *Id*. The *Rickman* court considered

---

[6] In *Asahi*, a plurality of Justices led by Justice O'Connor described the "some act" phrase quoted in *Shuker* to mean "[a]dditional conduct" by the defendant "purposefully directed toward the forum State" beyond merely placing a product into the stream of commerce. 480 U.S. at 112. Such additional conduct "may indicate an intent or purpose to serve the market in the forum State," and examples of such additional conduct include "[1] designing the product for the market in the forum State, [2] advertising in the forum State, [3] establishing channels for providing regular advice to customers in the forum State, or [4] marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* In declining to exert personal jurisdiction over the petitioner in *Asahi*, Justice O'Connor noted the petitioner did not do business in the forum state, did not have offices, agents, employees, or property in the forum state, did not advertise or solicit business in the forum state, and "did not create, control, or employ the distribution system that brought" its product to the forum state. *Id*. Additionally, there was no evidence the petitioner "designed its product in anticipation of sales" in the forum state. *Id*. at 113. With respect to VW Chattanooga individually, Plaintiffs do not allege any of these considerations. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)) ("Each defendant's contacts with the forum State must be assessed individually.").

"whether the parent-subsidiary or manufacturer-distributor relationship between BMW AG and BMW NA constitutes purposeful availment by BMW AG of the opportunity to do business in New Jersey." *Id*. at 436. The court accepted the plaintiffs' purposeful availment theory that BMW NA served as BMW AG's gateway to the United States, particularly because BMW NA is the entity through which BMW AG designated to serve the American market. *Id*. at 437–38. Further, BMW AG did not provide sufficient evidence to demonstrate the extent of its relationship with BMW NA, which was shown in part by its failure to "even admit[] that it supplies cars to BMW NA." *Id*. Consequently, the court held BMW AG purposefully availed itself of the privilege of doing business in New Jersey. *Id*.

*Rickman* is distinguishable from this case in at least three ways. First, BMW AG failed to provide sufficient evidence regarding the extent of its relationship with BMW NA. The court found it "very likely" BMW AG supplied cars to BMW NA and concluded the relationship "must have entailed contacts with BMW NA *in New Jersey*." *Id*. at 438 (emphasis added). VW Chattanooga, on the other hand, sufficiently established the sale of the Class Vehicles takes place in Tennessee and VW America takes possession of the vehicles in Tennessee. (ECF No. 38-2 ¶ 6.) Unlike BMW AG, VW Chattanooga provides ample support negating any contact with VW America in New Jersey. (*See, e.g.*, *id.* ¶ 12.) Second, the manufacturer in *Rickman*—BMW AG—was a foreign company with no physical or operational United States presence. 538 F. Supp. 3d at 433. The manufacturer here—VW Chattanooga—is based in Tennessee and sells and delivers its vehicles to third parties, including VW America, in Tennessee. (ECF No. 38-2 ¶¶ 2, 3, 6.) Therefore, the consideration in the *Rickman* court's jurisdictional analysis of whether New Jersey-based BMW NA served as BMW AG's "gateway to the United States" is inapplicable here. 538 F. Supp. 3d at 437. Third, the parent-subsidiary, or principal-agent, relationship is reversed. In *Rickman*, the court

26

discussed the agency or alter ego approach to personal jurisdiction. *Id.* at 437. In that case, the subsidiary operated in the forum state where the concern was an out-of-state parent directing or exerting control. *Id.* at 433. Here, the parent, VW America, resides in the forum state and VW Chattanooga is operating as an out-of-state subsidiary. *See Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, Civ. A. No. 03-0613, 2004 U.S. Dist. LEXIS 780, at *14 (S.D.N.Y. Jan. 22, 2004) ("The importance of control by the principal is paramount. There is no agency relationship where the alleged principal has no right of control over the alleged agent."). To the extent Plaintiffs rely on the agency or alter ego approach because VW America "certainly direct[ed] and control[ed] decision-making at" VW Chattanooga (ECF No. 45 at 85), the principal-agent relationship formed would not impute contacts towards New Jersey for the purposes of personal jurisdiction over VW Chattanooga.

In *Opheim*, consumers brought a putative class action after purchasing certain Volkswagen or Audi vehicles. 2021 U.S. Dist. LEXIS 118735, at *2. Two of the defendants were VW America and Germany-based Audi manufacturer, Audi AG. *Id*. at *2–5. Audi AG and VW America were parties to an importer agreement that obligated Audi AG to

> (1) consult with VW America to develop a 'sales network' in the U.S.; (2) consult with VW America about agreements with dealerships; (3) work with VW America 'to plan and effectively utilize [Audi AG's] production capacity[]'; (4) deliver products to VW America based on specific purchase orders; (5) establish guidelines for VW America's marketing and public relations efforts; and (6) receive reports from VW America regarding business in the American region.

*Id*., at *5–6 (citations omitted). In addressing whether the plaintiffs established Audi AG purposefully availed itself of the privilege of conducting activities within New Jersey, the *Opheim* court found the obligations in the importer agreement made it plausible that discovery would reveal facts showing Audi AG deliberately targeted New Jersey consumers. *Id*. at *8–9. The potential for

discovering such facts led the court to deny Audi AG's motion to dismiss for lack of personal jurisdiction. *Id*. at *11.

*Opheim* is factually distinguishable for several reasons. First, the facts supporting the *Opheim* court's allowance of jurisdictional discovery are absent here. *Id*. at *9. Plaintiffs do not allege facts comparable to the obligations in the Audi AG-VW America importer agreements. Perhaps most importantly, Audi AG was obligated to "deliver products *to VW America* based on specific purchase orders." *Id.*, at *5–6 (emphasis added). By contrast, in this case, VW America took possession of the Class Vehicles in Tennessee, severing the connection to New Jersey as the forum state. Second, while the *Opheim* court found Audi AG had an ongoing, substantial relationship with VW America as its "gateway into the American market," no such finding is present in this case. *Id.*, at *13. As explained regarding *Rickman*, VW America is not VW Chattanooga's "gateway" into the United States. Therefore, Plaintiffs fail to allege VW Chattanooga has purposeful contacts with New Jersey to establish personal jurisdiction.[7]

With respect to Plaintiffs' request for jurisdictional discovery, a court will sustain a plaintiff's right to conduct jurisdictional discovery "[i]f a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Here, for the reasons explained above,

---

[7] Because the Court has found Plaintiffs have not carried their burden of showing minimum contacts between VW Chattanooga and New Jersey, the Court need not address the two additional requirements of the specific personal jurisdiction analysis. *Sandy Lane Hotel*, 496 F.3d at 317; *Adelman v. Peter*, Civ. A. No. 06-6007, 2007 U.S. Dist. LEXIS 94011, at *16–17 (D.N.J. Dec. 21, 2007) (ending inquiry after finding plaintiffs did not demonstrate minimum contacts between defendants and the forum state, New Jersey).

Plaintiffs fail to present factual allegations to suggest with reasonable particularity the possible existence of the requisite contacts between VW Chattanooga and the forum state. For example, in *Opheim*, the court granted jurisdictional discovery partly because the defendants maintained a "regional" office in New Jersey and shipped products to specific United States markets. *See Opheim*, 2021 U.S. Dist. LEXIS 118735, at *9–11. Similar facts are absent in this case.[8] Accordingly, VW Chattanooga's motion to dismiss for lack of personal jurisdiction is **GRANTED**.[9]

### C.     VW America's Motion to Dismiss for Failure to State a Claim

VW America challenges Plaintiffs' express and implied warranty claims, MMWA claims, statutory and common law fraud claims, negligent misrepresentation claims, and unjust enrichment

---

[8] It is also apparent from the Amended Complaint that "nationally directed efforts are all that [Plaintiffs] alleged here, for their factual allegations state only that [Defendants] sold [their] products through [VW America] in [New Jersey] as part of [their] efforts to sell products in the United States generally—not in [New Jersey] specifically." *Shuker*, 885 F.3d at 780. For example, the Amended Complaint alleges "the Supervisory Board of VWAG decided to locate the production of the VW Atlas, *developed especially for the US market*, at the Chattanooga plant" (ECF No. 26 ¶ 100) (emphasis added), and "[a]t all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the VW brand name *throughout the United States*" (*Id.* ¶ 101) (emphasis added). Therefore, "[t]o the extent [Plaintiffs] seek to establish specific personal jurisdiction over [VW Chattanooga] without reference to the stream-of-commerce theory, their allegations do not meet our Circuit's requirement of purposeful availment: 'what is necessary is a deliberate targeting of the forum,' . . . so efforts 'to exploit a national market' that 'necessarily included [New Jersey] are insufficient . . . .'" *Shuker*, 885 F.3d at 780 (quoting *O'Conner*, 496 F.3d at 317; *D'Jamoos*, 566 F.3d at 104).

[9] VW Chattanooga raises several other merit-based arguments that purportedly warrant dismissal of Plaintiffs' claims. Because the Court finds it does not have jurisdiction over VW Chattanooga, the Court does not need to address VW Chattanooga's merit-based arguments.

claims for failure to state a claim.[10] (ECF No. 32-1 at 12–59, 65–68.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) The Court addresses each in turn.

This litigation involves sixteen named Plaintiffs asserting claims under the laws of eleven different states—California, Florida, Kentucky, Massachusetts, Michigan, Missouri, New Jersey, New York, Pennsylvania, Texas, and Virginia. Plaintiffs indicate which state law is applicable for each cause of action. VW America does not dispute Plaintiff's choice of governing law. Therefore, the Court will apply the law under which each named Plaintiff brings his or her claim. *See UBI Telecom Inc. v. KDDI Am., Inc.*, Civ. A. No. 13-1643, 2014 U.S. Dist. LEXIS 88842, at *25 (D.N.J. June 30, 2014) ("When the parties agree upon which state's law applies . . . the Court need not conduct [a] choice-of-law inquiry."); *Cole v. NIBCO, Inc.*, Civ. A. No. 13-07871, 2015 U.S. Dist. LEXIS 65960, at *14 (D.N.J. May 20, 2015) ("[T]he Court will follow the lead of the parties and will not engage in a choice of law analysis.").

### 1.   Breach of Express Warranty Claims

VW America argues Plaintiffs' breach of express warranty claims fail because the New Vehicle Limited Warranties ("NVLW") applicable to the Class Vehicles covers only repairs

---

[10] VW America asserts the Amended Complaint should be dismissed for impermissible group pleadings. (ECF No. 32-1 at 5–6.) Given that VW Chattanooga is dismissed for lack of personal jurisdiction, there are only two remaining defendants in this litigation. The Amended Complaint sets forth the role of each defendant and distinguishes each defendant by their respective function. (ECF No. 26 ¶¶ 97–101.) Under the circumstances of this case, the Court does not find the use of the term "Defendants" creates any confusion or leaves any doubt as to the nature of the allegations. Accordingly, Plaintiffs' Amended Complaint sufficiently puts VW America and VWAG on notice and dismissal on this basis is not warranted.

arising from defects in material and workmanship, not defects in design. (ECF No. 32-1 at 12–13.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs contend the Seat Defect is covered under the NVLW because the defect is in materials and workmanship, not a design defect. (ECF No. 45 at 16–18.) Plaintiffs' argument is unavailing. The Amended Complaint alleges:

> Under the Warranties provided to Plaintiffs and members of the Class, [VW America and VWAG] promised to repair or replace defective Class Vehicle components arising from defects in materials and/or workmanship at no cost to owners or lessees of the Class Vehicles. ***However, [VW America and VWAG] have excluded coverage for the Seat Defect under the Warranties because the Seat Defect is inherently one of design.***

(ECF No. 26 ¶ 14 (emphasis added).)[11] Plaintiffs concede the seat defect is one of design (*id.* ¶ 196) and acknowledge the applicable warranties cover only defects in materials and workmanship and excludes coverage for defects in design (*id.* ¶ 199). The Court need not look beyond the Amended Complaint to find, as a matter of law, that Plaintiffs' breach of express warranty claims fail because the alleged design defect is not covered by the applicable NVLW. *See Cooper v.*

---

[11] The Amended Complaint identifies the defect at issue as one of design, stating: "The design of the second-row seat assemblies in the Class Vehicles . . . is defective because the seats do not latch properly to their base ('Seat Defect'). The failure to latch properly is an inherent safety defect." (ECF No. 26 ¶ 2.) While Plaintiffs contend they plausibly assert a materials and workmanship defect in addition to a design defect, the allegations set forth in the Amended Complaint itself do not characterize the defect as one of materials and workmanship. *See Amato v. Subaru of Am., Inc.*, Civ. A. No. 18-16118, 2019 U.S. Dist. LEXIS 209659, at *16 (D.N.J. Dec. 5, 2019) (dismissing the breach of express warranty claim because "even taking Plaintiffs' allegations as true, their Complaint fails to sufficiently plead facts supporting a manufacturing defect or defect in 'materials or workmanship'"); *Sauer v. Subaru of Am., Inc.*, Civ. A. No. 18-14933, 2020 U.S. Dist. LEXIS 55592, at *19 (D.N.J. Mar. 31, 2020) (finding "even accepting [p]laintiff's allegations as true she has failed to allege facts that establish her Class Vehicle was covered under the express warranty").

*Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 (3d Cir. 2010) (affirming dismissal of express warranty claim on motion to dismiss where the alleged design defect was not covered by the warranty).

To the extent Plaintiffs argue the NVLW is procedurally and substantively unconscionable because defects in design are not covered under the warranties (ECF No. 45 at 22–25), Plaintiffs' reliance on the doctrine of unconscionability is misplaced. The mere fact that the NVLW does not cover a certain type of defect does not render it unconscionable.

Under the Uniform Commercial Code:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

U.C.C. § 2-302. Plaintiffs are not seeking to invoke the doctrine of unconscionability to avoid limitations in the warranties at issue. Rather, Plaintiffs seek to use the doctrine of unconscionability to add defects in design as a new area of coverage to the existing warranties. None of the cases Plaintiffs cite lend support to adding new areas of coverage rather than avoiding or limiting an unconscionable clause to a warranty.[12] Therefore, Plaintiffs' use of the doctrine of

---

[12] *See In re Volkswagen Timing Chain Prod. Liab. Litig.*, Civ. A. No. 16-2765, 2017 U.S. Dist. LEXIS 70299, at *35 (D.N.J. May 8, 2017) (finding the plaintiffs adequately pleaded unconscionability to avoid the warranties' time and mileage limitation); *Skeen v. BMW of N. Am., Ltd. Liab. Co.*, Civ. A. No. 13-531, 2014 U.S. Dist. LEXIS 9256, at *42 (D.N.J. Jan. 24, 2014) (finding the plaintiffs adequately pled unconscionability to avoid the warranties' time and mileage limitation); *Kearney v. BMW, A.G.*, Civ. A. No. 17-13544, 2018 U.S. Dist. LEXIS 147746, at *47 (D.N.J. Aug. 29, 2018) (finding same to avoid the warranties' time limitation); *Bieda v. CNH Indus. Am. LLC*, 518 F. Supp. 3d 863, 868 (W.D. Pa. 2021) (addressing unconscionability of a

unconscionability to assert a breach of express warranty claim by expanding the types of defects covered under the warranties is unpersuasive and unsupported. *See In re Caterpillar, Inc*., MDL No. 2540, 2015 U.S. Dist. LEXIS 98784, at *79 (D.N.J. July 29, 2015) ("[T]he Court finds Plaintiffs' allegations of unconscionability insufficient to expand the scope or alter the terms of the Engine Warranty.").

Accordingly, VW America and VWAG's motions to dismiss Plaintiffs' breach of express warranty claims are **GRANTED**.[13]

### 2. Breach of Implied Warranty Claims

#### i. *Michigan, Texas, and New Jersey*

VW America argues the breach of implied warranty claims of Plaintiffs McDonald, Moutra, and Upshur fail under the laws of Michigan, Texas, and New Jersey, respectively, because they do not allege the claimed defect manifested in their vehicles. (ECF No. 32-1 at 21–22.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same

---

disclaimer of implied warranty, not express warranty); *Defrank v. Samsung Elecs. Am., Inc.*, Civ. A. No. 19-21401, 2020 U.S. Dist. LEXIS 198893, at *52 (D.N.J. Oct. 26, 2020) (finding the plaintiffs adequately pled unconscionability to avoid the warranties' time limitation); *Gelis v. BMW*, Civ. A. No. 17-07386, 2018 U.S. Dist. LEXIS 187277, at *20 (D.N.J. Oct. 30, 2018) (finding the plaintiffs adequately pled unconscionability to avoid the warranties' time and mileage limitation).

[13] VW America also contends the express warranty claims of Plaintiffs Upshur, Moutra, McDonald, Gillespie, Henderson, Hooks, and Aprile fail because they never experienced any problems with their vehicle or presented their vehicles for repair at a dealer during the warranty period. (ECF No. 32-1 at 14.) Because Plaintiffs acknowledge the Seat Defect is one of design and the applicable NVLW covers only repairs arising from defects in material or workmanship, Plaintiffs' breach of express warranty claims fail, and the Court need not address VW America's other arguments.

claims. (ECF No. 52-1 at 1.) Plaintiffs McDonald, Moutra, and Upshur argue they properly pleaded their implied warranty claims because the seats in their vehicles are inherently defective and manifestation began at the point of sale. (ECF No. 45 at 27.)

Under New Jersey law, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.J. Stat. Ann. § 12A:2-314(1). To be merchantable, the goods must be "fit for the ordinary purposes for which such goods are used." N.J. Stat. Ann. § 12A:2-314(2)(c); *see Henningsen v. Bloomfield Motors, Inc.*, 161 A.2d 69, 76 (1960) (stating a warranty "simply means that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold"). "For an automobile, the implied warranty of merchantability is breached only when a defect 'renders the vehicle unfit for its ordinary purpose of providing transportation for its owner.'" *Sheris v. Nissan N. Am., Inc.*, Civ. A. No. 07-2516, 2008 U.S. Dist. LEXIS 43664, at *16 (D.N.J. June 2, 2008) (quoting *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, Civ. A. Nos. 96-3125, 96-1814, 96-3198, 1997 U.S. Dist. LEXIS 24064, at *78 (D.N.J. Sept. 30, 1997)).

Under Texas law, "[a] breach of the implied warranty of merchantability can be demonstrated by showing that the product is unreasonably dangerous in ordinary use or that it functioned improperly under ordinary use." *Click v. GM LLC*, Civ. A. No. 18-455, 2020 U.S. Dist. LEXIS 104526, at *34–35 (S.D. Tex. Mar. 27, 2020) (citing *Foster v. Ford Motor Co.*, 621 F.2d 715, 720 (5th Cir. 1980); *Gilbert v. Gen. Motors Corp.*, Civ. A. No. 05-243, 2006 Tex. App. LEXIS 5363, at *23 (Tex. App.—Fort Worth June 22, 2006, no pet.)). "To cause redressable injuries in the breach of the implied warranty of merchantability context, a 'defect' must either have manifested during the product's normal use or such manifestation must be inevitable when the

defective feature of the product is used . . . ." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 855 (Tex. App.—Fort Worth 2005, no pet.).

Under Michigan law, "[t]o establish breach of implied warranty, the plaintiff must show that a defect in the product, attributable to the manufacturer, caused [the harm]." *Severstal N. Am., Inc. v. N. Am. Refractories, Co.*, Civ. A. No. 06-10202, 2009 U.S. Dist. LEXIS 48251, at *41 (E.D. Mich. June 9, 2009) (quoting *Hartford Fire Ins. Co. v. Walter Kidde & Co. Inc.*, 328 N.W.2d 29, 33 (Mich. Ct. App. 1982)). "In a claim of breach of implied warranty, the product's lack of fitness for its intended use amounts to an actionable defect." *Kenkel v. Stanley Works*, 665 N.W.2d 490, 497 (Mich. Ct. App. 2003). "[T]o be fit for its ordinary purpose, a standard road vehicle must be able to provide safe and reliable transportation and be substantially free of defects." *Matanky v. GM LLC*, 370 F. Supp. 3d 772, 785 (E.D. Mich. 2019); *see also Francis v. GM, LLC*, 504 F. Supp. 3d 659, 675 (E.D. Mich. 2020) (holding for a vehicle to be merchantable it must not only provide transportation, "but also do so in a reasonably safe and reliable manner").

Here, Plaintiffs allege the Seat Defect exists in all Class Vehicles and the defective second-row seat assembly presents a risk of injury to drivers and passengers. While the seats in their vehicles did not lurch forward during deceleration, Plaintiffs McDonald, Moutra, and Upshur allege they avoided driving their vehicles because of the Seat Defect and would not have purchased their vehicles if material information concerning the Seat Defect was not concealed. Therefore, because Plaintiffs avoided using their vehicles or pleaded they would not have purchased their vehicles because of the Seat Defect, the vehicles are "unfit for [their] ordinary purpose of providing transportation for its owner" under New Jersey law, *In re Ford Motor Co. Ignition Switch*, 1997 U.S. Dist. LEXIS 24064, at *78, are "unreasonably dangerous in ordinary use" under Texas law,

*Foster*, 621 F.2d at 720, and unable to "provide safe and reliable transportation and be substantially free of defects" under Michigan law, *Matanky*, 370 F. Supp. 3d at 785.

Moreover, because Plaintiffs allege the Seat Defect is present in all Class Vehicles, manifestation of the defect is inevitable, and therefore Plaintiffs suffered a redressable injury to claim a breach of the implied warranty. *See Everett*, 178 S.W.3d at 855 (finding inevitability for the alleged defect to manifest is sufficient to raise a breach of implied warranty claim under Texas law); *Tershakovec v. Ford Motor Co.*, Civ. A. No. 17-21087, 2018 U.S. Dist. LEXIS 116130, at *26 (S.D. Fla. July 12, 2018) (denying dismissal of the implied warranty claims under Texas law where "the only Texas Plaintiffs who did not experience [the defect]—would inevitably have encountered [the defect] had they attempted to use their vehicles on a track as intended to do upon purchase"); *Click*, 2020 U.S. Dist. LEXIS 104526, at *35 (denying dismissal because "[p]laintiffs plausibly allege the inevitably of the [defect] for 12(b)(6) purposes").

Further, as Michigan has adopted the Uniform Commercial Code, "a claim for the breach of an implied warranty accrues when the breach occurs and [] there is no requirement that [p]laintiffs demonstrate any injury to their person or property as a result of the breach, but only that they purchased an unmerchantable product." *In re GM LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 426 (S.D.N.Y. 2017) (citation and internal quotation marks omitted). Therefore, Michigan law provides recovery for "benefit-of-the-bargain damages, which, in the case of implied warranty as for fraud, is compelling evidence that manifestation is not required absent contrary authority." *In re GM LLC Ignition Switch Litig.*, 339 F. Supp. 3d 262, 302 (S.D.N.Y. 2018); *Neibarger v. Universal Coops., Inc.*, 486 N.W.2d 612, 615 (Mich. 1992) ("[U]nder the [UCC], the purchaser of defective goods may recover for the benefit of the bargain.").

New Jersey, which has also adopted the UCC, recognizes breach of implied warranty claims where there is a claimed defect that exists without manifestation of an alleged injury. *See In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, Civ. A. No. 03-4558, 2008 U.S. Dist. LEXIS 73690, at *47–48 (D.N.J. Sep. 3, 2008) (holding "New Jersey Plaintiffs' warranty claims do not require dismissal for failure to plead actual injury as a matter of law"). Plaintiffs allege they purchased the Class Vehicles that contained a defective second-row seat assembly. Plaintiffs further allege the ordinary use of the Class Vehicles to reliably and safely transport them was precluded by the consequences of an inherent defect in their vehicles. The allegations in the Amended Complaint, if taken as true, support that a defect exists notwithstanding it has yet to manifest in some Class Vehicles. Accordingly, VW America and VWAG's motions to dismiss the breach of implied warranty claims under Michigan, Texas, and New Jersey law are **DENIED**.[14]

### ii.   *Massachusetts*

VW America argues the breach of implied warranty claims of Plaintiffs Ferrara and Daly fail under Massachusetts law because they do not allege a legally required standard their vehicles

---

[14] VW America argues the breach of implied warranty claims should be dismissed because Plaintiffs fail to precisely identify the alleged design defect in the second-row seat assembly. (ECF No. 32-1 at 19–21.) However, VW America fails to indicate which state law they are applying and to which Plaintiff they are directing this argument. VW America cites *McQueen v. BMW of North America* for the proposition that the implied warranty claims fail because "[t]here [is] no identification as to what precisely the defect is, other than a conclusory allegation that the transmission system is defective." Civ. A. No. 12-6674, 2013 U.S. Dist. LEXIS 123232, at *19 (D.N.J. Aug. 29, 2013). This argument is misplaced because the *McQueen* court addressed plaintiffs' consumer fraud claims where the court applied the heightened Rule 9(b) standard, not an analysis of a breach of implied warranty claim. Without more, the issue is inadequately briefed and does not raise a sufficient basis to warrant categorical dismissal of all sixteen named Plaintiffs' breach of implied warranty claims.

failed to meet. (ECF No. 32-1 at 23.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs Ferrara and Daly contend they adequately allege a safety-related injury or property damage to state a breach of implied warranty claim under Massachusetts law. (ECF No. 45 at 28.)

"Under Massachusetts law, 'it is clear that a cause of action for breach of a sales contract, express or implied, accrues when delivery is made, regardless of the buyer's knowledge of the breach.'" *United Cal. Bank v. E. Mountain Sports, Inc.*, 546 F. Supp. 945, 964 (D. Mass. 1982) (quoting *Wolverine Ins. Co. v. Tower Iron Works*, 370 F.2d 700, 702 (1st Cir. 1966)). Massachusetts "recognizes liability for breach of an implied warranty of merchantability under the Uniform Commercial Code as the 'functional equivalent of strict liability in other jurisdictions.'" *Anunciacao v. Mitsubishi Heavy Indus., Ltd.*, Civ. A. No. 08-11353, 2009 U.S. Dist. LEXIS 148927, at *4 (D. Mass. Oct. 14, 2009), *rec. dec. adopted*, Civ. A. No. 08-11353, 2009 U.S. Dist. LEXIS 148926 (D. Mass. Dec. 11, 2009) (quoting *Haglund v. Philip Morris Inc.*, 847 N.E.2d 315, 321–22 (Mass. 2006)). "A seller breaches its warranty obligation when a product that is 'defective and unreasonably dangerous' for the '[o]rdinary purposes' for which it is 'fit' causes injury." *Haglund*, 847 N.E.2d at 322. "The plaintiff may base a claim for breach of an implied warranty on a manufacturing, design or warning defect that makes the product unreasonably dangerous." *Provanzano v. MTD Prods. Co.*, 215 F. Supp. 3d 134, 137 (D. Mass. 2016). To bring a breach of implied warranty claim premised on a design defect, a plaintiff must allege:

> (1) the defendant manufactured or sold the product that eventually injured the plaintiff; (2) the product had a defect or otherwise unreasonably dangerous condition such that it was unsuited for the ordinary use for which it was sold; (3) the plaintiff used the product as intended by the defendant or in a manner that was at least

foreseeable to the defendant; and (4) the defect or unreasonably
dangerous condition was a legal cause of the plaintiff's injury.

*Taupier v. Davol, Inc.*, 490 F. Supp. 3d 430, 439–40 (D. Mass. 2020) (quoting *DaSilva v. Toyota Motor Corp.*, 474 F. Supp. 3d 448 (D. Mass. July 14, 2020)); *Fireman's Fund Ins. Co. v. Bradford-White Corp.*, Civ. A. No. 12-10509, 2014 U.S. Dist. LEXIS 51833, at *7 (D. Mass. Apr. 15, 2014). In order to satisfy the injury requirement, where "there is no allegation that the plaintiffs—or indeed anyone else—have suffered personal injury or property damage, the complaint must identify a legally required standard that the vehicles were at least implicitly represented as meeting, but allegedly did not." *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 888 (Mass. 2008).

Here, Plaintiffs Ferrara and Daly are not required to identify a legally required standard that VW America and VWAG allegedly failed to meet because they pleaded their seats malfunctioned. *See Costa v. FCA US LLC,* 542 F. Supp. 3d 83, 100 (D. Mass. 2021) (finding the breach of implied warranty claim was adequately pled under Massachusetts law where the plaintiff alleged the product actually malfunctioned). The Amended Complaint alleges the seat holding Plaintiff Ferrara's son lurched forward, causing him to suffer cuts and bruises on his face. (ECF No. 26 at 48.) The Amended Complaint asserts the seat in Plaintiff Daly's vehicle lurched forward as she was driving on three different occasions, where on at least one occasion the seat was holding Plaintiff Daly's daughter when it malfunctioned. (*Id.* at 51–55.) Because Plaintiffs Ferrara and Daly allege they personally experienced the recurrent safety-related malfunctions and suffered damage to their vehicle as a result of the Seat Defect, Plaintiffs Ferrara and Daly pleaded more than just a speculative injury to maintain their breach of implied warranty claims under Massachusetts law. *See Costa*, 542 F. Supp. 3d at 100 (finding because the plaintiff "alleges that his car has already been damaged and points out a very specific defect," he did not need to identify

a legally required standard to maintain a breach of implied warranty claim); *Costa v. Nissan N. Am., Inc.*, Civ. A. No. 18-11523, 2019 U.S. Dist. LEXIS 8923, at *5 (D. Mass. Jan. 18, 2019) (denying motion to dismiss because plaintiff "has not simply identified a theoretical injury which she speculates could arise due to an unspecified 'defect,'" but rather had "allege[d] that she personally experienced recurrent safety-related performance problems, actual property damage, and real economic harm"). Accordingly, VW America and VWAG's motions to dismiss the breach of implied warranty claim under Massachusetts law are **DENIED.**[15]

### iii.    *Florida, New York, and Kentucky*

VW America argues the breach of implied warranty claims of Plaintiffs Aprile, Gillespie, and Masone under Florida law, Plaintiff Curovic under New York law, and Plaintiff Henderson under Kentucky law all fail for lack of privity. (ECF No. 32-1 at 23–26.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs, by contrast, argue they adequately pled an exception to the privity requirement because they purchased their vehicles from an authorized dealership acting as an agent of VW America

---

[15] VW America raises the same argument in connection with Plaintiffs' statutory fraud claims under Massachusetts law. VW America contends Plaintiffs Ferrara and Daly's fraud claims fail because they do not plead a legally required standard that their vehicles did not meet. (ECF No. 32-1 at 54.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Because the Court already considered and rejected this argument in the breach of implied warranty context and determined Plaintiffs have adequately pleaded a separate basis for maintaining their claims—mainly that the defect actually manifested and the seats in their vehicle malfunctioned—the Court finds the same reasoning applies to Plaintiffs' statutory fraud claims to establish a cognizable injury. Accordingly, VW America and VWAG's motions to dismiss the statutory fraud claims under Massachusetts law are **DENIED**.

and are the intended third-party beneficiaries of the transactions between VW America and its dealers. (ECF No. 45 at 29–31.)

Under Florida law, "the plaintiff must be in privity of contract to recover under theories of breach of express or implied warranties." *Cubbage v. Novartis Pharms. Corp.*, Civ. A. No. 16-129, 2016 U.S. Dist. LEXIS 86753, at *20 (M.D. Fla. July 5, 2016) (citations omitted). However, Florida law recognizes certain exceptions to the privity requirement. *See Weiss v. GM LLC*, 418 F. Supp. 3d 1173, 1182 (S.D. Fla. 2019) (recognizing an exception to the privity requirement under third-party beneficiary law). "[P]rivity of contract between the manufacturer and the ultimate consumer can be established when a plaintiff 'purchased a vehicle from an authorized dealer who was an agent of [the manufacturer], [the plaintiff] was the intended consumer of the vehicle, the dealership was not the intended consumer, and the warranty was intended to benefit the consumer, not the dealership." *George v. Jaguar Land Rover N. Am. LLC*, Civ. A. No. 20-17561, 2021 U.S. Dist. LEXIS 215881, at *18 (D.N.J. Nov. 8, 2021) (quoting *Weiss*, 418 F. Supp, 3d at 1182); *see also Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1233 (S.D. Fla. 2015) (acknowledging the third-party beneficiary exception under Florida law).

"Under Kentucky law, privity of contract is an essential element of a claim for breach of an implied warranty." *Estate of Demoss v. Eli Lilly & Co.*, 234 F. Supp. 3d 873, 882 (W.D. Ky. 2017) (citations omitted). "[P]rivity of contract does not extend beyond the buyer-seller setting, and an intervening purchaser destroys privity." *Id.* (citations omitted). However, "an actual and direct promise for the benefit of a third party will be sufficient to create privity between the promisor and the third party beneficiary." *Louisville Gas & Elec. Co. v. Continental Field Systems, Inc.*, 420 F. Supp. 2d 764, 770 (W.D. Ky. 2005) (citations omitted).

"[U]nder New York law, 'a claim based upon a breach of an implied warranty requires a showing of privity between the manufacturer and the plaintiff when there is no claim for personal injuries.'" *Bristol Vill., Inc. v. Louisiana-Pacific Corp.*, 916 F. Supp. 2d 357, 363 (W.D.N.Y. 2012) (citations omitted). However, "an exception to the [p]rivity requirement may be established where a plaintiff demonstrates that he or she is a third-party beneficiary of a contract between the manufacturer and the dealer." *George*, 2021 U.S. Dist. LEXIS 215881, at *19 (citing *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 557 (S.D.N.Y. 2016)).

Here, Plaintiffs have pleaded an exception to the privity requirement because they assert purchasing their vehicles from authorized dealerships acting as VW America and VWAG's agents and allege they are third-party beneficiaries of the transaction between the two defendants and their dealers. Plaintiffs allege they purchased or leased their vehicles from the two defendants through authorized agents and were expected to be the eventual purchasers—or ultimate consumers—of the Class Vehicles. (ECF No. 26 ¶ 271.) Plaintiffs also assert they are "intended third-party beneficiaries of contracts between [the two defendants] and their dealers," and the "dealers were not intended to be the ultimate consumer of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles" because "the warranty agreements were designed for and intended to benefit consumers." (*Id.* ¶ 201.) At this stage, Plaintiffs have adequately alleged exceptions to the privity requirement as recognized under Florida, New York, and Kentucky law. *See George*, 2021 U.S. Dist. LEXIS 215881, at *18–19 (finding exception to the privity requirement under Florida law where plaintiffs allege they were the ultimate consumer and authorized dealers are agents of the defendant); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, Civ. A. No. 16-2765, 2017 U.S. Dist. LEXIS 70299, at *49 (D.N.J. May 8, 2017) (observing Florida has "exceptions to the vertical privity requirement when,

as is the case here, the consumer, rather than the dealer, is the ultimate user"); *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1180–81 (N.D. Cal. 2017) (denying defendants' motion to dismiss implied warranty claims under New York law where plaintiff plausibly alleged that she was an intended third-party beneficiary of the contracts between Nissan and its dealers); *In re Subaru Battery Drain Prods. Liab. Litig.*, Civ. A. No. 20-03095, 2021 U.S. Dist. LEXIS 62373, at *55 (D.N.J. Mar. 31, 2021) (denying defendants' motion to dismiss implied warranty claims under New York law "[b]ecause Plaintiffs have alleged that they are 'third-party beneficiaries of contracts between Subaru and its dealers, and specifically Subaru's implied warranties"); *In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 746 (D.N.J. 2021) (applying Kentucky law and finding third-party-beneficiary plaintiffs may proceed with an implied warranty claim without scrutiny under Rule 12(b)(6)). Accordingly, VW America and VWAG's motions to dismiss the breach of implied warranty claims under Florida, New York, and Kentucky law for lack of privity are **DENIED.**

### iv.    *Missouri, Florida, & New Jersey*

VW America argues the breach of implied warranty claims of Plaintiff Hooks under Missouri law, Plaintiff Masone under Florida law, and Plaintiff Lowe under New Jersey law all fail because they do not allege to have provided any pre-suit notice of the claimed defect to VW America. (ECF No. 32-1 at 26–28.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs argue VW America had pre-suit notice of Plaintiffs' warranty claims and lack of pre-suit notice does not bar their breach of implied warranty claims. (ECF No. 45 at 31–33.)

Under New Jersey law, pre-suit notice is not required for a plaintiff to assert a breach of implied warranty claim against a remote seller. *Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856,

881 (D.N.J. 2020); *see also In re Volkswagen*, 2017 U.S. Dist. LEXIS 70299, at *41 ("Pre-suit notice is not required when the action is brought against a remote manufacturer and/or seller."); *Strzakowlski v. GMC*, Civ. A. No. 04-4740, 2005 U.S. Dist. LEXIS 18111, at *10 (D.N.J. Aug. 16, 2005) (finding notice is not required "against a remote manufacturer who was not the immediate seller of a defective product").

Under Florida law, which has adopted the Uniform Commercial Code, "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a); *see Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977) (finding breach of warranty claim requires "notice to seller of breach"). A "seller" is defined as "a person who sells or contracts to sell goods." Fla. Stat. § 672.103(1)(d). Courts have interpreted the statute to not require the buyer to provide pre-suit notice on a manufacture or other remote sellers. *See Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc.*, Civ. A. No. 09-607, 2010 U.S. Dist. LEXIS 28865, at *14 (M.D. Fla. Mar. 24, 2010) ("The plain language of the statue therefore does not require notice to a manufacturer."); *In re Volkswagen Timing Chain*, 2017 U.S. Dist. LEXIS 70299, at *42 ("Plaintiffs need not give a remote manufacturer and/or seller pre-suit notice in . . . Florida[.]"); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 975–79 (N.D. Cal 2014) (finding under Florida law, notice not required to manufacturer).

Under Missouri law, to establish a breach of implied warranty claim, a plaintiff must show: "(1) a merchant sold goods, (2) which were not "merchantable" at the time of the sale, (3) injury and damages to the buyer, (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury." *Guilford v. Bos. Sci. Corp.*, Civ. A. No. 19-00955, 2020 U.S. Dist. LEXIS 59034, at *10 (W.D. Mo. Apr. 3, 2020) (citing *Cobbins v. J.E.*

44

*Dunn Constr. Co.*, Civ. A. No. 15-0031, 2016 U.S. Dist. LEXIS 149603, at *8 (W.D. Mo. Oct. 28, 2016)). Having adopted the Uniform Commercial Code, Missouri law observes a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Mo. Rev. Stat § 400.2-607(3)(a). "The purpose of this requirement is to provide the seller with an opportunity to correct any defects, prepare for litigation, and prevent stale claims." *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993) (en banc). However, "the buyer is only under a duty to notify the immediate seller, not the manufacturer." *Ridings v. Maurice*, Civ. A. No. 15-00020, 2019 U.S. Dist. LEXIS 173976, at *31 (W.D. Mo. Aug. 12, 2019) (citing *Keene Corp.*, 855 S.W.2d at 369)).

Here, Plaintiffs Lowe, Masone, and Hooks have adequately pleaded an applicable exception to the pre-suit notice requirement under the laws of their respective states. Plaintiffs allege they either leased or purchased their vehicles from various dealerships. Therefore, VW America and VWAG are not the immediate seller of the Class Vehicles. Because the pre-suit notice requirement does not extend to remote sellers, Plaintiffs Lowe, Masone, and Hooks have sufficiently asserted their breach of implied warranty claim under New Jersey, Florida, and Missouri law, respectively.[16] *See Powell*, 502 F. Supp. 3d at 881 ("New Jersey does not have a

---

[16] The cases VW America cites for the proposition that pre-suit notice is required under New Jersey law concern pre-suit notice in the breach of express warranty context where the express warranty at issue explicitly required notice. *See Miller v. Samsung Elecs. Am., Inc.*, Civ. A. No. 14-4076, 2015 U.S. Dist. LEXIS 84359, at *40 (D.N.J. June 29, 2015) ("Here, the express warranty includes a notice requirement[.]"); *Hammer v. Vital Pharm., Inc.*, Civ. A. No. 11-4124, 2012 U.S. Dist. LEXIS 40632, at *29 (D.N.J. Mar. 26, 2012) (finding New Jersey has adopted notice requirement for express warranty claims). The other cases on which VW America relies included little or no analysis of New Jersey law. *See In re Ford Tailgate Litig.*, Civ. A. No. 11-2953, 2014 U.S. Dist. LEXIS 32287, at *17 n.10 (N.D. Cal. Mar. 11, 2014) (noting New Jersey requires pre-suit notice

pre-suit notice requirement for warrant claims[.]"); *PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*, Civ. A. No. 12-1366, 2014 U.S. Dist. LEXIS 197395, at *15 (M.D. Fla. Aug. 13, 2014) ("[N]otice is required to be given to the *seller*, not the manufacturer, under Florida law."); *Keene Corp.*, 855 S.W.2d at 369 ("The buyer is only under a duty to notify the immediate seller[.]"); *In re Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Practices, & Prods. Liab. Litig.*, Civ. A. No. 20-02936, 2022 U.S. Dist. LEXIS 41477, at *52 (W.D. Mo. Mar. 8, 2022) (finding Missouri law "require[s] that pre-suit notice be pled against an immediate seller only"). Accordingly, VW America and VWAG's motions to dismiss the breach of implied warranty claims under New Jersey, Florida, and Missouri law for lack of pre-suit notice are **DENIED**.

### 3. Magnuson-Moss Warranty Act Claim

VW America argues the MMWA claims should be dismissed because there are only sixteen named plaintiffs and the MMWA requires at least one-hundred named plaintiffs if the matter is brought as a class action. (ECF No. 32-1 at 28–29.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs argue

---

in a footnote without reference to any New Jersey cases holding same); *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 718 (E.D. Pa. 2013) (noting summarily New Jersey requires pre-suit notice without any analysis of New Jersey law). The cases VW America cites for the proposition that pre-suit notice is required under Florida law concern pre-suit notice in the breach of express warranty context. *See Lalli v. FCA US, LLC (In re FCA US, LLC Monostable Elec. Gearshift Litig.)*, 446 F. Supp. 3d 218, 226 (E.D. Mich. 2020) (finding "pre-suit notice as a requirement of any viable express warranty pleading"); *Meyer v. Colavita USA Inc.*, Civ. A. No. 10-61781, 2011 U.S. Dist. LEXIS 162814, at *20 (S.D. Fla. Sep. 13, 2011) (applying Florida law to express warranty claims). VW America also cites *Tershakovec v. Ford Motor Co.*, for the same proposition. 546 F. Supp. 3d 1348, 1367 (S.D. Fla. 2021). However, the *Tershakovec* court ruled on a motion for summary judgment; and when the defendants in that case raised the pre-suit notice issue on a motion to dismiss, the court denied dismissal of the warranty claims. *See Tershakovec*, 2018 U.S. Dist. LEXIS 116130, at *23.

the requirement to name one-hundred plaintiffs does not apply because their MMWA claim is not the sole basis for asserting federal jurisdiction, given the Class Action Fairness Act ("CAFA") provides an alternative basis for jurisdiction. (ECF No. 45 at 33–35.)

The MMWA, 15 U.S.C. § 2301 *et seq*., provides a private right of action for consumers who are damaged by a supplier, warrantor, or service contractor's failure to comply with the terms of a written or implied warranty. 15 U.S.C. § 2310(d)(1). A plaintiff's MMWA claim relies on her establishing a claim under an applicable state law. *Cooper v. Samsung Elecs. Am., Inc.*, Civ. A. No. 07-3853, 2008 U.S. Dist. LEXIS 75810, at *18 (D.N.J. Sep. 29, 2008), *aff'd*, 374 F. App'x 250 (3d Cir. 2010) (citations omitted); *DeFillippo v. Whirlpool Corp.*, Civ. A. No. 18-1252, 2019 U.S. Dist. LEXIS 148304, at *36 (D.N.J. Aug. 30, 2019) (finding "[c]laims under the MMWA depend upon the disposition of the underlying state law warranty claims"); *Santiago v. Total Life Changes LLC*, Civ. A. No. 20-18581, 2022 U.S. Dist. LEXIS 120655, at *8–9 (D.N.J. July 7, 2022) ("[T]o state a claim under the MMWA, a plaintiff must first adequately plead a claim for breach of warranty under state law."). Under the MMWA, a consumer may bring a claim "(A) in any court of competent jurisdiction in any State or the District of Columbia; or (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection." 15 U.S.C. § 2310(d)(1)). In turn, "paragraph 3" states "[n]o claim shall be cognizable" in federal court if, among other requirements, "the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C).

The Third Circuit recently addressed whether a court can exercise jurisdiction over MMWA claims where the operative complaint does not include one-hundred named plaintiffs. *See Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177 (3d Cir. 2023). In *Rowland*, the Third Circuit

makes clear that "CAFA does not provide a basis for federal jurisdiction over MMWA class actions that do not satisfy the MMWA's jurisdictional requirements." *Id.* at 183.

Here, there are only eighteen named plaintiffs. Therefore, Plaintiffs' MMWA claim does not meet the one-hundred named plaintiff jurisdictional requirement. As one court in this district has held, for "'CAFA to provide jurisdiction over MMWA claims despite [p]laintiffs' failure to satisfy the plain-language requirement of at least one hundred named plaintiffs would have the effect of overriding a part of the MMW[A]' — and . . . there is no 'clear and manifest' showing of Congress's intent to do so." *Powell*, 502 F. Supp. 3d at 885 (quoting *Floyd*, 966 F.3d at 1035). Accordingly, VW America and VWAG's motions to dismiss Plaintiffs' MMWA claims are **GRANTED**.

### 4.      Common-Law Fraud Claims

VW America argues Plaintiffs do not state a valid fraud claim because they fail to meet the heightened pleading requirements of Rule 9(b), and the advertising statements asserted by Plaintiffs are non-actionable puffery. (ECF No. 32-1 at 29–31.) VW America contends Plaintiffs' omission-based fraud claims fail because Plaintiffs have not established VW America had pre-sale knowledge of the Seat Defect and have not pleaded the requisite reliance or causation elements regarding the alleged omission. (*Id.* at 33–43.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs argue VW America's marketing statements were affirmative misrepresentations—not puffery—when combined with the allegations VW America knowingly concealed the Seat Defect. (ECF No. 45 at 35–37.) Plaintiffs contend they adequately alleged VW America had pre-sale knowledge of the Seat Defect when viewing the allegations in the Amended Complaint in their totality. (*Id.* at 39–44.) Plaintiffs assert they sufficiently allege the reliance or causation elements of their omission-

based claims. (*Id*. at 45–48.) The Court will address these arguments as they become applicable to the validity of the named Plaintiffs' claims.

### i.   *New Jersey & Massachusetts*

VW America argues the common law fraudulent concealment claims of Plaintiffs Upshur and Lowe under New Jersey law and Plaintiffs Ferrara and Daly under Massachusetts law fail because Plaintiffs have not established VW America had a duty to disclose the allegedly concealed information. (ECF No. 32-1 at 44–45.) Plaintiffs contend VW America made partial misleading disclosures that triggered a duty to reveal the Seat Defect under New Jersey and Massachusetts law. (ECF No. 45 at 48–50.)

Under New Jersey law, a fraudulent concealment claim requires a plaintiff to plead with particularity five elements: "(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Delaney v. Am. Express Co.*, Civ. A. No. 06-5134, 2007 U.S. Dist. LEXIS 34699, at *17 (D.N.J. May 11, 2007) (alteration in original) (quoting *Wartsila NSD N. Am., Inc. v. Hill Intern., Inc.*, 342 F. Supp. 2d 267, 287–88 (D.N.J. 2004); *see also Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997). "An omission can amount to fraud if a party has a duty to disclose." *Flynn-Murphy v. Jaguar Land Rover N. Am., LLC*, Civ. A. No. 20-14464, 2021 U.S. Dist. LEXIS 224787, at *26 (D.N.J. Nov. 19, 2021) (citing *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013)). However, "where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube v. Witco Corp.*, 4 F.3d

1153, 1185 (3d Cir. 1993); *Berman v. Gurwicz*, 458 A.2d 1311, 1313 (N.J. Super. Ct. Ch. Div. 1981) (finding duty of full disclosure may arise from one party's having made partial disclosure to the other or from the nature of the transaction and relationship between them), *aff'd*, 458 A.2d 1289 (N.J. Super. Ct. App. Div.).

Under Massachusetts law, "[t]o show fraud by omission, the plaintiff must allege 'both concealment of material information and a duty requiring disclosure.'" *Costa*, 542 F. Supp. 3d at 101 (quoting *Buffalo-Water 1, LLC v. Fidelity Real Estate Co.*, 111 N.E.3d 266, 277 (Mass. 2018)). There is a duty to disclose where: "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction." *Knapp v. Neptune Towers Assocs.*, 892 N.E.2d 820, 824 (Mass. App. Ct. 2008) (quoting *Stolzoff v. Waste Sys. Int'l, Inc.*, 792 N.E.2d 1031, 1044 (Mass. App. Ct. 2003)).

New Jersey and Massachusetts law impose a duty to disclose when a partial misleading disclosure requires correction or when a special relationship exists. Plaintiffs do not allege they have a special relationship with VW America and VWAG. Rather, Plaintiffs maintain VW America and VWAG made partial misleading disclosures that required correction, asserting VW America and VWAG's nationwide marketing efforts to tout their "family-ready" and "family designated hauler" triggered a duty to reveal the Seat Defect. (ECF No. 26 ¶ 105.) The complaint also alleges that VW America and VWAG marketed the vehicles as "safe and spacious." (*Id*. ¶ 108.) However, these alleged statements were directed at the Class Vehicles as a whole. Plaintiffs have not identified a partial misleading disclosure concerning the second-row seats specifically. Indeed, the Amended Complaint lacks allegations of any partial disclosures VW America and

VWAG made about the second-row seat assembly—the subject of the claimed defect at issue. *See In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 62373, at *75 n.21 (finding "[p]laintiffs have not identified specific statements or representations which Defendants made that were mere 'partial disclosures'" and marketing touting the "quality, durability and reliability" amounts to mere puffery); *Block v. Jaguar Land Rover N. Am., LLC*, Civ. A. No. 15-5957, 2019 U.S. Dist. LEXIS 221297, at *32 (D.N.J. Dec. 23, 2019) (dismissing fraud claims under Massachusetts law because the complaint did not "allege[] that [the defendant] made a partial or ambiguous statement to [the plaintiff] requiring disclosure to prevent the statement from being misleading"); *Sonneveldt v. Mazda Motor of Am., Inc.*, Civ. A. No. 19-01298, 2021 U.S. Dist. LEXIS 4190, at *18 (C.D. Cal. Jan. 4, 2021) (finding there was no partial disclosure to create a duty to disclose because the "marketing materials make no representations about the water pumps, and the remaining representations about quality and safety amount to mere puffery") (quotation omitted). The Amended Complaint references a statement by VW America's product manager, who stated the vehicles are "a true seven-seater, with a real third row." (ECF No. 26 ¶ 104.) Aside from this representation appearing to address the third-row seats—not second-row seats—"vague statements about 'integrity' are mere puffery and cannot be construed as promises." *Ponzio*, 447 F. Supp. 3d at 235; *Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civ. A. No. 06-5391, 2007 U.S. Dist. LEXIS 60790, at *25 (D.N.J. Aug. 20, 2007) (finding "'puffery' statements or 'vague and ill-defined opinions' are not assurances of fact, and cannot be construed as misrepresentation").

As such, Plaintiffs have failed to establish that VW America and VWAG owed a duty to disclose because they cannot identify a partial misleading disclosure. Therefore, Plaintiffs Upshur, Lowe, Ferrara, and Daly cannot maintain a claim for fraudulent concealment. Accordingly, VW

America and VWAG's motions to dismiss the common-law fraudulent concealment claim under New Jersey and Massachusetts law are **GRANTED.**

### ii.    *California, Florida, Pennsylvania, and Texas*

VW America argues Plaintiffs Tijerina, Concepción, Aprile, Gillespie, Masone, Callanhan, and Moutra's fraudulent concealment claims are barred by the economic loss doctrine under the laws of their respective states—California, Florida, Pennsylvania, and Texas. (ECF No. 32-1 at 47–48.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs claim VW America provides no analysis to support their argument that the economic loss doctrine bars their claims. (ECF No. 45 at 55–57.)

Under California law, "the economic loss doctrine provides that, '[g]enerally, purely economic losses are not recoverable in tort.'" *Ponzio*, 447 F. Supp. 3d at 236 (quoting *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013)). "Therefore, the economic loss rule may preclude plaintiffs from recovering under fraud and other intentional tort theories of liability where the tort claims are based on the same facts as the breach of contract claims." *Id.; WeBoost Media S.R.L. v. LookSmart Ltd.*, Civ. A. No. 13-5304, 2014 U.S. Dist. LEXIS 80978, at *19 (N.D. Cal. June 12, 2014) (dismissing plaintiff's fraudulent concealment claim under the economic loss rule where plaintiff's breach of contract claim and fraud claim were exactly the same, "but with the addition of fraudulent intent and concealment"). Florida law recognizes the economic loss doctrine, which "precludes recovery on tort claims where there is no 'property damage or personal injury.'" *Benkle v. Ford Motor Co.*, Civ. A. No. 16-1569, 2017 U.S. Dist. LEXIS 222317, at *27 (C.D. Cal. Dec. 22, 2017) (quoting *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399, 404 (Fla. 2013)); *Cardenas v. Toyota Motor Corp.*,

418 F. Supp. 3d 1090, 1103 (S.D. Fla. 2019) ("The economic loss rule sets forth the circumstances under which 'a tort action is prohibited if the only damages suffered are economic losses.'") (quoting *Tiara Condo. Ass'n*, 110 So. 3d at 401).

As to Pennsylvania, the Third Circuit held the economic loss doctrine bars common law fraudulent concealment claims alleging purely economic loss. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 681 (3d Cir. 2002), *rev'd on other grounds*, *Earl v. NVR, Inc.*, 990 F.3d 310, 314 (3d Cir. 2021). Under Texas law, "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986). Therefore, "tort damages are generally not recoverable unless the plaintiff suffers an injury that is independent and separate from the economic losses recoverable under a breach of contract claim." *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 815 (Tex. App. 2006); *O'Donnell v. Avis Rent A Car Sys. LLC & Ace Am. Ins. Co.*, Civ. A. No. 19-2687, 2022 U.S. Dist. LEXIS 58263, at *29 (N.D. Tex. Mar. 11, 2022) ("Texas' economic loss rule precludes recovery in tort when the loss complained of is the subject matter of the parties' contract.") (citing *Sw. Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). "In other words, a claim in tort will not lie when the only injury alleged is for economic damages caused by a party's failure to perform under a contract." *O'Donnell*, 2022 U.S. Dist. LEXIS 58263, at *29.

Here, Plaintiffs seek purely economic loss damages for the allegedly defective seats that are the subject of their warranty claims. Their fraud claims are premised on the same grounds as their breach of warranty claims that the second-row seats are improperly latched to their base. Because Plaintiffs allege purely economic damages, the economic loss doctrine bars the fraudulent concealment claims under California, Florida, Pennsylvania, and Texas law. *See Cardenas*, 418 F. Supp. 3d at 1104 (finding Florida's economic loss rule bars plaintiff's fraud claim where he "seeks

economic loss damages for his 'fraud or fraudulent concealment' claim, which alleges precisely what his breach of warranty claim alleges—that his Toyota Camry did not work as promised"); *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 62373, at *85–86 (dismissing plaintiffs' fraud claims because California recognizes the economic loss rule); *In re Ford Motor Co. DPS6 Powershift Transmission Prod. Liab. Litig.*, 483 F. Supp. 3d 838, 847–50 (C.D. Cal. 2020) (holding under California law "the economic loss rule bars [p]laintiff's claim for fraudulent inducement by omission"); *Ponzio*, 447 F. Supp. 3d at 236–37 (finding economic loss doctrine bars fraudulent concealment claims under California and Florida law); *Cohen*, 2022 U.S. Dist. LEXIS 42511, at *70–71 ("Because [p]laintiffs only allege fraudulent omissions, the Court will grant Subaru's motion to dismiss the common-law fraud claims of California Plaintiffs."); *Robinson*, 2021 U.S. Dist. LEXIS 134320, at *32 (finding economic loss doctrine bars fraudulent concealment claims under Florida and Texas law); *In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1341–42 (S.D. Fla. 2016) (applying economic loss rule under Pennsylvania law where "in the fraudulent concealment claims, [p]laintiffs allege the same facts that would support breach of warranty claims").[17] Accordingly, VW America and VWAG's motions to dismiss the common law fraudulent concealment claims under California, Florida, Pennsylvania, and Texas law are **GRANTED.**

---

[17] To the extent Plaintiffs cite *Pistorio v. FCA US LLC* for the proposition that an exception to the economic loss rule applies, Plaintiffs' reliance is misplaced. 2022 WL 141524, at *11 (E.D. Mich. Jan. 14, 2022). In *Pistorio*, the court found "[i]n Florida, the economic loss rule will not bar claims of fraudulent inducement." *Id*. However, Plaintiffs assert fraudulent concealment claims, not fraudulent inducement claims. Therefore, the exception to the economic loss doctrine Plaintiffs cite does not apply.

### iii.    *Kentucky, New York, Missouri, and Virginia*

VW America argues the common law fraudulent concealment claims of Plaintiff Henderson under Kentucky law, Plaintiff Curovic under New York law, Plaintiff Hooks under Missouri law, and Plaintiff Tolbert under Virginia law fail because Plaintiffs have not established VW America had a duty to disclose the allegedly concealed information. (ECF No. 32-1 at 43–47.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs argue VW America had a duty to disclose based on VW America's superior knowledge of the Seat Defect. (ECF No. 45 at 48–50.) Plaintiffs also contend they sufficiently allege VW America had pre-sale knowledge of the Seat Defect to adequately plead their common-law fraudulent concealment claims. (*Id.* at 53–54.)

Under Kentucky law, a fraud by omission claim requires a plaintiff to establish a duty to disclose. *Gresh v. Waste Servs. of Am., Inc.*, 311 F. App'x 766, 772 (6th Cir. 2009) ("Kentucky courts have recognized that a seller may be obligated to disclose known risks or defects that a reasonable buyer would want to know and that he could not discover through ordinary diligence."). "[A] seller in an arm's-length transaction has a duty to disclose essential facts if they have superior knowledge of those facts and the buyer could not discover them through ordinary diligence under the laws of Kentucky." *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 236 (S.D.N.Y. 2015). Under New York law, a plaintiff must plead four elements to establish a fraudulent concealment claim: "(1) that the defendant failed to disclose material information that he had a duty to disclose, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 218 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496

(2d Cir. 2009) (quoting *Bermuda Container Line Ltd. v. Int'l Longshoremen's Assoc.*, 192 F.3d

250, 258 (2d Cir. 1999)). "[A] duty to disclose ordinarily arises where the parties are in a fiduciary

or other relationship signifying a heightened level of trust." *Naughright v. Weiss*, 826 F. Supp. 2d

676, 690 (S.D.N.Y. 2011) (citing *Remington Rand Corp. v. Amsterdam-Rotterdam Bank*, 68 F.3d

1478, 1483 (2d Cir. 1995)). However, a duty to disclose may also arise "if one party makes a

partial or ambiguous statement that requires additional disclosure to avoid misleading the other

party or one party possesses superior knowledge not readily available to the other and knows that

the other is acting on the basis of mistaken knowledge." *Id.* (citing *Remington Rand*, 68 F.3d at

1484). Superior knowledge triggers a duty to disclose "only in instances where a party (1) has

superior knowledge, (2) that is not available to the other party by reasonable inquiry, and (3) the

first party knows that the second party is acting on the basis of mistaken knowledge." *Id.* (citing

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005).

> Under Missouri law, a fraudulent misrepresentation claim requires a plaintiff to show:

> > (1) a representation, (2) its falsity, (3) its materiality, (4) the
> > speaker's knowledge of the representation's falsity or ignorance of
> > its truth, (5) the speaker's intent that the representation be acted
> > upon by the person and in the manner reasonably contemplated, (6)
> > the hearer's ignorance of the falsity of the representation, (7) the
> > hearer's reliance on the truth of the representation, (8) the hearer's
> > right to rely thereon and (9) the hearer's consequent and proximate
> > injury.

*White v. Bowman*, 304 S.W.3d 141, 149 (Mo. Ct. App. 2009) (citing *Hess v. Chase Manhattan*

*Bank, USA, N.A.,* 220 S.W.3d 758, 765 (Mo. 2007) (en banc)).

> Although Missouri law does not recognize a separate tort for fraudulent nondisclosure, "a

party's silence in the face of a legal duty to speak replaces the first element: the existence of a

representation." *Hess*, 220 S.W.3d at 765. Such a legal duty arises "when there is a confidential or

fiduciary relationship, when there is privity of contract or when 'one party has superior knowledge or information not within the fair and reasonable reach of the other party.'" *In re Gen. Motors Corp. Anti-Lock Brake Prod. Liab. Litig.*, 966 F. Supp. 1525, 1535 (E.D. Mo. 1997) (citation omitted).

Under Virginia law, "a concealment or omission of a material fact may also give rise to a claim of actual fraud." *Carlucci v. Han*, 907 F. Supp. 2d 709, 740 (E.D. Va. 2012). "[A] duty to disclose may arise where concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." *Id.* (citation and quotation omitted); *see also Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999) ("[T]he failure to disclose information is generally not actionable as fraudulent concealment in the absence of some duty to disclose.") (citing *Norris v. Mitchell*, 495 S.E.2d 809 (1998)). In an arm's length transaction, a duty to disclose may arise: "(1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist; or (2) if one party takes actions which divert the other party from making prudent investigations (e.g., by making a partial disclosure)." *Bank of Montreal*, 193 F.3d at 829 (internal citations omitted); *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1355 (N.D. Ga. 2015).

Kentucky, New York, Missouri, and Virginia law impose a duty to disclose when a special relationship exists or when the seller has superior knowledge of material facts that require disclosure. The Amended Complaint adequately alleges facts supporting an inference that VW America and VWAG had superior knowledge of the Seat Defect to trigger its duty to disclose. Therefore, Plaintiffs have sufficiently pleaded their common law fraudulent concealment claims based on a failure to disclose the Seat Defect. Indeed, Plaintiffs asserts VW America and VWAG had "exclusive and superior" knowledge and information regarding the Seat Defect. (ECF

No. 26 ¶ 118.) They aver VW America and VWAG had this information based on pre-production testing, crash testing, design failure mode analyses, and consumer complaints. (*Id*. ¶ 118–42.) Plaintiffs identify complaints with dates to support their allegations that VW America and VWAG were aware of the Seat Defect. (*Id*. ¶ 132–41.) Plaintiffs purport VW America, VWAG, and their agents failed to disclose the Seat Defect before the sale of the Class Vehicles when only VW America and VWAG knew of the claimed defect. Plaintiffs also allege that VW America and VWAG were made aware of the Seat Defect through the early complaints it received from its exclusive network of dealerships. (*Id*.) In considering the circumstances surrounding the allegations of knowledge, Plaintiffs have sufficiently pleaded facts supporting an inference that VW America and VWAG were aware of the Seat Defect. *See BK Trucking Co. v. PACCAR, Inc.*, Civ. A. No. 15-2282, 2016 U.S. Dist. LEXIS 85149, at *27 (D.N.J. June 30, 2016) ("Knowledge and intent are exempt from Rule 9(b)'s particularity requirement, so long as the circumstances surrounding such general allegations of knowledge suffice to infer 'what defendant is alleged to have known and when.'"); *Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) ("Courts must be sensitive to the fact that application of Rule 9(b) prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'") (citation omitted). Because superior knowledge can establish a duty to disclose, Plaintiffs have adequately pleaded their fraudulent concealment claims. *In re GM LLC Ignition Switch Litig.*, Civ. A. No. 14-2543, 2016 U.S. Dist. LEXIS 92499, at *234 (S.D.N.Y. July 15, 2016) (applying Virginia law and finding "[g]iven that [the] defect could constitute a 'material fact' that New GM concealed from [plaintiff] and that New GM was plainly in a position of superior knowledge with respect to that fact, the Court concludes that [plaintiff] adequately pleads that New GM had a duty to disclose that it violated"); *Shaaya v. Jaguar Land Rover N. Am. LLC*, Civ. A. No. 20-5679, 2022 U.S. Dist.

LEXIS 114916, at \*29–30 (D.N.J. June 29, 2022) (finding superior knowledge triggers a duty to disclose under New York law).

To the extent VW America argues that a duty to disclose based on superior knowledge applies only in a buyer-seller relationship under Virginia law, there is an exception where a buyer purchases his or her vehicle from an authorized dealership operating as an agent. *See Callen v. Daimler Ag,* Civ. A. No. 19-1411, 2020 U.S. Dist. LEXIS 256495, at \*59–60 (N.D. Ga. June 17, 2020) ("At the motion to dismiss stage, these allegations are sufficient to support the reasonable inference that the Defendants' authorized dealerships act as their agents during sales transactions, such that their failure to provide pertinent information could expose the Defendants to liability for fraudulent concealment."); *Alexander v. Se. Wholesale Corp.*, 978 F. Supp. 2d 615, 623 (E.D. Va. 2013) ("In Virginia, a claim of fraud does not require direct contact or privity between the defendant and the plaintiff. A complaint must merely allege that the defendant knew or had reason to know that the plaintiff would rely on the misrepresentation.") (citation omitted). Plaintiff Tolbert purchased his vehicle from an authorized dealership of VW America and VWAG and alleges the dealership is an agent of VW America and VWAG. At this stage, the allegations are sufficient to establish that VW America and VWAG had a duty to disclose based on superior knowledge. *See Matanky*, 370 F. Supp. 3d at 796 (finding plaintiffs have adequately plead a duty to disclose under Virginia law based on allegations of superior knowledge); *Sonneveldt v. Mazda Motor of Am.*, Civ. A. No. 19-01298, 2021 U.S. Dist. LEXIS 202586, at \*16 (C.D. Cal. July 29, 2021) (applying Virginia law and finding "[p]laintiffs have plausibly alleged that Mazda had 'superior knowledge' of a material fact to support a duty to disclose at the pleadings stage"). Accordingly, VW America and VWAG's motions to dismiss the common law fraud-based claims under Kentucky, New York, Missouri, and Virginia law are **DENIED.**

### iv.    Michigan

VW America argues Michigan law does not impose a duty to disclose when consumers purchase their vehicles from a third-party dealer and have no direct interaction with the distributor. (ECF No. 32-1 at 45–46.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs counter VW America had a duty to disclose under Michigan law because VW America touted the safety of the Class Vehicles. (ECF No. 45 at 51–52.)

"Under Michigan law, the elements of fraudulent misrepresentation are: '(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.'" *In re Korn*, 567 B.R. 280, 307 (Bankr. E.D. Mich. 2017) (quoting *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567–68 (Mich. 2012). Michigan recognizes the doctrine of "'silent fraud,' also known as fraud by nondisclosure or fraudulent concealment." *M&D, Inc. v. W.B. McConkey*, 585 N.W. 2d 33, 37 (Mich. Ct. App. 1998). "The elements of a silent fraud claim are similar, except that they also include the elements that there was a duty to disclose, and a failure to disclose." *In re Korn*, 567 B.R. at 307. Indeed, "silence cannot constitute actionable fraud unless it occurred under circumstances where there was a legal duty of disclosure." *M&D, Inc.*, 585 N.W.2d at 37; *see also MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665 (6th Cir. 2013) ("[T]o state a claim for the tort of silent fraud, a plaintiff must allege more than non-disclosure; a plaintiff must

establish that the defendant had a legal duty to make a disclosure." (internal quotation marks omitted)).

"[A] legal duty to make a disclosure will arise most commonly in a situation where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information." *MacDonald*, 880 F. Supp. 2d 785, 798–99 (W.D. Mich. 2012), *aff'd*, 724 F.3d 654, 666 (6th Cir. 2013) (quoting *Hord v. Environmental Research Inst.*, 617 N.W.2d 543, 550 (2000)); *Buntea v. State Farm Mut. Auto Ins. Co.*, 467 F. Supp. 2d 740, 745 (E.D. Mich. 2006) ("The misrepresentation occurs when a party suppresses part of the truth when asked, not by mere nondisclosure."). Therefore, a plaintiff cannot prevail in a silent fraud claim merely by showing "the seller knew there was a hidden defect and that the purchaser had no knowledge of it." *M&D, Inc.*, 585 N.W.2d at 39.

Here, Plaintiffs do not allege they made any direct inquiries to VW America and VWAG regarding the safety of their vehicles or the existence of any potential defect. Absent an actual inquiry, VW America and VWAG "had no duty to make any further disclosure concerning" the condition of the second-row seats. *McDonald*, 724 F.3d at 666; *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, Civ. A. No. 12-5354, 2014 U.S. Dist. LEXIS 42960, at *60 (E.D.N.Y. Mar. 28, 2014) ("[U]nder Michigan law, partial disclosure can amount to fraud only if the partial disclosure is in response to a specific inquiry made by the injured party."). Therefore, Plaintiffs' fraudulent concealment claim is not viable under Michigan law because Plaintiffs have not alleged that VW America and VWAG made incomplete or misleading statements in response to a specific purchaser inquiry. *See In re Gen. Motors Ignition Switch Litig.*, 257 F. Supp. 3d at 425 ("The Michigan Plaintiffs do not allege that they made any inquiries directly to New GM regarding the safety of their vehicles or the existence of any potential defects. Such a failure to inquire 'dooms

61

the silent-fraud claim.'") (citation omitted); *Matanky*, 370 F. Supp. 3d at 794 (finding the plaintiffs' fraudulent concealment claim under Michigan law is not viable because they fail to allege the defendant made incomplete or misleading statements in response to a specific purchaser inquiry).

Moreover, while Plaintiff McDonald asserts his wife took their vehicle to a third-party dealership in October 2020 and asked the service department about the Seat Defect, the allegation is insufficient to establish a silent fraud claim under Michigan law. Plaintiff McDonald purchased his vehicle in 2018, nearly two years prior to the purported inquiry to the third-party dealership. To plead fraudulent concealment under Michigan law, Plaintiff McDonald must allege he acted in reliance upon the claimed misrepresentation. *See Hord*, 617 N.W.2d at 550–51 (entering a directed verdict in favor of the defendant because the plaintiff never made an inquiry into the information upon which he relied). The allegation is insufficient to establish Plaintiff McDonald "would not have purchased the product or would have paid less for it had they known of the defect." *Wozniak v. Ford Motor Co.*, Civ. A. No. 17-12794, 2019 U.S. Dist. LEXIS 1339, at *8 (E.D. Mich. Jan. 4, 2019) (citing *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751–52 (E.D. Mich. 2017)). Because Plaintiffs have not established a duty to disclose under Michigan law, Plaintiffs have not adequately pleaded facts to support their fraudulent concealment claims. Accordingly, VW America and VWAG's motions to dismiss the common law fraudulent concealment claims under Michigan law are **GRANTED.**

### 5.      Statutory Fraud Claims

#### i.      *Texas Deceptive Trade Practices Act*

VW America argues Plaintiff Moutra's claim under the Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code § 17.41 *et seq.*, fails because he does not allege the defect in his vehicle manifested. (ECF No. 32-1 at 49.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs argue they have standing under the TDTPA because all Class Vehicles have the Seat Defect that renders the vehicles unreasonably dangerous from the moment they leave the factory. (ECF No. 45 at 59–60.) The Court agrees.

VW America relies on *Everett v. TK-Taito, L.L.C.* for the proposition that a plaintiff lacks standing under the TDTPA if the alleged product defect did not manifest. 178 S.W.3d 844, 859 (Tex. App. 2005). In *Everett*, the Texas Court of Appeals held "[a]t some point, potential loss-of-benefit-of-the-bargain injuries and potential cost-of-repair or replacement injuries from a defect that has not manifested itself simply become too remote in time to constitute an 'injury' for statutory standing purposes under the [T]DTPA." *Id.* at 858. However, the court did not categorically foreclose all unmanifested defects from serving as a basis of a TDTPA claim. Indeed, the court noted: "We do not hold that a consumer may never possess standing to bring suit under the [T]DTPA for benefit-of-the-bargain damages based on an unmanifested product defect." *Id.* at 859 n.14. Rather, the court explained, "[T]aking the [plaintiffs'] pleadings as true, they have not pleaded facts demonstrating a statutory injury under the [T]DTPA." *Id.* Unlike in *Everett*, Plaintiffs here have pleaded the Seat Defect is one of design that is inherent to all Class Vehicles. Merely because the Seat Defect has yet to manifest does not mean that the defect does not exist. Taking the allegations in the Amended Complaint as true, as the Court is required to do at this stage, Plaintiffs have adequately alleged a design defect in all Class Vehicles, including Plaintiff

Moutra's vehicle, to bring their TDTPA claim. Accordingly, VW America and VWAG's motions to dismiss the TDTPA claim are **DENIED.**

### ii.   *Michigan Consumer Protection Act*

VW America contends Plaintiff McDonald's claim under the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws Ann. § 445.901, *et seq.*, fails because the statute does not apply to transactions authorized by law. (ECF No. 32-1 at 49–50.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs asserts VW America's argument that the MCPA exempts the automobile industry from liability should be rejected at the pleading stage. (ECF No. 45 at 60–61.)

The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," and defines "trade or commerce" as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes." Mich. Comp. Laws. §§ 445.903(1), 445.902(1)(g). However, the MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1). "The Michigan Supreme Court construes this exemption broadly, finding that 'the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.'" *Matanky*, 370 F. Supp. 3d at 799 (quoting *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 516 (2007)) (citation and internal quotation marks omitted).

Several courts applying the MCPA have found this provision of the MCPA exempts motor vehicle sales. *See In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Practices*

*Litig.*, Civ. A. No. 19-02901, 2022 U.S. Dist. LEXIS 32242, at *73 (E.D. Mich. Feb. 23, 2022) (concluding the exemption applies to motor vehicle sales); *Matanky*, 370 F. Supp. 3d at 800 (finding the sale of a new car by a licensed dealer is exempt from the MCPA); *Jimenez v. Ford Motor Credit Co.*, 2015 Mich. App. LEXIS 2429, at *17 (Mich. Ct. App. Dec. 22, 2015) (finding the sale of a motor vehicle by a licensed dealer was an exempt transaction under the MCPA); *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 U.S. Dist. LEXIS 193339, at *7–8 (E.D. Mich. Oct. 21, 2016) (finding Toyota's alleged deceptive advertising conduct was exempt from the MCPA); *Gant v. Ford Motor Co.*, 517 F. Supp. 3d 707, 720 (E.D. Mich. 2021) (finding the MCPA provides an exemption for automobile sales); *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 276 (E.D. Mich. 2021) (same).

Plaintiffs rely on two cases wherein the court reserved ruling on the MCPA exemption issue to a later point on summary judgment, rather than on a motion to dismiss.[18] However, other courts have thoroughly reviewed the issue and have reached the conclusion that motor vehicles sales are exempt. *See Chapman v. GM LLC*, 531 F. Supp. 3d 1257, 1302 (E.D. Mich. 2021); *Cyr v. Ford Motor Co.*, Civ. A. No. 345751, 2019 Mich. App. LEXIS 8347, at *8 (Mich. Ct. App. Dec. 26, 2019). Accordingly, VW America and VWAG's motions to dismiss the MCPA claim are **GRANTED.**

---

[18] *See, e.g., Francis*, 504 F. Supp. 3d at 691 ("The Court will not dismiss the MCPA claim as insufficiently pleaded [under § 445.904(1)(a)], but GM may revisit the question on summary judgment with a properly developed argument."); *In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*, 406 F. Supp. 3d 618, 643 (E.D. Mich. 2019) ("[T]he Court declines to dismiss [the] MCPA claim on the basis that GM's vehicle sales are exempt from the MCPA. The Court will reconsider this line of argument, on a more developed record and on full briefing, at the summary judgment stage of these proceedings.").

### iii.    *New Jersey Consumer Fraud Act*

VW America argues Plaintiffs Upshur and Lowe's claim under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2*, et seq.,* fails because they failed to plead ascertainable loss. (ECF No. 32-1 at 50–52.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.)  Plaintiffs argue they are not required to quantify their losses at the pleading stage to adequately allege ascertainable loss under the NJCFA. (ECF No. 45 at 61–63.)

"The [NJ]CFA does not define what constitutes an 'ascertainable loss,' and there is no legislative history 'that sheds direct light on those words.'" *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 361 (D.N.J. 2006) (citing *Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 792 (N.J. 2005)). "The New Jersey Supreme Court has instructed, '[t]o give effect to the legislative language describing the requisite loss for private standing under the [NJ]CFA, . . . a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss.'" *Id*. (citing *Thiedemann*, 872 A.2d at 792). "'The certainty implicit in the concept of an "ascertainable" loss is that it is quantifiable or measurable,' and in order to raise a genuine dispute, 'the plaintiff must proffer evidence of loss that is not hypothetical or illusory.'" *Id*. (citing *Thiedemann*, 872 A.2d at 792–93). "In cases involving breach of contract or misrepresentation, either out-of-pocket loss or a demonstration of loss in value will suffice to meet the ascertainable loss hurdle and will set the stage for establishing the measure of damages." *Thiedemann*, 872 A.2d at 792.

Plaintiffs' allegations that the class vehicles are worth less because of the seat defect satisfies the ascertainable loss element for stating a claim since such a loss is quantifiable. (ECF

No. 26 ¶ 169); *See Bang*, 2016 U.S. Dist. LEXIS 166329, at *17 (finding the plaintiffs adequately pleaded ascertainable loss because they alleged their vehicles are worth less as a result of the vehicles' purported defects); *Marcus v. BMW of North Am.*, Civ. A. No. 08-5859, 2010 U.S. Dist. LEXIS 122908, at *33 (D.N.J. Nov. 19, 2010) (finding ascertainable loss adequately pleaded where the plaintiffs "got less than what they expected" despite being provided free replacement parts), *rev'd on other grounds,* 687 F.3d 583 (3d Cir. 2012) (citing *Int'l Union of Operating Eng'rs Loc. # 68 Welfare Fund*, 894 A.2d at 1145). Therefore, Plaintiffs have adequately pleaded an ascertainable loss. Accordingly, VW America and VWAG's motions to dismiss the NJCFA claims are **DENIED.**

### iv.    *Pennsylvania Unfair Trade Practices and Consumer Protection Law*

VW America asserts Plaintiff Callahan's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1, *et seq.*, fails because she fails to allege a fiduciary or other confidential relationship to establish a duty to disclose. (ECF No. 32-1 at 52.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs contend VW America had a duty to disclose a latent defect under the UTPCPL. (ECF No. 45 at 64.)

The UTPCPL provides a private right of action for consumers injured by unfair or deceptive trade practices. 73 Pa. Con. Stat. § 201-9.1. To state a claim, a plaintiff must establish: "(1) the alleged violations occurred in trade or commerce; (2) the UT[P]CPL grants a private cause of action for the injuries sustained; and (3) the alleged actions fall within one of the seventeen identified categories of unfair or deceptive trade practices." *Silverstein v. Percudani*, Civ. A. No. 04-1262, 2005 U.S. Dist. LEXIS 10005, at *22 (M.D. Pa. May 26, 2005) (citing *Smith v.*

*Commercial Banking Corp.*, 866 F.2d 576, 581 (3d Cir. 1989)). "When allegations underlying a UTPCPL claim involve a defendant's nondisclosure rather than misrepresentation, the omission is actionable only if there is a duty to disclose." *DeSimone v. U.S. Claims Servs., Inc.*, Civ. A. No. 19-6150, 2020 U.S. Dist. LEXIS 41950, at *6 (E.D. Pa. Mar. 11, 2020). "In Pennsylvania, a duty to speak requires the presence of a fiduciary or other confidential relationship 'as prerequisite to liability for omissions.'" *Id.* (quoting *Silverstein*, 2005 U.S. Dist. LEXIS 10005, at *24).

In the absence of a fiduciary or confidential relationship, Pennsylvania recognizes "a duty to disclose a known latent defect to a purchaser when the purchaser is unsophisticated and does not have access to the same information as the manufacturer." *Zwiercan v. GMC*, 58 Pa. D. & C.4th 251, 259 (C.P. 2002). However, such a duty to disclose has been limited to "known serious and life threatening latent defects." *Zwiercan v. GMC.*, Civ. A. No. 3235, 2003 Phila. Ct. Com. Pl. LEXIS 85, at *6 (Pa. Com. Pl. Mar. 18, 2003) ("*Zwiercan III*"). In other words, "a party has a duty to disclose known material and dangerous defects, i.e. those defects which are likely to cause significant bodily harm." *Id.*

Here, Plaintiffs do not allege the presence of a fiduciary or confidential relationship to trigger a duty to disclose under Pennsylvania law. However, Plaintiffs allege the improperly latched second-row seat could result in death or severe injury to drivers and passengers. (ECF No. 26 ¶¶ 11, 116, 210, 211, 222, 703.) At this stage, the Court is required to accept the allegations in the Amended Complaint as true. *See Zwiercan III*, 2003 Phila. Ct. Com. Pl. LEXIS 85, at *5 ("Plaintiff has alleged facts that, if true, support finding that the alleged defect in the front seats of Defendant's Class Vehicles are likely to cause paralysis or even death."). Because Plaintiffs allege the Seat Defect is likely to cause significant bodily harm, a duty to disclose is triggered. Therefore, VW America and VWAG's alleged failure to disclose the Seat Defect provides a basis for

68

Plaintiffs to bring their omission-based UTPCPL claims. Accordingly, VW America and VWAG's motions to dismiss the UTPCPL claim are **DENIED.**

> ### v. *California Consumers Legal Remedies Act and False Advertising Law*

VW America argues Plaintiffs Tijerina and Concepción's claims under the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, fail because they are untimely. (ECF No. 32-1 at 52–54.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs Tijerina and Concepción argue they adequately invoked delayed-discovery tolling because each alleges the date and manner by which they discovered the Seat Defect. (ECF No. 45 at 65–66.)

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. & Prof. Code § 17500. Both the CLRA and the FAL carry a three-year statute of limitations. *See* Cal. Civ. Code §§ 338(a), § 1783. Under California law, "the limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues." *Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871, 875 (Cal. 2013). Generally, CLRA and FAL claims accrue upon the date the product at issue is purchased. *See Plumlee v. Pfizer, Inc.,* Civ. A. No. 13-00414, 2014 U.S. Dist. LEXIS 23172, at *23 (N.D. Cal. Feb. 21, 2014). However, "[i]n California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 981 P.2d 79, 88 (Cal. 1999)).

Under this delayed-discovery rule, "the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 917 (Cal. 2005). Importantly, "[i]n order to rely on this rule, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" *Finney v. Ford Motor Co.*, Civ. A. No. 17-06183, 2019 U.S. Dist. LEXIS 561, at *8 (N.D. Cal. Jan. 2, 2019) (quoting *Fox*, 110 P.3d at 920–21).

Here, Plaintiff Tijerina purchased her vehicle in November 2017 and Plaintiff Concepción purchased his vehicle in August 2018. (ECF No. 26 ¶¶ 24, 28.) The original complaint was filed in October 2021, more than three years after both Plaintiffs purchased their vehicles. However, both Plaintiffs plead the specific dates and manner by which they discovered the Seat Defect. Plaintiff Tijerina alleges that in January 2021, she discovered the Seat Defect when she applied the brakes while driving on the highway and the second-row passenger-side seat lurched forward with her daughter buckled in. (*Id.* ¶ 25.) Plaintiff Concepción alleges that in April 2019, he discovered the Seat Defect while driving down a steep hill when the seat where his daughter was sitting spontaneously lurched forward and hit the back of the front passenger seat. (*Id.* ¶ 29.) In both instances, the Seat Defect was unexpectedly discovered during the ordinary operation of the vehicle. The Amended Complaint asserts both Plaintiffs had no way of knowing their vehicles contained the Seat Defect that could cause the seats to lurch forward during deceleration. (*Id.* ¶¶ 27, 33.) "Taken together, these allegations raise fact questions as to when [Plaintiffs Tijerina and Concepción] discovered the [seat] defect and whether [they] had knowledge sufficient to put

[them] on inquiry sooner." *Callen v. Daimler*, Civ. A. No. 19-1411, 2021 U.S. Dist. LEXIS 190542, at *13 (N.D. Ga. Oct. 4, 2021) (applying California law). Because Plaintiffs plead the date and manner by which they discovered the Seat Defect and their inability to discover it earlier with reasonable diligence, Plaintiffs have adequately invoked the delayed-discovery rule. Therefore, Plaintiffs have sufficiently alleged facts to trigger tolling of the statute of limitations as to avoid dismissal of their claims. Accordingly, VW America and VWAG's motions to dismiss the CRLA and FAL claims are **DENIED.**

### vi.    *Virginia Consumer Protection Act*

VW America argues Plaintiff Tolbert's claim under Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-196, *et seq*., fails because the statute permits only individual claims, not class actions.[19] (ECF No. 32-1 at 55.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs argue their VCPA claim may proceed under Rule 23 as a class action. (ECF No. 45 at 68–69.)

The VCPA prohibits "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Va. Code. § 59.1-200(A). Virginia law does not generally recognize class actions. *In re Hardieplank Fiber Cement Siding Litig.*, MDL No. 2359, 2013 U.S. Dist. LEXIS 98277, at *46 (D. Minn. July 15, 2013); *Commonwealth v. Supportkids, Inc.*, 2008 WL 8201353 at *5 (Va. Cir. Ct. Oct. 1, 2008). The VCPA itself, however, "does not expressly forbid

---

[19] VW America further argues Plaintiff Tolbert's claim for injunctive relief under the VCPA fails because injunctive relief is not available under the VCPA to private plaintiffs. (ECF No. 32-1 at 62.) Plaintiffs do not dispute that private parties cannot pursue injunctive relief under the VCPA. (ECF No. 45 at 73.) Accordingly, VW America and VWAG's motions to dismiss Plaintiff Tolbert's request for injunctive relief under the VCPA are **GRANTED.**

or permit class actions." *Id.*, at *46–47. Therefore, "Virginia's prohibition is in Virginia's procedural law, not the substantive VCPA." *In re MyFord Touch Consumer Litig.*, Civ. A. No. 13-03072, 2016 U.S. Dist. LEXIS 179487, at *79 (N.D. Cal. Sep. 14, 2016). Because federal courts sitting in diversity apply state substantive law and federal procedural law, Rule 23 governs as the procedural mechanism for class actions. *See In re Hardieplank Fiber Cement Siding Litig.*, 2013 U.S. Dist. LEXIS 98277, *47 ("The absence of a class action right under the VCPA is the 'default' position under Virginia law, rather than a provision of the VCPA itself. Thus, . . . the lack of a class action mechanism is a procedural matter, rather than a substantive law . . . ."); *In re MyFord Touch Consumer Litig.*, 2016 U.S. Dist. LEXIS 179487, at *79 ("Because Virginia's class action ban is not part of the VCPA, and applies outside the context of the VCPA, it is procedural rather than substantive, and is precluded by Rule 23."); *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 574–75 (M.D. Tenn. 2020) (denying motion to dismiss class action claim under VCPA and holding the VPCA was "preempted [by Rule 23] and cannot apply in this federal case"); *Milisits v. FCA US LLC*, Civ. A. No. 20-11578, 2021 U.S. Dist. LEXIS 138434, at *36–37 (E.D. Mich. July 26, 2021) (finding the lack of a class action mechanism is a procedural matter and declining to dismiss the VCPA class action claim). Accordingly, VW America and VWAG's motions to dismiss the VCPA claim are **DENIED.**

### 6. Negligent Misrepresentation Claims

#### i. California, Florida, and Missouri[20]

---

[20] Plaintiffs concede the economic loss doctrine bars their negligent misrepresentation claims under Virginia law. (ECF No. 45 at 70.) Accordingly, VW America and VWAG's motions to dismiss the negligent misrepresentation claims under Virginia law are **GRANTED.**

VW America argues the negligent misrepresentation claims of Plaintiffs Tijerina and Concepción under California law, Plaintiffs Aprile, Gillespie, and Masone under Florida law, and Plaintiff Hooks under Missouri law fail because the economic loss doctrine bars those claims. (ECF No. 32-1 at 56.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs argue the economic loss doctrine does not bar their claims. (ECF No. 45 at 70.)

Under California law, "the economic-loss rule applies to negligent-misrepresentation claims." *Kearney v. BMW, AG*, Civ. A. No. 17-13544, 2018 U.S. Dist. LEXIS 147746, at *41 (D.N.J. Aug. 29, 2018) (citing *Shahinian v. Kimberly-Clark Corp.*, Civ. A. No. 14-8390, 2015 U.S. Dist. LEXIS 92782, at *24 (C.D. Cal. July 10, 2015)). "Generally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort." *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995). "Instead, the claimant is limited to recovery under the law of contract." *Id.*; *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 n.7 (Cal. 2004) ("The economic loss rule is designed to limit liability in commercial activities that negligently or inadvertently go awry, not to reward malefactors who affirmatively misrepresent and put people at risk.").

Under Florida law, the economic loss rule precludes "recovery of economic damages in tort where there is no property damage or personal injury." *Tiara Condo. Ass'n*, 110 So. 3d at 404. Florida law recognizes that the economic loss rule bars claims based on negligent misrepresentation. *See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331 at 1337–39 (S.D. Fla. 2013) (applying the economic loss rule under Florida law where "negligent misrepresentation is dependent on the same fundamental allegations contained in the breach of warranty claim"); *Premix-Marblelite Mfg. Corp. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1360

(S.D. Fla. 2001) (holding the plaintiff's negligent misrepresentation claim is barred by Florida's economic loss rule); *Pavletic v. Bertram Yacht, Inc*., Civ. A. No. 11-60484, 2011 U.S. Dist. LEXIS 87825, at *18 (S.D. Fla. Aug. 9, 2011) ("Given the similarities between the alleged obligations under the warranty and the acts that [p]laintiff identifies as constituting negligent misrepresentation and fraud in the inducement, these claims, as pled, are barred under Florida law.").

"In Missouri, the economic loss doctrine has been observed to prohibit a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010). "Recovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence." *Captiva Lake Invs., Ltd. Liab. Co. v. Ameristructure, Inc.*, 436 S.W.3d 619, 628 (Mo. Ct. App. 2014) (citing *Autry Morlan Chevrolet, Cadillac*, 332 S.W.3d at 192).

Here, Plaintiffs seek purely economic loss damages for the Seat Defect. The Seat Defect is the basis of Plaintiffs' negligent misrepresentation claims. Because the negligent misrepresentation claims are grounded in the same premise as the breach of warranty claims—mainly that the second-row seats are improperly latched to their base—the economic loss rule is implicated and bars their negligent misrepresentation claims under California, Florida, and Missouri law. *Kearney*, 2018 U.S. Dist. LEXIS 147746, at *42 (California); *Hernandez v. FCA US Ltd. Liab. Co.*, Civ. A. No. 19-1872, 2020 U.S. Dist. LEXIS 147005, at *11 (S.D. Cal. Aug. 14, 2020) (California); *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1302 (S.D. Fla. 2017) (Florida); *W.W. Sports Importadora Exportadora E Comercial LTDA v. BPI Sports, Ltd. Liab. Co.*, Civ. A. No. 16-60147, 2016 U.S. Dist. LEXIS 192427, at *13 (S.D. Fla. Aug. 10, 2016)

(Florida); *Graham Constr. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 616 (8th Cir. 2014) (Missouri); *Johnsen v. Honeywell Int'l, Inc.*, Civ. A. No. 14-594, 2015 U.S. Dist. LEXIS 17204, at *23 (E.D. Mo. Feb. 12, 2015) (Missouri). Accordingly, VW America and VWAG's motions to dismiss Plaintiffs' negligent misrepresentation claims under California, Florida, and Missouri law are **GRANTED**.[21]

### ii.  *Kentucky and Michigan*

VW America argues claims of negligent misrepresentation by omission are not recognized under Kentucky and Michigan law. (ECF No. 32-1 at 56.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs concede Kentucky and Michigan law do not recognize omission-based negligent misrepresentation claims but argue their allegations of affirmative misrepresentations are sufficient to assert their negligent misrepresentation claims. (ECF No. 45 at 70.)

As discussed above, *supra* § III.C.4.i., Plaintiffs have not adequately alleged that VW America and VWAG made any affirmative statement to assert an affirmative misrepresentation claim. Plaintiffs allege VW America and VWAG engaged in a nationwide marketing effort to tout the Class Vehicles as "family-ready" and a "family designated hauler." (ECF No. 26 ¶ 105.) Other allegations include that VW America and VWAG marketed the Class Vehicles as "safe and spacious." (*Id.* ¶ 108.) The affirmative statements identified in the Amended Complaint are too vague and subjective—rather than specific and detailed—to suffice as actionable claims for

---

[21] To the extent Plaintiffs rely on *Miller v. Big River Concrete*, the court in that case found the economic loss doctrine did not apply against two defendants who were providing services with no privity of contract, not in the context of a product sale. 14 S.W.3d 129, 134 (Mo. Ct. App. 2000).

negligent misrepresentation. *See Ponzio*, 447 F. Supp. 3d at 234 (finding Mercedes's specific representations regarding automobile paint were actionable representations in a suit challenging paint coating of the subject vehicles); *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, Civ. A. No. 08-939, 2009 U.S. Dist. LEXIS 82833, at *31 (D.N.J. Sep. 10, 2009) ("The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions.") (citation omitted); *Bubbles N' Bows, LLC*, 2007 U.S. Dist. LEXIS 60790, at *25; *Tershakovec v. Ford Motor Co.*, 546 F. Supp. 3d 1348, 1359 (S.D. Fla. 2021) ("[P]uffery can be generally understood as generalized, vague, nonquantifiable statements of corporate optimism." (quotation omitted)); *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 706 (E.D. Mich. 2020) (finding statements such as "leading fuel economy," "unprecedented performance and fuel economy," "environmentally clean," "low-cost of ownership," and "built to last for years" to be "general and nonquantifiable" and therefore puffery). Accordingly, VW America and VWAG's motions to dismiss the negligent misrepresentation claims under Kentucky and Michigan law are **GRANTED.**

### iii.    *Texas & Massachusetts*

VW America argues claims of negligent misrepresentation by omission are not recognized under Texas and Massachusetts law. (ECF No. 32-1 at 56, 58.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs counter Texas and Massachusetts law recognize omission-based negligent misrepresentation claims. (ECF No. 45 at 71.)

> To recover under Texas law for negligent misrepresentation, plaintiffs must prove that (1) the defendant made a representation in the course of his business, or in a transaction in which he had a pecuniary interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not

exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation.

*Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 318 (5th Cir. 2002)

(citing *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998)).

"The misrepresentation must have been the cause in fact of the plaintiff's damages." *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 389 (Tex. App. 2010). Under Massachusetts law, the elements of a negligent misrepresentation claim are

(a) a provision, in the course of the defendant's business, profession, employment, or in the course of a transaction of his pecuniary interest, (b) of false information for the guidance of others in their business transactions, (c) without the exercise of reasonable care or competence in the acquisition or communication of the information, (d) causing justifiable reliance by, and (e) resulting in pecuniary loss to, the plaintiff.

*Welch v. Barach*, 993 N.E.2d 742, 748 n.11 (Mass. App. Ct. 2013); *Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc.*, 918 N.E.2d 36 (Mass. 2009).

Therefore, an affirmative representation is required to assert a negligent misrepresentation claim under Texas and Massachusetts law.[22] Accordingly, VW America and VWAG's motions to

---

[22] Plaintiffs cite *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, in support of their proposition that Texas law recognizes omission-based negligent misrepresentation claims. 317 S.W.3d 361, 389 (Tex. Ct. App. 2010). However, Plaintiffs are conflating the representation element and the reliance element of a negligent misrepresentation claim. "[T]he plaintiff must actually rely on the misinformation to his detriment by either basing his conduct on it or refraining from action because of it." *Domel v. Birdwell*, Civ. A. No. 12-00200, 2014 Tex. App. LEXIS 9767, at *19 (Tex. App. Aug. 29, 2014). Only the reliance element recognizes an omission where the plaintiff is "refraining from action" as a result of the affirmative misrepresentation. To the extent Plaintiffs cite *Grafton Partners, LLC v. Barry & Foley Motor Transp., Inc.*, for the proposition that Massachusetts law recognizes omission-based negligent misrepresentation claims, Plaintiffs' reliance is misplaced

dismiss Plaintiffs' negligent misrepresentation claim under Texas and Massachusetts law are **GRANTED.**

### iv.    *New Jersey and Pennsylvania*[23]

VW America argues Plaintiffs' negligent misrepresentation claim fails under New Jersey law because there is no duty to disclose absent a fiduciary relationship or when disclosure is necessary to make a previous incorrect statement true. (ECF No. 32-1 at 59.) VW America contends Plaintiffs' negligent misrepresentation claim fails under Pennsylvania law because there is no duty to disclose absent a fiduciary relationship. (*Id.* at 58–59.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.) Plaintiffs argue a duty to disclose exists under New Jersey law because disclosure would reasonably be expected given the circumstances. (ECF No. 45 at 72.) Plaintiffs contend VW America had a duty to disclose under Pennsylvania law because injury is reasonably foreseeable. (*Id.* at 72.)

Under New Jersey law, "[t]o prevail on a claim for negligent misrepresentation, a plaintiff must prove: (1) defendant negligently made a false communication of material fact; (2) that plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury." *Bank of Am., N.A. v. Westheimer*, Civ. A. No. 12-7080, 2014 U.S.

---

because the court in that case found negligent misrepresentation where the defendant incorrectly omitted information from an affirmative representation. 22 Mass. L. Rep. 442 (2007).

[23] Plaintiffs concede New York law requires the presence of a fiduciary relationship to assert a claim for negligent misrepresentation. (ECF No. 45 at 71.) Accordingly, VW America and VWAG's motions to dismiss the negligent misrepresentation claim under New York law are **GRANTED.**

Dist. LEXIS 25642, at *21 (D.N.J. Feb. 28, 2014) (citing *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138 (N.J. 1983)); *Gross v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 696 A.2d 793 (N.J. Super. Ct. App. Div. 1997). New Jersey law recognizes omission-based negligent misrepresentation claims. *See Strawn v. Canuso*, 657 A.2d 420, 429 (N.J. 1995). "[T]he New Jersey caselaw that allows such a claim to be based on the defendant's silence or suppression of truth rather than on some affirmative misrepresentation . . . is not limited to special relationship situations." *Highlands Ins. Co. v. Hobbs Grp., LLC*, 373 F.3d 347, 355 (3d Cir. 2004). Indeed, "the required duty of disclosure may also arise in any situation called for by good faith and common decency." *Id*. (citing *Maertin*, 241 F. Supp. 2d at 461).

Here, Plaintiffs do not assert the presence of a special relationship with VW America and VWAG. Nor do Plaintiffs identify the circumstances under which good faith and common decency would arise to trigger a duty to disclose. *See Schechter v. Hyundai Motor Am.*, Civ. A. No. 18-13634, 2020 U.S. Dist. LEXIS 55598, at *51 (D.N.J. Mar. 31, 2020) (finding "pleadings demonstrate nothing more than a standard commercial dealing involving parties representing their own interests" was insufficient to establish a duty to disclose based on "good faith and common decency"). Because Plaintiffs have not pleaded the presence of a special relationship or a situation called for by good faith and common decency, they have not established that VW America and VWAG had a duty to disclose. *Schechter*, 2019 U.S. Dist. LEXIS 126021, at *31. Therefore, absent a duty to disclose, Plaintiffs' omission-based negligent misrepresentation claims under New Jersey law fail.

Under Pennsylvania law, "negligent misrepresentation requires proof of: (1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which

results in injury to a party acting in justifiable reliance on the misrepresentation." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 656 (Pa. 2021) (citing *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999)). To plead an omission-based negligent misrepresentation claim, a plaintiff must show that the defendant had a fiduciary duty to disclose. *See Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717, 725 (E.D. Pa. 2014) (citing *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 408 (W.D. Pa. 2002)). Here, Plaintiffs do not assert a fiduciary relationship exists with VW America and VWAG. Therefore, Plaintiffs fail to establish a duty to disclose arose to maintain their omission-based negligent misrepresentation claims. To the extent Plaintiffs cite *Gibbs v. Ernst*, 647 A.2d 882 (1994), for the proposition that Pennsylvania imposes a duty when injury is reasonably foreseeable, Plaintiff's reliance is misplaced. In *Gibbs*, the court addressed negligent misrepresentation in the child-adoption agency context. *Id.* at 892 ("[U]nder the traditional principles of negligence, the duty of adoption agencies for the purposes of negligent misrepresentation will only apply where the condition of the child was foreseeable at the time of placement so that the agency is blameworthy in making a misrepresentation."). Plaintiffs offer no support establishing whether the purported foreseeable injury exception applies in the product sale context. Therefore, without establishing a fiduciary duty to disclose, Plaintiffs' omission-based negligent misrepresentation claim under Pennsylvania law fails.

Accordingly, VW America and VWAG's motions to dismiss the negligent misrepresentation claims under New Jersey and Pennsylvania law are **GRANTED.**

### 7.    Injunctive Relief

VW America contends Plaintiffs' injunctive relief claim fails because they have not established that they lack any adequate alternative remedy at law. (ECF No. 32-1 at 63.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF

No. 52-1 at 1.) Plaintiffs argue dismissal of their injunctive relief claim is not warranted and they are not required to show they lack an adequate legal remedy at the Rule 12(b)(6) stage.[24] (ECF No. 45 at 74–75.) Under Rule 8(a), "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Therefore, Plaintiffs are entitled to seek their concurrent claims for injunctive or other equitable relief. *See Flynn-Murphy*, 2021 U.S. Dist. LEXIS 224787, at *32 (permitting the plaintiffs to seek concurrent claims for alternative types of relief). Accordingly, VW America and VWAG's motions to dismiss Plaintiffs' injunctive relief claims are **DENIED.**

### 8.    Unjust Enrichment Claims

VW America argues Plaintiffs' unjust enrichment claims should be dismissed because: (1) Plaintiffs fail to establish they lack any adequate alternative remedy at law; (2) claims of unjust enrichment are not permitted where the claim relates to the same subject matter of a written warranty; and (3) the unjust enrichment claims relies on the same factual predicate as Plaintiffs' other legal causes of action. (ECF No. 32-1 at 65–68.) Defendant VWAG adopts VW America's arguments in their own motion to dismiss the same claims. (ECF No. 52-1 at 1.)

---

[24] VW America argues Plaintiffs lack standing to seek injunctive relief because Plaintiffs seek relief only for alleged past injuries. (ECF No. 32-1 at 60–62.) Plaintiffs do not dispute their injunctive relief claim cannot be premised on past injury. Rather, Plaintiffs argue VW America misconstrues its request for injunctive relief, asserting they are seeking "a comprehensive program to repair or replace the Seat Defect in the second-row seat assemblies in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Class for all costs and economic losses." (ECF No. 45 at 73.) Plaintiffs contend they face the certainty of incurring out-of-pocket costs to try to solve the Seat Defect without the requested relief. Accordingly, dismissal of Plaintiffs' injunctive relief claim is not warranted to the extent the relief is premised on future injury.

The Federal Rules of Civil Procedure permit Plaintiffs to plead alternative theories of recovery. Fed. R. Civ. P. 8(d)(2); *See In re K–Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (finding it would be premature to dismiss the unjust enrichment claim on a motion to dismiss as the plaintiffs were "clearly permitted to plead alternative theories of recovery"); *Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009) (finding "[a]n unjust enrichment claim may be sustained independently as an alternative theory of recovery"). Moreover, given this court's decision that Plaintiffs' breach of express warranty claims fail, the Court is not inclined to dismiss the unjust enrichment claims at this stage.[25] Accordingly, VW

---

[25] VW America further argues the failure of Plaintiffs' fraud-based claims warrants dismissal of the unjust enrichment claims. VW America makes this assertion in a single sentence with no analysis or discussion. The argument for why deficiency in Plaintiffs' fraud-based claims warrant dismissal of Plaintiffs' unjust enrichment claims is unclear. Accordingly, the Court need not address the argument any further. Moreover, to the extent VW America seeks to dismiss Plaintiffs' unjust enrichment claims under Kentucky, New Jersey, New York, and Virginia law because Plaintiffs have not demonstrated a "direct benefit" conferred upon VW America and VWAG, as purchasers or lessees of VW America and VWAG's vehicles, Plaintiffs' connection with VW America and VWAG is not too remote to conclude VW America and VWAG did not receive a direct benefit. *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) ("The essence of such [an unjust enrichment] claim is that one party has received money or a benefit at the expense of another." (quotation marks omitted)). Moreover, there is an exception to the "direct benefit" rule, and that is where a direct relationship between the parties is alleged. *See Bedi v. BMW of N. Am., LLC*, Civ. A. No. 15-1898, 2016 U.S. Dist. LEXIS 9365, at *14 (D.N.J. Jan. 27, 2016) ("[T]here must be a direct relationship between the parties."); *Tao of Sys. Integration v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004) ("To bring an action to recover monies received by the defendant from a third party, a plaintiff must demonstrate that he had a preexisting right to that fund."); *Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 974 (E.D. Ky. 2019) ("The general purpose of an unjust enrichment claim . . . [is] to compensate for benefits conferred. . . ."). Plaintiffs assert the dealerships are VW America and VWAG's agents, and therefore allege the existence of a relationship. In any event, the issue and argument have not been fully developed. VW America and VWAG raises its assertion with little analysis or discussion. At this stage, the Court must accept the allegations in the Amended Complaint as true and Plaintiffs allege they conferred a benefit on VW America and VWAG by overpaying for the Class Vehicles.

America and VWAG's motions to dismiss the unjust enrichment claims are **DENIED. VWAG's Motion to Dismiss for Failure to State a Claim**

### 9.     Choice of Law

As a preliminary matter, the Court must address Plaintiffs' argument that VWAG's motion to dismiss must be denied in its entirety because VWAG has failed to present a choice of law analysis with their motion. (ECF No. 61 at 5–6.) VWAG asserts a choice of law analysis was properly included via incorporation by reference of VW America's motion to dismiss. (ECF No. 69 at 1–2.) Additionally, VWAG argues they do not dispute the law under which Plaintiffs bring their claims. (*Id.*)

This litigation involves sixteen named Plaintiffs asserting claims under the laws of eleven different states—California, Florida, Kentucky, Massachusetts, Michigan, Missouri, New Jersey, New York, Pennsylvania, Texas, and Virginia. Plaintiffs indicate under which state's law they bring their claims in all of their causes of action. VWAG does not dispute that the state law under which each named Plaintiff brings their claim is the governing law to be applied. (ECF No. 69 at 1-2.) Therefore, a choice of law analysis is unnecessary and the Court will apply the law under which each named Plaintiff brings their claim. *See UBI Telecom Inc. v. KDDI Am., Inc.*, Civ. A. No. 13-1643, 2014 U.S. Dist. LEXIS 88842, at *25 (D.N.J. June 30, 2014) ("When the parties agree upon which state's law applies . . . the Court need not conduct [a] choice-of-law inquiry."); *Cole v. NIBCO, Inc.*, Civ. A. No. 13-07871, 2015 U.S. Dist. LEXIS 65960, at *14 (D.N.J. May 20, 2015) ("[T]he Court will follow the lead of the parties and will not engage in a choice of law analysis.").

### 10.     Breach of Express Warranty

VWAG argues Plaintiffs' express warranty claims should be dismissed because VWAG did not issue the NVLW, and, in the alternative, the NVLW does not cover design defects. (ECF No. 52 at 3.) Plaintiffs argue VWAG issued the NVLW and that a motion to dismiss the breach of express warranty claim relies upon a privity argument. (ECF No. 61 at 7.) Plaintiffs contend that an analysis of privity between the parties is a fact intensive determination unfit to be dispensed on a motion to dismiss. (*Id.*)

As previously noted, the NVLW does not cover design defects. *See supra* Section III.C.1. Plaintiffs concede that "[d]efendants have excluded coverage for the Seat Defect under the Warranties because the Seat Defect is inherently one of design." (ECF No. 26 ¶ 14). Therefore, the Court need not look beyond the Amended Complaint to find, as a matter of law, that Plaintiffs' breach of express warranty claims fail because the alleged design defect is not covered by the applicable NVLW. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 253 (3d Cir. 2010) (affirming dismissal of express warranty claim on motion to dismiss where the alleged design defect was not covered by the warranty).

Accordingly, VWAG's motion to dismiss Plaintiffs' breach of express warranty claims is **GRANTED**.

### 11.    Breach of Implied Warranty

VWAG argues the breach of implied warranty claims of Plaintiffs Tijerina and Concepción should be dismissed for lack of privity. (ECF No. 52 at 4.) VWAG contends Plaintiffs lack privity because they fail to allege they purchased their vehicles from VWAG. (*Id.*)  Plaintiffs assert that dismissal of a breach of implied warranty claim for lack of privity is premature before the opportunity for discovery. (ECF No. 61 at 15.) Plaintiffs Tijerina and Concepción further contend they have adequately alleged privity or a direct relationship with VWAG. *Id.* Plaintiffs also argue

California law provides a third-party beneficiary exception which permits them to bring their claims successfully. *Id.*

Under California law, "a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant." *Clemens*, 534 F.3d at 1023. There is no consensus among the California courts on whether a third-party beneficiary can except the privity requirement within the consumer context. *See Tappana v. American Honda Motor Co., Inc.*, 609 F. Supp. 3d 1078, 1086 (C.D. Cal. 2022) (holding "where a plaintiff sufficiently pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the warranty's breach."); *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894 (E.D. Cal. 2018) (holding "that *Clemens* forecloses a third-party-beneficiary exception to the rule of privity.")

In *Clemens,* a plaintiff purchased a Dodge Neon automobile from an independent Dodge dealership and argued that "similar equities" warranted an exception to the privity requirement so that he may sustain a breach of implied warranty of merchantability claim against the manufacturer of his vehicle. *See Clemens*, 534 F.3d at 1021-23.  The Ninth Circuit "decline[d] this invitation to create a new exception that would permit [plaintiff's] action to proceed" and affirmed the district court's dismissal of his breach of implied warranty claim for lack of privity. *Id.* at 1023. Further, the *Clemens* court explained, "California courts have painstakingly established the scope of the privity requirement . . . and a federal court sitting in diversity is not free to create new exceptions to it." *Id.*

While it appears that this holding has foreclosed the possibility of a third-party exception to the privity requirement, some district courts of the Ninth Circuit have held the *Clemens* court failed to expressly consider the third-party exception; and therefore, such an exception may still

apply. *See Tappana*, 609 F. Supp. 3d 1078, 1086. This Court disagrees and, as held by the Ninth Circuit, declines to create new exceptions to the privity requirement set out by the California courts.

The factual background presented by Plaintiffs Tijerina and Concepción is nearly identical to that of *Clemens*. Plaintiffs Tijerina and Concepción both purchased their vehicles from independent car dealerships and seek to assert a breach of implied warranty claims against the vehicles manufacturer. (ECF No. 26 ¶¶ 24, 28.) The Court finds Plaintiffs Tijerina and Concepción do not stand in vertical privity with VWAG.

Accordingly, VWAG's motion to dismiss Plaintiffs' breach of implied warranty claim is **GRANTED**.

### 12. Statutory Fraud Claims

#### i. *Kentucky Claims*

VWAG argues Plaintiff Henderson's statutory fraud claims should be dismissed for lack of privity under Kentucky law. (ECF No. 52 at 4.) Additionally, VWAG asserts dismissal is appropriate because Henderson fails to allege affirmative misrepresentations. (*Id.* at 8.) Plaintiffs argue dismissal of Henderson's statutory fraud claims for lack of privity would be improper because Henderson has established privity, and additionally, privity analyses are too fact-intensive to be dispense with by a motion to dismiss. (ECF No. 61 at 16.)

Under Kentucky law, a plaintiff must show "privity of contract between the parties" in order to sustain a claim under the Kentucky Consumer Protection Act ("KCPA"). *See Simpson v. Champion Petfoods USA, Inc.*, 397 F. Supp. 3d 952, 962 (E.D. Ky. 2019). "[P]rivity of contract does not extend beyond the buyer-seller setting, and an intervening purchaser destroys privity." *Demoss* 234 F. Supp. 3d at 882. However, "an actual and direct promise for the benefit of a third

party will be sufficient to create privity between the promisor and the third party beneficiary." *Louisville Gas*, 420 F. Supp. 2d at 770 (citations omitted). "[W]hether an individual Plaintiff may establish a third-party beneficiary status will not be scrutinized at this stage [on a Rule 12(b)(6)]." *In re Allergan*, 537 F. Supp. 3d at 746.

In order to sustain a claim under the KCPA, a plaintiff must allege they "(1) purchase[d] or lease[d] goods or services (2) for personal, family or household purposes and (3) [were] injured as a result of a seller's [unlawful] practice or act." *Simpson*, 397 F. Supp. 3d 952, 961. A seller's unlawful act is defined by Kentucky Revised Statutes (KRS) § 367.170 which states unlawful acts include "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce . . . ." KRS § 367.170.

Here, Plaintiffs have adequately alleged VWAG violated the KCPA. The Amended Complaint alleges Plaintiff Henderson purchased the Class Vehicle for personal, family, and household use. (ECF No. 26 ¶ 44.) Plaintiff Henderson and members of the Kentucky Sub-Class allege they "suffered an injury-in-fact" because they "overpaid for the Class Vehicles and the value of the Class Vehicles has greatly diminished." (*Id.* ¶¶ 438, 442.) The Amended Complaint also alleges VWAG "fail[ed] to disclose and actively conceal[ed] the dangers and risks posed by the Class Vehicles . . . ." (*Id.* ¶¶ 429.) "Nothing more is required at this stage of the litigation," *Naiser v. Unilever, U.S., Inc.*, 975 F. Supp. 2d 727, 742 (W.D. Ky. 2013), and the Court declines to make a determination on Plaintiff Henderson's possible third-party beneficiary status. *See In re Allergan*, 537 F. Supp. 3d at 746.

Accordingly, VWAG's motion to dismiss Plaintiff Henderson's statutory fraud claims is **DENIED**.

### ii.    *California Claims*

VWAG argues the statutory fraud claims of Plaintiffs Tijerina and Concepción should be dismissed because the Amended Complaint fails to allege any advertisement on the part of VWAG. (ECF No. 52 at 5.) VWAG also contends these claims fail because they do not satisfy the heightened pleading standard of Rule 9(b). (*Id.* at 6.) Plaintiffs assert they have sufficiently stated a claim under the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and the FAL because they alleged VWAG directly advertised; alternatively, Plaintiffs argue VW America is VWAG's alter ego. (ECF No. 61 at 17, 24.)

In order to state a valid UCL claim, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippitt v. Raymond James Fin. Services, Inc.*, 340 F.3d 1033, 1042 (9th Cir. 2003) (quoting Cal. Bus. & Prof. Code § 17200). Additionally, claims made for violations of the UCL must meet the heightened pleading standard of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires plaintiffs to support allegations of fraud with, at a minimum, the "essential factual background that would accompany the first paragraph of any newspaper story— that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted); *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

Here, the Amended Complaint alleges that VW America and VWAG intentionally and knowingly made materially false representations. (ECF No. 26 ¶ 288.) Additionally, the Amended Complaint points to a brochure that was released to advertise the Class Vehicle. (*Id.* ¶ 107.) It is unclear at this stage which company created and released the brochure. While it is certainly possible that VWAG did not create the brochure or otherwise advertise the Class Vehicle, Plaintiffs' allegation that VW America and VWAG collectively made the representations upon

which they relied must be taken as true. *See Phillips*, 515 F.3d at 228 (holding courts are "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the non-moving party]")

Plaintiffs have also alleged facts with the requisite level of specificity needed to satisfy Rule 9(b)'s heightened pleading standard. The Amended Complaint specifically refers to several representations made including multiple brochures, press releases, and commercials. (ECF No. 26 ¶¶ 105-08.) Additionally, Plaintiffs contend they relied on these representations and would not have purchased the vehicle had they known of the representations' alleged falsity. (*Id.* ¶¶ 311–12.) These allegations satisfy Rule 9(b) and sufficiently establish "the who, what, when, where and how" of the events at issue. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (citation omitted); *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

Accordingly, VWAG's motion to dismiss Plaintiff Tijerina and Concepción's statutory fraud claims is **DENIED**.

### iii.    *Massachusetts, Virginia, and Missouri Claims*

VWAG's sole argument in support of dismissal of Plaintiffs Ferrara, Daly, Hooks, and Tolbert's claims is that the Amended Complaint fails to allege VWAG advertised or made any affirmative representations regarding the Class Vehicle. (ECF No. 52 at 8.) Plaintiffs contend the Amended Complaint alleges VWAG directly advertised and made affirmative representations regarding the Class Vehicle. (ECF No. 61 at 17.)

As explained above, Plaintiffs have adequately alleged VWAG advertised and made affirmative representations upon which Plaintiffs relied. *See supra* Section III.D.4.ii.

Accordingly, VWAG's motion to dismiss Plaintiff Ferrara, Daly, Hooks, and Tolbert's statutory fraud claims is **DENIED**.

### E. Plaintiffs Motion for Leave to Amend

Plaintiffs request leave to amend their Complaint to the extent any of their claims are dismissed. (ECF No. 61 at 25.) "A general presumption exists in favor of allowing a party to amend its pleadings." *Hunter v. Dematic USA*, Civ. A. No. 16-00872, 2016 U.S. Dist. LEXIS 65167, at *12 (D.N.J. May 18, 2016) (citing *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir. 1984)). "Leave to amend a complaint should be granted freely in the absence of undue delay or bad faith on the part of the movant as long as the amendment would not be futile and the opposing party would not suffer undue prejudice." *Id.* (citations omitted); *see also Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."). Accordingly, Plaintiffs' request for leave to file an amended complaint is **GRANTED**.

### IV.   CONCLUSION

For the reasons set forth above, VW Chattanooga's motion to dismiss is for lack of personal jurisdiction (ECF No. 38) is **GRANTED**; VW America's motion to dismiss (ECF No. 32) is **GRANTED IN PART** and **DENIED IN PART**; and VWAG's motion to dismiss (ECF No. 52) is **GRANTED IN PART** and **DENIED IN PART.** An appropriate order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Date: October 19, 2023